**FILED**

OCT 1 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DAMION HANSON,**            :
**4900 Fort Totten Drive, #21 NE**    :
**Washington, D.C. 20011**        :
          **Plaintiff**        :
                          :
                          :
        **v.**        :
**DISTRICT OF COLUMBIA**        :
**A Municipal Corporation**        :
**One Judiciary Square**        :
**441 Fourth Street, N. W.**        :
**Washington, D.C 20001**        :
                          :
**serve:**            :
**ADRIAN FENTY, Mayor**        :
**District of Columbia**        :
**1350 Pennsylvania Avenue, N. W., 5th Fl.** :
**Washington, D.C. 20002**        :
                          :
**LINDA SINGER**            :
**Attorney General**            :
**1350 Pennsylvania Avenue, N. W.,**    :
**Ste. 409**                :
**Washington, D.C. 20004**        :
           **and**        :
                          :
**MICHELLE RHEE (officially)**        :
**Chancellor, D.C. Public Schools**    :
**825 North Capitol St., N. E., Suite 9026**    :
**Washington, D.C. 20002**        :
                          :
**Defendants**            :

Case: 1:07-cv-01825
Assigned To : Robertson, James
Assign. Date : 10/10/2007
Description: Admn. Agency Review

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE AND OTHER RELIEF

**Comes Now,** the Plaintiff, by and through his attorneys, Domiento C.R. Hill, Roxanne D. Neloms,

and the Law Offices of James E. Brown & Associates, P.L.L.C, and respectfully unto this Honorable

Court as follows that:

1

## JURISDICTION

1. This Court has jurisdiction pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C Sections 1400-1461; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. Sections 794; 42 U.S.C. Section 1983; 28 U.S.C. Section 1331 and 1343 and 5 D.C. Municipal Regs. Sections 3000.1 et seq.

2. Declaratory relief is authorized by 28 U.S.C Sections 2201; 2202.

3. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391.

## PARTIES

4. Damion Hanson "Damion" initiates this cause of action on his on behalf in his own right.

5. Damion's birth year is 1985 and at all times relevant to the filing of this suit, resides in the District of Columbia.

6. Defendant, the District of Columbia Government is a municipal corporation that receives federal funds pursuant to the Individuals with Disabilities Act ("IDEA"), to ensure access to a free and appropriate education ("FAPE") and is obligated to comply with the applicable federal regulations and statutes including but not limited to the IDEA.

7. Defendant, Michelle Rhee, being sued in her capacity as the Chancellor of the District of Columbia Public School System ("DCPS") which is the State Educational Agency ("SEA"), charged with responsibility of ensuring that all disabled children in the District of Columbia receive access to a free and appropriate public education "FAPE" and to ensure them equal protection and due process of law.

## FACTUAL BACKGROUND

1. Damion Hanson, an eighteen-year-old special education student, incarcerated in the District of Columbia Jail. *See Exhibit 1*.

2. Two years prior to his incarceration, he attended Roosevelt Senior High School. *Id.*

3. He had been retained in the twice in the 9th grade, once at the end of the 2003-04 school year, and then again at the end of the 2004-05 school year. *Id.*

4. Damion was to repeat the 9th grade for a third time but was promoted to the 10th grade for non-academic reasons. *Id.*

5. As a student at Roosevelt, Damion engaged in violent behavior towards other students at his school and in the community. *Id.*

6. In March 2005, he was arrested in Prince George's County, Maryland and charged with Malicious Destruction of Property. *Id.*

7. In February 2006, he was arrested in the District of Columbia and charged with unlawful possession of a knife and simple assault. *Id.*

8. In August 2005, he was arrested in the District of Columbia and charged with Robbery by Force and Violence. *Id.*

9. Damion had been truant from school, and when he did attend, he skipped classes and wandered the halls. *Id*

10. As a result of these and other incidents, Damion was suspended from Roosevelt for approximately a month during the 2005-06 school year and sent to the Choice Academy. *Id.*

11. Subsequently, Damion was detained at the Oak Hill Detention Center for three months. *Id.*

12. On March 8, 2006, the District of Columbia Department of Mental Health completed a psychiatric evaluation for Damion as part of his court supervision. *See Exhibit 7.*

13. Damion, among other things, was diagnosed with mood disorder, learning disorder, attention deficit hyper-activity disorder and borderline intellectual functioning. *Id.*

14. The report also stated that "[t]he critical piece here will be to make sure that drug treatment, family therapy, and alternative school placement are all in place prior to his release from detention." *Id.*

15. On July 19, 2006, the parent, through counsel, delivered a copy of Damion's March 2006 psychiatric evaluation to the District of Columbia Public Schools ("DCPS").

16. In an August 29, 2006 Hearing Officer's Determination ("HOD") DCPS was ordered to "fund independent psycho-educational, clinical and social history evaluations and convene an MDT meeting within 15 school days of receipt of the independent evaluations by the special education coordinator at Roosevelt S.H.S. to review all evaluations and determine eligibility."

17. The HOD also provided that "[i]f found eligible, the MDT team shall develop an appropriate IEP and discuss and determine placement" and that "[t]here shall be one day of delay of the [deadlines] for every day of delay cause by the student, parent or counsel for the student."

18. Damion's independent social history assessment, dated September 13, 2006, recommended a vocational assessment. *See Exhibit 8.*

19. The independent clinical-psychological assessment, dated September 25, 2006, diagnosed Damion with anxiety disorder, mood disorder, cognitive disorder, borderline intellectual functioning, and attention deficit hyperactivity disorder, among other things.

*See Exhibit 9.*

20. The report further recommended a neuro-psychological evaluation to address borderline intellectual functioning and possible head trauma from the automobile accident that occurred when he was six years old. *Id.*

21. Damion's psycho-educational assessment, dated September 26, 2006, and found that he required assistance in all academic areas. *Id.*

22. On November 15, 2006, the parent, through counsel, delivered copies of the independent psycho-educational, clinical, and social history assessments to DCPS.

23. The parent provided a copy of the August 29th HOD and a cover letter requesting that DCPS convene the multi-disciplinary team ("MDT") meeting as ordered in the HOD.

24. The parent also requested that DCPS complete the vocational and neuro-psychological assessments recommended both the social history report, and clinical report.

25. By December 4, 2006, the parent and her representatives had yet to receive any communication from DCPS regarding the MDT meeting that had been requested for Damion.

26. A psychiatric assessment completed through the Public Defender's Office, and dated December 6, 2006, found that Damion had a "significant psychiatric history" and diagnosed him with depression, not otherwise specified; ADHD, predominately inattentive type; poly-substance abuse; borderline intellectual functioning; and learning disorder. *See Exhibit 6.*

27. The report also found that "his risk for further criminal activity will be decreased with proper treatment." *Id.*

28. On December 19, 2006, DCPS convened Damion's MDT meeting without the

participation of any of Damion's regular education teachers and without any professional capable of reviewing the psychiatric report that had been completed by the D.C. Department of Mental Health and delivered to DCPS on July 19, 2006 and again on August 8, 2006. *See Exhibit 13.*

29. During the December 19th MDT meeting, Damion was found eligible for special education as a student with an emotional disturbance. *Id.*

30. The team also developed a "draft" Individualized Educational Program (IEP") classifying Damion as emotionally disturbed ("ED") and entitling him to 26 hours of specialized instruction per week in the special education setting and one hour of psychological services per week. *Id.*

31. During the December 19th MDT meeting, the DCPS-members of the team also issued placement, over the parent's objection, for Damion to attend the "ED Cluster" Program at Roosevelt. *Id.*

32. The parent requested placement at Rock Creek Academy in the District of Columbia; Accotink Academy in Springfield, Virginia; Sunrise Academy in the District of Columbia; or Florence Bertell Academy in Prince George's County, Maryland. *Id*

33. The DCPS-members of the team, however, responded by rejecting the parent's suggested placements without providing the parent written notice as to why those placement sites were being rejected. *Id.*

34. During the December 19th MDT meeting, the parent asserted her previous written request that DCPS conduct a vocational assessment as recommended in the independent social history, and a neuro-psychological assessment as recommended in the independent clinical-psychological assessment. *See Exhibit 17.*

35. The advocate also requested that DCPS complete a functional behavioral assessment ("FBA") for Damion to address his behavior of fighting and wandering the halls instead of attending his classes. *Id.*

36. The DCPS-members of the team, however, only agreed to conduct a neuro-psychological and did not agree to conduct the neuro-psychological, vocational, and FBA that the parent was requesting. *Id.*

37. In early April 2007, Damion entered a plea to certain adult criminal charges before the D.C. Superior Court.

38. As part of the sentencing negotiations, the prosecution in the case indicated that they would look favorably on Damion if he were placed in a residential treatment facility ("RTF").

39. On or about April 25, 2007, the parent and her educational advocate participated in a Multi-disciplinary team meeting at the D.C. Jail for Damion and that meeting the parent and advocate requested residential placement.

40. The District of Columbia Public Schools ("DCPS") refused to consider issuing placement citing that for now he was incarcerated and there was no reason to consider placement at this time.

41. On May 7, 2007, the parent, through counsel, filed the present due process complaint alleging, among other things, that: DCPS had failed to issue placement to an appropriate school. that the ED cluster program at Roosevelt was not appropriate and that he needed a residential placement; and DCPS failed to conduct the neuro-psychological assessment as agreed during the MDT meeting on December 19, 2006.

42. A supplement to the December 6, 2006 psychiatric assessment, dated May 25, 2007,

recommended placement at a residential facility to address problem behaviors. *See Exhibit 5.*

43. On May 18, 2007, DCPS convened a resolution meeting with the parent and advocate in effort to resolve the issues raised in the parent's complaint dated May 7, 2007.

44. On June 13, 2007, the parent, through counsel, delivered a copy of the May 25, 2007 psychiatric supplement to DCPS with a letter requesting residential placement..

45. At July 6, 2007, hearing, counsel for the parent argued that the student's severe behavioral problems required a more restrictive placement and sought residential placement as a remedy.

46. In the July 10, 2007 HOD, the hearing officer denied the parent's request for residential placement and neuro-psychological assessment, ruling Roosvelts' ED Cluster Program was appropriate and a residential treatment placement was not warranted. *See Exhibit 2.*

47. The hearing officer found that counsel for parent presented no evidence that the DCPS proposed cluster program at Roosevelt could not implement Damion's IEP and provide educational benefits. *Id.*

## COUNT I

48. The parent re-alleges paragraphs 1-48.

49. The hearing officer erred when he determined that the ED Cluster program at Roosevelt was an appropriate placement for Damion.

50. He further found that DCPS had not denied Damion access to a free and appropriate education when it developed a full-time IEP and could not implement it because Damion was incarcerated.

51. The hearing officer, specifically, found that counsel had not met its burden of proof that the IEP and placements proposed by DCPS were inappropriate.

52. A "free and appropriate education must be available to all children residing in the State between the ages of 3 to 21, inclusive, including children with disabilities who have been suspended or expelled from school". See 34 CFR Section 300.301.

53. A school district is not required to offer a free and appropriate education to children who are convicted as adults under state law and incarcerated in adult prisons, conversely, a child who is a child with a disability who is serving their time in a juvenile facility is entitled to access to a free and appropriate education. See 20 U.S.C. 1414 (7) (A).

54. Damion, at all times prior to the hearing, was a child incarcerated in a juvenile facility and was entitled to FAPE.

55. Damion required a more restrictive environment, such as a residential treatment facility, so that he could benefit educationally.

## COUNT II

56. The parent re-alleges paragraphs 1-55.

57. The hearing officer erred when he determined that DCPS' failure to complete a neuro-psychological assessment did not amount to a procedural violation of access to a free and appropriate education.

58. Members of the MDT team agreed to complete neuro-psychological evaluation that the team agreed it would complete.

59. The hearing officer concluded that Damion's incarceration prevented DCPS from completing the evaluation and that as a result, DCPS had not denied Damion access to a free and appropriate education.

60. Damion's incarceration is a juvenile facility meant that he was still entitled to the same protections of IDEIA as a student not incarcerated, DCPS could have completed the evaluation at that facility.

**Wherefore**, the plaintiff prays that this Court:

1. Reverse the July 2007 Hearing Officer's Decision and enter a finding against the defendant;

2. Award Plaintiff's attorney fees and costs of this action;

4. Award any other relief that the Court deems just and proper.

Respectfully submitted,

Domiento C.R. Hill [MD14793]
Roxanne D. Neloms [478157]
James E. Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
(202)742-2000 (Tele.)
Counsel for Plaintiffs

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| | |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **(IN U.S. PLAINTIFF CASES ONLY)** NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

1 U.S. Government Plaintiff

2 U.S. Government Defendant

3 Federal Question
(U.S. Government Not a Party)

4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| A. *Antitrust* | B. *Personal Injury/ Malpractice* | C. *Administrative Agency Review* | D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| 410 Antitrust | 310 Airplane<br>315 Airplane Product Liability<br>320 Assault, Libel & Slander<br>330 Federal Employers Liability<br>340 Marine<br>345 Marine Product Liability<br>350 Motor Vehicle<br>355 Motor Vehicle Product Liability<br>360 Other Personal Injury<br>362 Medical Malpractice<br>365 Product Liability<br>368 Asbestos Product Liability | 151 Medicare Act<br><br>**Social Security:**<br>861 HIA ((1395ff)<br>862 Black Lung (923)<br>863 DIWC/DIWW (405(g)<br>864 SSID Title XVI<br>865 RSI (405(g)<br>**Other Statutes**<br>891 Agricultural Acts<br>892 Economic Stabilization Act<br>893 Environmental Matters<br>894 Energy Allocation Act<br>890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| E. *General Civil (Other)* OR | | F. *Pro Se General Civil* | |
|---|---|---|---|
| **Real Property**<br>210 Land Condemnation<br>220 Foreclosure<br>230 Rent, Lease & Ejectment<br>240 Torts to Land<br>245 Tort Product Liability<br>290 All Other Real Property<br><br>**Personal Property**<br>370 Other Fraud<br>371 Truth in Lending<br>380 Other Personal Property Damage<br>385 Property Damage Product Liability | **Bankruptcy**<br>422 Appeal 28 USC 158<br>423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>535 Death Penalty<br>540 Mandamus & Other<br>550 Civil Rights<br>555 Prison Condition<br><br>**Property Rights**<br>820 Copyrights<br>830 Patent<br>840 Trademark<br><br>**Federal Tax Suits**<br>870 Taxes (US plaintiff or defendant<br>871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>610 Agriculture<br>620 Other Food &Drug<br>625 Drug Related Seizure of Property 21 USC 881<br>630 Liquor Laws<br>640 RR & Truck<br>650 Airline Regs<br>660 Occupational Safety/Health<br>690 Other<br><br>**Other Statutes**<br>400 State Reapportionment<br>430 Banks & Banking<br>450 Commerce/ICC Rates/etc.<br>460 Deportation | 470 Racketeer Influenced & Corrupt Organizations<br>480 Consumer Credit<br>490 Cable/Satellite TV<br>810 Selective Service<br>850 Securities/Commodities/ Exchange<br>875 Customer Challenge 12 USC 3410<br>900 Appeal of fee determination under equal access to Justice<br>950 Constitutionality of State Statutes<br>890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| **G**. *Habeas Corpus/ 2255* | **H.** *Employment Discrimination* | **I.** *FOIA/PRIVACY ACT* | **J.** *Student Loan* |
|---|---|---|---|
| **530 Habeas Corpus-General**<br>**510 Motion/Vacate Sentence** | **442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)**<br><br>***(If pro se, select this deck)*** | **895 Freedom of Information Act**<br>**890 Other Statutory Actions (if Privacy Act)**<br><br>***(If pro se, select this deck)*** | **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| **K.** *Labor/ERISA (non-employment)* | **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | **N.** *Three-Judge Court* |
|---|---|---|---|
| **710 Fair Labor Standards Act**<br>**720 Labor/Mgmt. Relations**<br>**730 Labor/Mgmt. Reporting & Disclosure Act**<br>**740 Labor Railway Act**<br>**790 Other Labor Litigation**<br>**791 Empl. Ret. Inc. Security Act** | **441 Voting (if not Voting Rights Act)**<br>**443 Housing/Accommodations**<br>**444 Welfare**<br>**440 Other Civil Rights**<br>**445 American w/Disabilities-Employment**<br>**446 Americans w/Disabilities-Other** | **110 Insurance**<br>**120 Marine**<br>**130 Miller Act**<br>**140 Negotiable Instrument**<br>**150 Recovery of Overpayment & Enforcement of Judgment**<br>**153 Recovery of Overpayment of Veteran's Benefits**<br>**160 Stockholder's Suits**<br>**190 Other Contracts**<br>**195 Contract Product Liability**<br>**196 Franchise** | **441 Civil Rights-Voting (if Voting Rights Act)** |

---

**V. ORIGIN**

| 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from another district (specify) | 6 Multi district Litigation | 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

---

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23   **DEMAND $**   **JURY DEMAND:**   Check YES only if demanded in complaint   **YES**   **NO**

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   **YES**   **NO**   If yes, please complete related case form.

**DATE**   **SIGNATURE OF ATTORNEY OF RECORD**

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# EXHIBIT DOCUMENTS

1. **EXHIBIT** Administrative Due Process Complaint Notice
2. **EXHIBIT** Hearing Officer's Determination
3. **EXHIBIT** Due Process Complaint Disposition
4. **EXHIBIT** Superior Court Criminal Division – Felony Order
5. **EXHIBIT** Supplement Psychiatric Evaluation
6. **EXHIBIT** Psychiatric Evaluation
7. **EXHIBIT** Psychiatric Evaluation
8. **EXHIBIT** Social Work Evaluation Report
9. **EXHIBIT** Clinical Psychological Evaluation
10. **EXHIBIT** Psycho educational Evaluation
11. **EXHIBIT** Review of Independent Assessment
12. **EXHIBIT** Initial Placement letter
13. **EXHIBIT** Multidisciplinary Team ("MDT") Eligibility Meeting Notes
14. **EXHIBIT** Individualized Educational Program ("IEP")
15. **EXHIBIT** Advocate Meeting Notes
16. **EXHIBIT** Resolution Meeting Notes
17. **EXHIBIT** Advocate Multidisciplinary Team ("MDT") Meeting Notes
18. **EXHIBIT** Individualized Educational Program ("IEP")
19. **EXHIBIT** Multidisciplinary Team ("MDT") Meeting Notes
20. **EXHIBIT** DCPS Attendance Summary
21. **EXHIBIT** Student Progress

# Exhibit 1

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



# *ADMINISTRATIVE DUE PROCESS COMPLAINT NOTICE*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification. evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street. NE. 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees. the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings**.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.    INFORMATION ABOUT THE STUDENT:

Student Name: Damion Henson                    DOB: June 8, 1989

Address:    4900 Fort Totten Drive, #21, NE, Washington, D.C. 20011

Present School of Attendance: Roosevelt Senior High School (currently incarcerated at D.C. Jail)

Home School:    Roosevelt Senior High School
                (Neighborhood school)

Phone: (H) 202 636-9106    (W) 202 328-6608    (C) 202 378-6208

Parent/Guardian of the Student: __Maxine Henson__

## B.    Legal Representative/Attorney (if applicable):

Name:  Miguel A. Hull, Esq.      Phone: (W)  202 742-2015    (Fax)  202 742-2098

Address: 1220 L St., NW, #700, Washington, D.C. 20005

Will attorney / legal representative attend the resolution session?   X Yes        ☐ No

## C.    Complaint Made Against (check all that apply):

**X** DCPS

☐ Charter school (name of the charter school if different from page one)_____

☐ Non-public school or residential treatment facility (name)

_____

☐ Parent

## D.    Resolution Session Meeting Between Parent and LEA:

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

**X** I wish to waive the Resolution Session Meeting

## E.    Mediation Process:

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

**I am requesting an administrative due process hearing only at this time.**

## F.    Facts and Reasons for the Complaint:

### I.    Relevant Facts

1. Damion Henson is a seventeen-year-old special education student currently incarcerated at the D.C. Jail. His home school is Roosevelt Senior High School in the District of Columbia, which he has attended for the last two school years.

2. Damion has been incarcerated since about January 2007. In early April 2007, Damion entered a plea before the D.C. Superior Court to certain adult charges. His sentencing on that plea is currently set for June 7, 2007, but can be postponed according to his public defender.

3. While at Roosevelt, Damion has demonstrated problem behaviors, and experienced numerous academic failures. Damion has been retained in the 9th grade on two occasions, once at the end of the 2003-04 school year, and then again at the end of the 2004-05 school year. He should have been retained again in the 2005-06 school year according to his grades; however, he was apparently promoted to the 10th grade for non-academic reasons.

4. While at Roosevelt, Damion has also engaged in violent behavior towards other students at his school and in the community. In March 2005, he was arrested in Prince George's County, Maryland and charged with Malicious Destruction of Property. In February 2006, he was arrested in the District of Columbia and charged with unlawful possession of a knife and simple assault. In August 2005, he was arrested in the District of Columbia and charged with Robbery by Force and Violence. Damion has also been truant from school, and when he does attend, he skips classes and wanders the halls. He also has been known to consume illegal drugs.

5. As a result of these and other incidents, Damion was suspended from Roosevelt for approximately a month during the 2005-06 school year and sent to the Choice Academy. Also during the 2005-06 school year, Damion was detained at the Oak Hill Detention Center for approximately three months as a result of his illegal activities in the community and he is currently under court supervision.

6. On March 5, 2006, the District of Columbia Department of Mental Health completed a psychiatric evaluation for Damion as part of his court supervision. In that report, Damion is diagnosed with mood disorder, learning disorder, attention deficit hyper-activity disorder and borderline intellectual functioning among other things.

7. On July 19, 2006, the parent, through counsel, delivered a copy of Damion's March 2006 psychiatric evaluation to the District of Columbia Public Schools ("DCPS"). The psychiatric report was again provided to DCPS on August 8, 2006, as part of a disclosure packet for a due process hearing that took place on August 15, 2006.

8. On August 15, 2006, the parent and DCPS entered a settlement agreement on the record during a due process hearing. That agreement was then issued on August 29, 2006 in the form of a Hearing Officer's Determination ("HOD") wherein DCPS was ordered to "fund independent psycho-educational, clinical and social history

3

evaluations and convene an MDT meeting within 15 school days of receipt of the independent evaluations by the special education coordinator at Roosevelt S.H.S. to review all evaluations and determine eligibility." The HOD also provided that "[i]f found eligible, the MDT team shall develop an appropriate IEP and discuss and determine placement" and that "[t]here shall be one day of delay of the [deadlines] for every day of delay cause by the student, parent or counsel for the student."

9. Damion's independent social history assessment was completed on September 13, 2006. In it, the evaluator recommends a vocational assessment to assist with career options post high school, and a neuropsychiatry assessment to assess if a previous head injury, from an automobile accident when he was six years old, caused any neurological damage.

10. Damion's independent clinical-psychological assessment was completed on September 25, 2006 and diagnosed anxiety disorder, mood disorder, cognitive disorder, borderline intellectual functioning, and attention deficit hyperactivity disorder among other things. The report also recommended, among other things, a neurological evaluation to address borderline intellectual functioning and possible head trauma from the automobile accident that occurred when he was six years old.

11. Damion's psycho-educational assessment was completed on September 26, 2006, and found, among other things, that his cognitive and educational scores suggest that he needs assistance in all academic areas.

12. On November 15, 2006, the parent, through counsel, delivered copies to DCPS of the independent psycho-educational, clinical, and social history assessments that had been completed pursuant to the August 29th HOD. Along with the assessments, the parent also delivered a copy of the August 29th HOD and a cover letter requesting that DCPS convene the multi-disciplinary team ("MDT") meeting as ordered in the HOD. The cover letter also contained a request that DCPS complete the vocational and neuropsychiatry assessments recommended in the social history report, and the neurological assessment recommended in the clinical report.

13. By December 4, 2006, the parent and her representatives had yet to receive any communication from DCPS regarding the MDT meeting that had been requested for Damion. That day, the parent, through counsel, sent another letter to DCPS requesting that the MDT meeting be convened. A few hours later, parent's counsel received a letter of invitation from DCPS dated December 1, 2006, offering three dates on which to have Damion's MDT meeting. However, all of the dates offered, December 12, 13, and 19, fell well outside the deadline in the HOD for convening the MDT meeting.

14. On December 19, 2006, DCPS finally convened Damion's MDT meeting with his mother and her educational advocate. However, the meeting convened without the participation of any of Damion's regular education teachers and without any professional capable of reviewing the psychiatric report that had been completed by

4

the D.C. Department of Mental Health and delivered to DCPS on July 19, 2006 and again on August 8, 2006.

15. During the December 19th MDT meeting, Damion was found eligible for special education as a student with an emotional disturbance. The team also developed a "draft" Individualized Educational Program (IEP") classifying Damion as emotionally disturbed ("ED") and entitling him to 26 hours of specialized instruction per week in the special education setting and one hour of psychological services per week.

16. During the December 19th MDT meeting, the DCPS-members of the team also issued placement, over the parent's objection, for Damion to attend the "ED Cluster" Program at Roosevelt. The parent and advocate, however, rejected placement at Roosevelt because they did not believe that Damion could be successful at Roosevelt. Among other things, Damion had already attended the general education program there and failed miserably and was too familiar with the "scene" at Roosevelt to be able to succeed there. Instead, the parent requested placement at Rock Creek Academy in the District of Columbia; Accotink Academy in Springfield, Virginia; Sunrise Academy in the District of Columbia; or Florence Bertell Academy in Prince George's County, Maryland. The DCPS-members of the team, however, responded by rejecting the parent's suggested placements without providing the parent written notice as to why those placement sites were being rejected.

17. Also during the December 19th MDT meeting, the parent reasserted her previous written request that DCPS conduct a vocational assessment as recommended in the independent social history, and a neurological assessment as recommended in the independent clinical-psychological assessment. The advocate also requested that DCPS complete a functional behavioral assessment ("FBA") for Damion to address his behavior of fighting and wandering the halls instead of attending his classes. The DCPS-members of the team, however, only agreed to conduct a neurological-psychological and did not agree to conduct the neurological, vocational, and FBA that the parent was requesting.

18. In early April 2007, Damion entered a plea to certain adult criminal charges before the D.C. Superior Court. The sentencing was then set for June 7, 2007. As part of the sentencing negotiations, the prosecution in the case has indicated that they would look favorably on Damion if he were placed in a residential treatment facility ("RTF").

19. On or about April 25, 2007, the parent and her educational advocate participated in a Multi-disciplinary team meeting at the D.C. Jail for Damion. During that meeting, the parent and advocate requested placement at an RTF in light of Damion's needs. The parent and advocate explained that they wanted the placement issued so that it could be presented to the Court at his upcoming sentencing and so that it could take effect after he is possibly released at that sentencing. The District of Columbia Public Schools ("DCPS") –members of the team refused to consider issuing placement citing

that for now he was incarcerated and there was no reason to consider placement at
this time.

20. Damion has been accepted to the following RTF's that are capable of providing him
an educational benefit:

    a.  Judge Rotenberg Center, a non-public RTF in Canton Massachusetts;
    b.  Mesabi Center in Minnesota; and
    c.  Cottonwood Center in Utah.

## II.  DCPS Has Failed To Issue An Appropriate Placement For Damion And Has Failed To Properly Consider The Parent's Concerns Regarding Placement

21. According to the applicable statutes and regulations, a placement is to be in based on
the student's needs.  See Individuals with Disabilities Education Improvement Act of
2004, 20 U.S.C.§ 1402 (9) (D) ("FREE APPROPRIATE PUBLIC EDUCATION-
The term 'free appropriate public education' means special education and related
services that include an appropriate preschool, elementary school, or secondary
school education in the state involved" [and] "are provided in conformity with the
individualized education program"); § 1401 (29) (D) ("The term 'special education
means specially designed instruction, at no cost to the parents, to meet the unique
needs of a child with a disability [. . . ]."); § 1414 (e) (public agency to ensure that
parents are involved in the placement decision); 34 C.F.R. § 300.17 & 39; 34 C.F.R. §
300.116 (placement is to be based on student's IEP as determined by team including
the parents); 34 C.F.R. § 300.327 & 300.501 (c); D.C. Mun. Regs. Tit. 5 § 3013.1-7
(LEA to ensure that child's placement is based on the IEP); and D.C. Mun. Regs. Tit.
5 § 3000.

22. Residential placement is appropriate if necessary to provide special education.  20
U.S.C.§ 1412 (a) (1); and 34 C.F.R. § 300.104.

23. Moreover, a student convicted as in adult and incarcerated in adult prison is still
entitled to a Free Appropriate Public Education ("FAPE") if that student was already
identified with a disability prior to being incarcerated.  20 U.S.C.§ 1412 (a) (1) (A); §
1414 (d) (7); 34 C.F.R. § 300.102 (a) (2); 34 C.F.R. § 300.324 (d).  IEP and
Placement modifications are allowable for student incarcerated in adult prisons, but
only "if the State has demonstrated a bono fide security or compelling penological
interest that cannot otherwise be accommodated."  20 U.S.C. § 1414 (d) (7); 34
C.F.R. § 300.324 (d).

24. During the MDT meeting on December 19, 2006, the parent and her educational
advocate expressly objected to placement at Roosevelt because the program was not
equipped to address his severe behavioral problems and because Damion was so
familiar with the "scene" at Roosevelt, having attended that school for over two
years, that he was surely not going to be successful in that program regardless of the
supports in place.  The mere fact that he was to be placed in the so-called "ED-

cluster" provided no reasonable assurance that he will not continue to fight, wander the halls of the building, or act out in other ways. The rest of the team, however, disregarded those legitimate concerns and did not offer any other placement considerations thereby limiting the parent's role in the meeting. See id and W.G. v. Board of Trustees of Target Range School District No. 23, 960 F.2d 1479 (9th Cir. 1992) (in order to fulfill the goal of parental participation in the IEP process, the school district was required to conduct, not just an IEP meeting, but a meaningful IEP meeting).

25. More recently, DCPS has failed to issue an appropriate placement for Damion. DCPS convened an MDT meeting for Damion at the D.C. Jail on or about April 25, 2007. During that meeting, the parent and advocate requested that DCPS issue placement at an RTF that Damion would attend upon his release and that could be presented to the Court at his sentencing and thereby facilitate his release. Given Damion's academic and social-emotional needs and his criminal behavior it is evident that he requires placement at an RTF. The DCPS-members of the team, however, refused to consider issuing placement. Pursuant to the IDEA, however, DCPS has a legal obligation to reasonably determine placement. The placement that the parent was requesting was to take effect after his release, not while he is incarcerated, such that there is no bono fide security or compelling penological interest for not issuing a placement at this time to take effect upon his release. By deferring placement until he is released, DCPS is violating the parent's rights and creating a possible catch-22 situation where his release will be significantly delayed because there is no placement in place.

## III. DCPS has failed to provide the parent with appropriate prior written notice regarding the student's educational placement

26. DCPS has failed to provide a proper written notice as to why the parent's suggested placement sites were rejected during the April 25, 2007 MDT meeting.

27. According to Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.§ 1414 (b) (1) and § 1415 (b) (3), (b) (4), a public agency required to provide written notice to the parents concerning a proposal or refusal to change the placement of a student. Such notice must include description of options considered and reasons for accepting or rejecting such options. See also 34 C.F.R. Sec. 300.503; D.C. Mun. Regs. Tit. 5 § 3024. Hoing v. Doe, 484 U.S. 305, 327 (1988), (Supreme Court of the United States concluded that the clear intent of Congress was to make parental involvement the cornerstone of the process under the IDEA. In so finding, the Court stressed the importance of a parent's right to be notified of each step of a child's educational development: "Envisioning the IEP as the centerpiece of the statute's education system for disabled children, and aware that schools had all too often denied such children appropriate educations without in any way consulting the parents; Congress repeatedly emphasized through the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness. Accordingly, the Act establishes various

7

procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decision they think inappropriate." Id. at 311-12.); See also Burlington School Comm. v. Massachusetts Dept. of Education, 471 U.S. 359, 373 (1985); Zvl D. By Shirley D. v. District of Columbia Public Schools, 828 F. Supp. at 88-89; Nikita Petties, et. al. v. The District of Columbia Public Schools, Civil Action No. 95-0148.

28. In this case, the parent requested placement at an RTF during the MDT meeting on April 25, 2007. DCPS, however, unreasonably deferred making a placement decision and also failed to issue a prior notice, or any other written documents, supporting DCPS' position. This violation of the parent's rights has effectively limited her ability to meaningfully participate in Damion's academic programming and is therefore a detrimental violation of her rights.

## IV.    DCPS has failed to complete a neurological-psychological assessment in a timely manner

29. DCPS has failed to conduct the neurological-psychological assessment as agreed during the MDT meeting on December 19, 2006.

30. According to the applicable statue and regulations, DCPS must ensure that the student is assessed in all areas of suspected disability, that the evaluation is sufficiently comprehensive to identify all of the student's special education needs, and that the evaluation includes all assessment tools that may assist in determining the content of the IEP. Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1414 (b) (1)-(3);  § 1414 (a) (6) (B); § 1414 (b) (3) (C) ("each local education agency shall ensure that assessment tools and strategies that provide relevant information that directly assists persons in determining the educational needs of the child are provided."); § 1412 (a) (3) (state must have procedures in place to ensure that all students in the school district who may need special education services are identified, located, and *evaluated*); 34 C.F.R. Sec. 300.304 (b) and (c); 34 C.F.R. § 300.301 ("Each public shall ensure that a full and individual evaluation is conducted for each child being considered for special education"); 34 C.F.R. Sec. 300.111 (public agency must identify, locate and evaluate all students in the school district who may need special education services); D.C. Mun. Regs. tit. 5 § 3005.9 (g) ("The LEA shall ensure that: the child is assessed in all areas related to the suspected disability [ . . . ]"); D.C. Mun. Regs. tit. 5 § 3005.9 (h) (The LEA shall ensure that: in evaluating a child with a disability, the evaluation is sufficiently comprehensive to identify all of the child's special education and services needs, whether or not commonly linked to the disability category in which the child has been classified.").

31. In addition, assessments are to be completed within a reasonable time not to exceed 120 days. D.C. Mun. Regs. tit. 5 § 3005.2 ("The IEP team **shall** conduct an initial evaluation of a child within a reasonable time of receiving a **written referral and parental consent** to proceed and within timelines consistent with Federal Law and

8

D.C. Code § 38-2501(a)"); and D.C. Code § 38-2501 (initial evaluations to be completed within 120 days of referral).

32. Here, DCPS has failed to complete the neurological-psychological assessment that was recommended by the team during the MDT meeting on December 19, 2006.

**V. Relief Sought.**

33. a finding in the parent and student's favor as to each of the issues raised above;

34. that DCPS be ordered, or agree, to:
    a. place Damion at an appropriate RTF such as:

        i.   Judge Rotenberg Center, a non-public RTF in Canton Massachusetts;
        ii.  Mesabi Center in Minnesota; and
        iii. Cottonwood Center in Utah.

    b. complete a neurological-psychological assessment within 15 days;
    c. convene an MDT meeting within 10 business days of completing the assessment specified above to: revise Damion's IEP, determine appropriate placement with placement to be made within 5 days if for a public school, or 30 days if for a non-public school.

35. that DCPS provide any other relief deemed appropriate and relating to the violations committed here;

36. that DCPS be ordered or agrees to pay parent's reasonable attorney's fees and costs;

37. All meetings shall be scheduled through counsel for the parent, Miguel A. Hull, Esq. in writing, via facsimile, at 202-742-2097 or 202-742-2098;

38. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

39. In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement, the parents shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

40. The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation D.C.Mun. Regs. Tit. 5 § 3000.3, and other related services as are defined at 34 C.F.R. § 300.34 designed to meet this student's unique needs and preparation for employment and independent living;

41. Provide counsel for the parent with copies, pursuant to <u>D.C. Mun. Regs. Tit. 5 §</u>
<u>3021.8</u>, of all evaluation reports and all educational records on the student no later
than sixteen business hours prior to the convening of any meeting;

42. That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to
the <u>Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.§</u>
<u>1415 (c) (2) (B)</u>, provide the parent's representative, Miguel A. Hull, Esq., via
facsimile, at 202-742-2097 or 202-742-2098, the following:  i) an explanation of why
DCPS proposed or refused to take the action raised in the complaint; ii) a description
of other options that DCPS considered and the reasons why those options were
rejected, iii) a description of each evaluation procedure, assessment, record, or report
the agency used as the basis for the proposed or refused action, and iv) a description
of the other factors that are relevant to the agency's proposed or refused action;

43. That DCPS, in the event they fail to answer/respond to the issues alleged in the
parent's administrative due process hearing complaint, within ten (10) calendar days,
the arguments and facts as averred by the parent will be deemed true and accurate and
act as a waiver, on the part of DCPS, for their desire to have a Resolution Session
Meeting, and the parent's administrative due process hearing will be scheduled
pursuant to the applicable timelines contained in the IDEIA;

44. That DCPS, within fifteen (15) calendar days of receiving the parent's complaint,
pursuant to the <u>Individuals with Disabilities Education Improvement Act of 2004, 20</u>
<u>U.S.C.§ 1415 (c) (2) (C)</u>, respond to the parent's request alleging any insufficiency of
notice;

45. That DCPS' failure to comply with the <u>Individuals with Disabilities Education</u>
<u>Improvement Act of 2004, 20 U.S.C.§ 1415 (c) (2) (C)</u>, and allege any insufficiency
of the parent's administrative due process complaint, will constitute waiver on the
part of DCPS to make such argument at any later date and time;

46. That DCPS, pursuant to the <u>Individuals with Disabilities Education Improvement Act</u>
<u>of 2004, 20 U.S.C.§ 1415 (f) (1) (B)</u>, within fifteen (15) calendar days of receiving
the parent's administrative due process complaint, shall contact the parent's
representative, in writing, via facsimile, at 202-742-2015 or 202-742-2098, to
schedule and convene a **Resolution Session Meeting**.

47. That DCPS, pursuant to the <u>Individuals with Disabilities Education Improvement Act</u>
<u>of 2004, 20 U.S.C.§ 1415 (f) (1) (B)</u>, convene the Resolution Session Meeting, with
the parent, the parent's representative, and all necessary/relevant members of the
student's MDT/IEP Team that have specific knowledge about the child and the facts
contained in the complaint.  That the relevant members of the MDT/IEP Team that
shall be present at the **Resolution Session Meeting for the student shall include the**
**following persons:** 1) the student's special education teacher, if applicable, 2) the
student's regular education teacher, if applicable, 3) a representative of the local
education agency with decision making authority, 4) a person who can interpret the

data, 5) any person(s) who conducted any assessments on the student, and 6) any service providers for the student;

48. That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the <u>Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.§ 1415 (f) (1) (B)</u> constitute joint waiver between DCPS and the parent to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

49. A finding that the parent is the prevailing party in this action.

## G.  **Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type) _____
- Special Accommodations for Disability (please be specific)_____
- Other_____

## H.  **Signature:**

May 7, 2007

Legal Representative / Advocate (if applicable)          Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002**
**Fax number: 202/442-5556**

```
************************
***   TX REPORT   ***
************************

TRANSMISSION OK

TX/RX NO                0114
RECIPIENT ADDRESS       94425556
DESTINATION ID
ST. TIME                05/08 08:06
TIME USE                02'06
PAGES SENT              12
RESULT                  OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | Roxanne D. Neloms |
| Miguel A. Hull | Washington, DC 20005 | Omar Karram |
| Christopher L. West | Telephone: (202) 742-2000 | Christie Fontaine-Covington |
| John A. Straus | Facsimile: (202) 742-2098 | Jani Tillery |
| ------------------------------- | e-mail: Admin@Jeblaw.biz | ------------------------------ |
| | | ! DC Bar Special Legal Consultant |
| | | + Admitted in Bolivia |

# *FAX COVER SHEET*

DATE:       May 7, 2007

TO:         Student Hearing Office
            District of Columbia Public Schools

PHONE:      (202) 442-5432

FAX NO:     (202) 442-5556

FROM:       Miguel Hull, Esq.

SUBJECT:    **Damion Henson. DOB: 6-08-89 --Due Process Complaint.**

NUMBER OF PAGES INCLUDING COVER SHEET:   **TWELVE**

COMMENTS:

## PLEASE SET FOR EXPEDITED HEARING

# Exhibit 2

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## ENFORCEMENT AND INVESTIGATION DIVISION
2007 JUL 10 PM 2: 47 SPECIAL EDUCATION DUE PROCESS HEARING
### CONFIDENTIAL

DC PUBLIC
SCHOOL SYSTEM

Seymour DuBow, Due Process Hearing Officer
1150 5th Street, S.E.
Washington, D.C. 20003
(202) 442-5432; (202) 442-5556 (fax)

## HEARING OFFICER'S DETERMINATION

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| **Damion Henson,** student | ) | |
| Date of Birth: 6/8/89 | ) | |
| | ) | Date of Complaint: May 7, 2007 |
| Petitioner, | ) | Date of Hearing: **July 6, 2007** |
| | ) | |
| v. | ) | |
| | ) | |
| **The District of Columbia Public Schools** | ) | Attending School: Non-attending |
| | ) | **Home School: Roosevelt S.H.S.** |
| | ) | |
| Respondent | ) | |

**Counsel for Parent/Student:**     **Miguel Hull, Esq.**
                                    **1220 L Street, N.W.**
                                    **Washington, D.C. 20005**

**Counsel for DCPS:**               **Daniel McCall, Esq.**
                                    **825 N. Capitol Street, N.E.,**
                                    **Washington, D.C. 20002**

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 1150 5th Street, S.E., Washington, D.C. 20003, on July 6, 2007, at the request of Miguel Hull, counsel for the parent and the student.    Daniel McCall represented DCPS, the other party to this hearing.


**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446); and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300 and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**ISSUES:**

1.   **Did DCPS deny a Free Appropriate Public Education (FAPE) to the student by failing to provide an appropriate placement?**

2.   **Did DCPS deny a FAPE to the student by failing to conduct a neurological-psychological evaluation in a timely manner?**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY STUDENT:**

**DH-1-DH-37**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY DCPS:**

**DCPS-1-DCPS-12**

**TESTIFIED AT THE HEARING:**

| | |
|---|---|
| **Juan Fernandez** | **Educational Advocate** |
| **Maxine Henson** | **Mother** |
| **Diane Visinho\*** | **Admissions Coordinator** |
| **(\* Testified by telephone)** | |

2

**FINDINGS OF FACT:**

1.  The student is an eighteen-year-old male who was first found eligible for special education services by DCPS as a student with the disability classification of Emotional Disturbance at a December 19, 2006 MDT meeting. (DH-30)

2.  The MDT team developed an IEP for the student at the December 19th MDT meeting that called for 26 hours a week of specialized instruction and one hour a week of psychological counseling services. (DH-30) The MDT team also recommended that a neuro-psychological evaluation be conducted to determine if there is any brain damage caused by automobile accidents when the student was four and six years of age. The MDT team recommended a full-time ED program and counseling services. (DH-29) A Prior to Action Notice was issued on December 19th stating that services would be provided at his neighborhood school of Roosevelt S.H.S. in their ED cluster program. (DH-32)

3.  On January 22, 2007 an MDT/Resolution Meeting was held. The MDT meeting's purpose was to finalize the IEP and resolve a due process complaint. Social and emotional goals were discussed and added to the final IEP. A neuro-psychological evaluation could have been completed on January 17, 2007 and the vocational assessment could have been completed on January 18, 2007, but the student was not available. The student was in the D.C. jail.

4.  The student has been incarcerated in the D.C. jail since January 2007. The student has previously been incarcerated on numerous occasions including December 2006 and July 2006. The student was at Oak Hill Juvenile Detention Center in March of 2006. The student was also suspended from Roosevelt and sent to CHOICE Academy in 2006. (Testimony of Mr. Fernandez, DH-21)

5.  On June 22, 2007, Judge John Mott of the D.C. Superior Court Criminal Division-Felony Branch issued an Order continuing sentencing to await the outcome of this hearing "as to whether DCPS should place Mr. Hanson in a residential treatment facility". (DH-5)

6.  The student has never participated in the ED cluster program at Roosevelt S.H.S because the student has been incarcerated.

7.  The student has been accepted at Judge Rotenberg Center in Canton, Massachusetts. (DH-16) Judge Rotenberg Center is a private residential behavioral school for children and adults. The teachers are certified in special education by the state of Massachusetts. (Testimony of Ms. Visinho)

**DISCUSSION AND CONCLUSIONS OF LAW:**

Counsel for the student has the burden of proof pursuant to *3030.3* of *Title V* of the *D.C. Municipal Regulations* which places the burden of proof on the party seeking relief that DCPS denied a FAPE to the student. DCPS first found the student eligible for special education services as an ED student and developed an IEP for the student that provided for 26 hours a week of specialized instruction and one hour a week of counseling services on December 19th 2006. The IEP was finalized at the January 22nd 2007 MDT meeting. DCPS, through no fault of its own, has been unable to implement the IEP and see if the student can benefit from full-time specialized instruction because the student has been incarcerated. Counsel for the student has not met his burden of proof that the DCPS IEP and placement are inappropriate. Counsel for the student has presented no evidence that the DCPS proposed ED cluster program at Roosevelt can not implement the student's IEP and provide educational benefits. DCPS has offered a FAPE to the student. The Supreme Court held in *Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982) that IDEA was intended to provide a "basic floor of opportunity" and an individualized plan "designed to provide educational benefit to the handicapped child" 458 U.S. at 201. IDEA, according to *Rowley*, imposes "no additional requirement that the services so provided be sufficient to maximize each child's potential commensurate with the opportunity provided other children." Id. at 198; see also *Kerkam v. McKenzie*, 862 F. 2d at 886. If a public school placement is appropriate, a school district need not consider a private placement, "even though a private school might be more appropriate or better able to serve the child." *Jenkins v. Squillacote*, 935 F. 2d 303, 305 (D.C. Cir. 1991)

As the Supreme Court held in *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15: "They [Parents] are entitled to reimbursement only if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." As a federal district court in the District of Columbia explained in *Schoenbach v. D.C.*, 309 F. Supp. 2d 71 (D.D.C. 2004):

> The first factor is a threshold condition, for if the public school placement would have been appropriate, the analysis ends, and a disabled child's parents are not entitled to reimbursement. *20 U.S.C. Section 1412 (a)(10)(C)(i)*(indicating that IDEA "does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made [FAPE] available to the child and parents elected to place the child in such private school or facility."); *M.C. v. Voluntown Bd. of Educ.*, 226 F. 3d 60, 66, (2d Cir. 2000)("Only if a court determines that a challenged IEP was inadequate should it proceed to the second question.")*T.R. v. Kingwood Township Bd. of Educ.* 205 F. 3d 572, 582 (3d Cir. 2000)("The threshold question here focuses on the first prong-viz. whether the Board's proposed placement violated the IDEA…The parental reimbursement mandate comes into play only if we answer yes to this initial question.")

Because DCPS made FAPE available to the student, the parental reimbursement mandate does not come into play.

Counsel for the student also argues that the failure of DCPS to conduct a neuro-psychological evaluation has resulted in a denial of a FAPE. In *Kingsmore v. District of Columbia*, No. 05-7156, (September 29, 2006), The U.S. Court of Appeals for the District of Columbia has recently reiterated that procedural violations of IDEA that are harmless do not deny a FAPE.: "this Court joined the majority of other circuits in ruling that a claim based on a violation of IDEA's procedural requirements 'is viable only if those procedural violations affected the student's substantive rights.' *Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) This Court denied relief to the plaintiff in *Lesesne* because she failed to demonstrate 'that [the student's] education was affected by any procedural violations DCPS might have committed.' *Id.* The *2004 Improvement Act* and its Regulation at *34 C.F.R. Section 300.513* requires that "In matters alleging a procedural violation, a hearing officer may find that a child did not receive a FAPE only if the procedural inadequacies – (i) Impeded the child's right to a FAPE; (ii) Significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) Caused a deprivation of educational benefit." None of those conditions have been met here. DCPS was ready to conduct a neuro-psychological evaluation on the student at Roosevelt on January 17th 2007, but the student was unavailable due to his incarceration. Counsel for the student has failed to meet his burden of proof that the failure of DCPS to complete the evaluation resulted in a deprivation of educational benefits when DCPS proposed a full-time special education program with 26 hours a week of specialized instruction and one hour a week of counseling. This hearing officer agrees with the counsel for DCPS's argument that counsel for the parent has not met his burden of proof that DCPS denied a FAPE to the student

It is hereby **ORDERED** that:

**Counsel for the student's request for relief is DENIED and the case is DISMISSED.**

**This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.**

Seymour DuBow, Esq.
Impartial Hearing Officer

Date filed: *July 10, 07*

Date Issued: 7|10|07

5

# Exhibit 3

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID) Special Education*
*Programs*



# *Due Process Complaint Disposition*

- This form should be used by the parties to notify the Student Hearing Office about important information concerning the outcome of the resolution meeting.
- Please return to the Student Hearing Office of the District of Columbia  Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002, Fax number 202/442-5556.

## A.   STUDENT AND CASE INFORMATION:

Student Name: Damion        Henson
             First      MI     Last

Birth Date: 6-8-89

SHO Case Number: _____ (if applicable)

## B.   PARENT / GUARDIAN:

Name: Maxine                                Henson
       First                                 Last

Complete Address: 4900 Fort Totten Drive, NE #21
                  Washington, DC  20011

Phone: _____   _____   _____
        Home             Work or alternative phone no.   Fax No. if applicable

## C.   LOCAL EDUCATION AGENCY REPRESENTATIVE:

Full Name: Kymberly   Grafton   Title: LEA, CRS

Address:
825 North Capitol Street, NE 6th Floor
Washington, DC  20002

Phone: (202) 442-4800        (202) 442-5517
        Office                Fax

1

_____    The complaint has been resolved and the parties have reached agreement to the satisfaction of the parent / guardian. The due process complaint notice and the request for a due process hearing should be dismissed and withdrawn. The parties are aware that the agreement may be voided by any party within 3 business days of the date the agreement is signed. The parties have agreed to wait at least 3 business days before filing this form with the Student Hearing Office.

___X___    The resolution session was unsuccessful. The case should proceed to a due process hearing.

_____    The resolution session was unsuccessful. The parties have agreed to try mediation.

_____    The parties mutually agree to waive the resolution session and request mediation and the assignment of a mediator to this case.

_____    The parties mutually agree to waive the resolution session and request that this case proceed to a due process hearing on the merits.

_____    The parent has failed to participate in a resolution meeting as required under the law. A due process hearing should not be scheduled until further notice

## J.    Signature and Affirmation:

I affirm that the information provided on this form is true and correct. I also affirm my receipt of the Procedural Safeguards Manual or I have waived my right to receive the Procedural Safeguards Manual.

_Virgil Null for parent_        _5/18/07_
Signature of Parent/Guardian             Date

_Kymberly Drafton_        _5-18-07_
Local Educational Agency Representative        Date

**Mail, fax or deliver this form to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**Fax number: 202/442-5556**

2

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

_x_ PUBLIC          __ DCPS CHARTER          __ LEA CHARTER          __ NONPUBLIC          ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES

Meeting Confirmation Date: [          ]          Meeting Held: 5-18-07

Student: Damion    Henson          DOB: 6-8-89          DC Jail

| PARTICIPANTS: (Print Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
| Kymberly Grafton | | LEA/CRS |
| Maxine Henson | Miguel Hull for Parent | Mother (via phone) |
| Miguel Hull | Miguel Hull | Attorney |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

[ ] Resolved          [X] Unresolved

Introductions were made at the meeting.  The parent's complaint is DCPS failed to issue an appropriate placement for the student and has failed to properly consider the parent's concerns regarding placement, failed to provide the parent with appropriate prior written notice regarding the student's educational placement and failed to complete a neurological-psychological in a timely manner.

DCPS proposes to conduct the neuro-psych evaluation for the student.  Upon completion of this evaluation, DCPS also proposes to convene an MDT meeting in which this evaluation is reviewed, student's IEP is revised as necessary, placement and comp ed are discussed, and a new prior notice and/or comp ed plan are developed if necessary.

Parent rejected DCPS' proposal and will proceed to due process.  This case is unresolved.  Parent is seeking all the relief in the complaint paragraphs 33-37.

*DCPS tried to contact Milo Howard for this session, but was unsuccessful (left message). KG.

# Exhibit 4

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Criminal Division – Felony Branch**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal Nos. 2006 CF3 14135** |
| | : | **2007 CF3 1019** |
| **v.** | : | |
| | : | **Hon. John M. Mott** |
| **DAMIAN HANSON** | : | |

## ORDER

Upon consideration of Mr. Hanson's Motion to Continue Sentencing, it is hereby ordered that Mr. Hanson's Motion is GRANTED;

ORDERED, that Mr. Hanson's sentencing is continued to await the outcome of the Administrative Hearing before District of Columbia Public Schools (DCPS) scheduled for July 6, 2007, regarding the complaint dated May 7, 2007, as to whether DCPS should place Mr. Hanson in a residential treatment facility.

SO ORDERED, this 22nd day of June, 2007.

Hon. John M. Mott
Associate Judge

Copies to:

Michael J. Satin
Counsel for Damian Hanson
Public Defender Service
633 Indiana Ave., NW
Washington, D.C. 20004

Tim Lucas
Counsel for the government
United States Attorney's Office
555 4th St NW
Washington, D.C. 20001

# Exhibit 5

*RONALD J. KOSHES, MD, DFAPA*
***Diplomate of the American Board of Psychiatry and Neurology***
***Distinguished Fellow of the American Psychiatric Association***

**1348 East Capitol Street, N.E.**
**Washington, D.C. 20003**
**(202) 543-0406**
**(202) 547-1902 (fax)**
**ronkoshes@aol.com**

## PSYCHIATRIC EVALUATION (supplement)

RE:          Damien Hanson

D.O.B:       June 8, 1989

IDENTIFYING INFORMATION: The purpose of this supplement is to provide an opinion with regard to the treatment of a 17 year-old male referred for a psychiatric evaluation in early December 2006, by Michael Satin, Esq., the examinee's attorney. The individual had been seen previously and a recommendation for treatment was made.

HISTORY OF THE PRESENT ILLNESS: This report was prepared after an examination of the legal records, and conversations with Mr. Satin. The records which were reviewed consisted of:

1.    Affidavit in Support of an Arrest Warrant, dated 5 January 2007; and

2.    Proffer of Facts dated April 6, 2007.

1

Reference is also made to a report by the undersigned dated December 8, 2006. A report was generated as the result of a diagnostic interview and is as follows:

*IDENTIFYING INFORMATION: The examinee is a 17 year-old male referred for a psychiatric evaluation in early December 2006, by Michael Satin, Esq., the examinee's attorney. The purpose of the examination was to aid the Court in determining an appropriate disposition in a criminal matter.*

*HISTORY OF THE PRESENT ILLNESS: This report was prepared after an examination of the individual in a structured psychiatric interview, a review of the available medical and legal records, and conversations with Mr. Satin and Mr. Hanson's mother. The records which were reviewed consisted of:*

3.    *Psychiatric Evaluation, March 8, 2006*

4.    *Psychoeducational Evaluation, September 2006;*

5.    *Social Work Evaluation, September 2006;*

6.    *Psychological Evaluation, September 2006.*

*Before examining Mr. Hanson, it was explained to him that he was being seen in a psychiatric examination at the request of his attorney at the Public Defender Service to assist him and the Court in determining an appropriate disposition in a criminal case. Mr. Hanson understood that the endeavor was not for the examiner to assume his psychiatric care, but rather to provide an evaluation for his legal proceedings. Having agreed to the above stipulations, the examinee agreed to the evaluation and the interview commenced.*

*Mr. Hanson was arrested in July 2006 and charged with assault and intent to rob while armed. He has repeatedly violated the conditions of his release from prison by testing positive for illicit drugs. Mr. Hanson stated that he was using drugs because of family problems which included his father leaving the home after physically abusing his sister and mother and learning that his mother had been diagnosed with breast cancer. Mr. Hanson was returned back to the*

2

jail on December 4, 2006. He is taking no psychotropic medications. He complains of sleep and appetite disturbance, anhedonia, sad mood and affect and poor motivation and concentration.

Mr. Hanson has a significant psychiatric history. He is the first of three children and there were no unusual illnesses, seizures, loss of consciousness, or head trauma during his birth or early years. His pregnancy was normal term and without complications. He was educated to the eleventh grade. He attended special education classes. Records of his impairment and progress during this time in his life are not available for review. Should they become available, I would like to review them. He stated that he started using drugs when he was eleven or twelve years old and that the drugs, principally marijuana helped him reduce his anxiety and concentrate.

Recent psychiatric, social work, psychological, and psychoeducational evaluations indicate that Mr. Hanson has borderline intellectual functioning, poor reading and math skills, depression, and attention deficit disorder. All reports reviewed indicated that Mr. Hanson suffered from impulsivity and difficulty in learning and concentrating with a mood disorder superimposed on these problems.

There were no signs of a psychotic illness or bipolar disorder.

_MENTAL STATUS EXAMINATION:_

_APPEARANCE AND BEHAVIOR:_ The examinee was cleanly attired in prison clothes. He was appropriate and interactive in the interview although it was evident that his fund of knowledge was low and that he was slow in understanding complex questions. He had a difficult time concentrating and his gaze would wander around the room and asked several times for questions to be repeated because he was not paying attention.

_COGNITION:_ The examinee was alert and oriented to person, place, time, and situation. He was cooperative, made poor eye contact, had difficulty listening attentively, and answered questions usually incompletely. He needed prompting to remember the question that was asked. He appeared to be learning disabled in so far as sentence comprehension, mathematics and

3

*reading.*

*SPEECH:* *There was no evidence of an expressive language problem.*

*MOOD AND AFFECT:* *The examinee's mood was depressed. His affect was appropriate but sad and constricted. Suicidality was not present, nor was homicidality.*

*THOUGHT PROCESS AND CONTENT:* *The examinee's thought process was somewhat slow. There was no evidence of hallucinations, delusions, paranoia, or phobias.*

*PERCEPTION:* *There was no evidence of post-traumatic stress symptoms, depersonalization, dissociation, or fugue-like states.*

*INSIGHT AND JUDGEMENT:* *The examinee's insight was poor with regard to the role of depression and substance abuse, and his learning problems played in his behaviors. He agreed to take medication to help with his concentration, mood, and to help him to stop using drugs. His judgment was appropriate during the interview, and admitted he is susceptible to pressure from peers. He was not physically impulsive in the interview setting.*

*DIAGNOSTIC IMPRESSION:*

*Axis I:*      *Depression, Not Otherwise Specified.*
             *Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type.*
             *Polysubstance Abuse.*

*Axis II:Borderline Intellectual Functioning.*
             *Learning Disorder, Not Otherwise Specified.*

*Axis III:*    *No Diagnosis.*

*Axis IV:*     *The psychological stressors within the last year are severe.*

*Axis V: The examinee's highest level of functioning within the last year is in the range of 50 - 55.*

*OPINION:* *Mr. Hanson has cognitive deficits and depression which have prevented him from*

4

*being compliant with the terms of his release. He has a treatable condition and these mental*
*illnesses were identified fairly early in his life, but were not completely treated.*

*Mr. Hanson needs to and wants to take medication for his mental illness. A good choice*
*of medication for ADHD and depression is duloxetine—Straterra. This medication can address*
*both the depressive symtomatology and it has been approved by the FDA for the treatment of*
*ADHD. His medication compliance should be monitored by a responsible adult and he needs to*
*have regular psychiatric and psychotherapeutic care. His untreated mental illness explains his*
*past history of non-compliance with the legal system and I believe that with treatment, he could*
*do better in community placement. I believe that he has used drugs in order to alleviate the*
*symptoms of his mental illness. If properly treated, Mr. Hanson is not likely to need to use illicit*
*drugs to moderate his mood, concentration and anxiety levels.*

*Additionally, his learning disorder and hyperactivity, along with his depression make him*
*particularly vulnerable to coercion by peers and he is gullible in terms of peer pressure.*
*Psychiatric and psychosocial treatment is critical to his success in the community. His risk for*
*further criminal activity will be decreased with proper treatment. In my experience, these*
*individuals who are treated aggressively and early can successfully rehabilitate. He appears*
*motivated to change the current course of his life, which he finds unacceptable.*

## SUBSEQUENT HISTORY:

Mr. Hanson was recently re-arrested for an assault and robbery which occurred on
December 17, 2006. In the Proffer of Facts, it is related that Mr. Hanson was with several other
juvenile males, accosted a man in the Fort Totten Metro area, and assaulted him, taking his
money and a backpack.

No other additional information was supplied. It was not necessary to examine the

5

individual because the facts of the case differ little with past behaviors and it was felt that no further important clinical information could be elicited.

DIAGNOSTIC IMPRESSION:

Axis I:      Depression, Not Otherwise Specified.
             Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type.
             Polysubstance Abuse.

Axis II:     Borderline Intellectual Functioning.
             Learning Disorder, Not Otherwise Specified.

Axis III:    No Diagnosis.

Axis IV:     The psychological stressors within the last year are severe.

Axis V:      The examinee's highest level of functioning within the last year is in the range of
             50 - 55.

OPINION:

        The opinion of the previous report is unchanged and is repeated here:

        *Mr. Hanson has cognitive deficits and depression which have prevented him from being compliant with the terms of his release. He has a treatable condition and these mental illnesses were identified fairly early in his life, but were not completely treated.*

6

*Mr. Hanson needs to and wants to take medication for his mental illness. A good choice of medication for ADHD and depression is duloxetine—Straterra. This medication can address both the depressive symtomatology and it has been approved by the FDA for the treatment of ADHD. His medication compliance should be monitored by a responsible adult and he needs to have regular psychiatric and psychotherapeutic care. His untreated mental illness explains his past history of non-compliance with the legal system and I believe that with treatment, he could do better in community placement. I believe that he has used drugs in order to alleviate the symptoms of his mental illness. If properly treated, Mr. Hanson is not likely to need to use illicit drugs to moderate his mood, concentration and anxiety levels.*

*Additionally, his learning disorder and hyperactivity, along with his depression make him particularly vulnerable to coercion by peers and he is gullible in terms of peer pressure. Psychiatric and psychosocial treatment is critical to his success in the community. His risk for further criminal activity will be decreased with proper treatment. In my experience, these individuals who are treated aggressively and early can successfully rehabilitate. He appears motivated to change the current course of his life, which he finds unacceptable.*

Mr. Hanson needs to be in a more supervised and structured setting. He needs supervised, rehabilitative services which are best described as residential services. Because of his cognitive problems, placing him in a supervised residential setting will insure that he receive psychiatric treatment and medications. If in an unsupervised setting, he is likely to re-offend.

If you should have any further questions, please do not hesitate to contact me.

(ELECTRONICALLY SIGNED)

Ronald J. Koshes, MD, DFAPA

May 25, 2007

7

# Exhibit 6

## *RONALD J. KOSHES, MD, DFAPA*

*Diplomate of the American Board of Psychiatry and Neurology*
*Distinguished Fellow of the American Psychiatric Association*

**1348 East Capitol Street, N.E.**
**Washington, D.C. 20003**
**(202) 543-0406**
**(202) 547-1902 (fax)**
ronkoshes@aol.com

### PSYCHIATRIC EVALUATION

RE:         Damien Hanson

D.O.E.:     December 6, 2006

D.O.B:      June 8, 1989

SSN:

Case #:

IDENTIFYING INFORMATION: The examinee is a 17 year-old male referred for a psychiatric evaluation in early December 2006, by Michael Satin, Esq., the examinee's attorney. The purpose of the examination was to aid the Court in determining an appropriate disposition in a criminal matter.

HISTORY OF THE PRESENT ILLNESS: This report was prepared after an examination of the individual in a structured psychiatric interview, a review of the available medical and legal records, and conversations with Mr. Satin and Mr. Hanson's mother. The records which were reviewed consisted of:

      1.     Psychiatric Evaluation, March 8, 2006

      2.     Psychoeducational Evaluation, September 2006;

      3.     Social Work Evaluation, September 2006;

1

4.     Psychological Evaluation, September 2006.

Before examining Mr. Hanson, it was explained to him that he was being seen in a psychiatric examination at the request of his attorney at the Public Defender Service to assist him and the Court in determining an appropriate disposition in a criminal case. Mr. Hanson understood that the endeavor was not for the examiner to assume his psychiatric care, but rather to provide an evaluation for his legal proceedings. Having agreed to the above stipulations, the examinee agreed to the evaluation and the interview commenced.

Mr. Hanson was arrested in July 2006 and charged with assault and intent to rob while armed. He has repeatedly violated the conditions of his release from prison by testing positive for illicit drugs. Mr. Hanson stated that he was using drugs because of family problems which included his father leaving the home after physically abusing his sister and mother and learning that his mother had been diagnosed with breast cancer. Mr. Hanson was returned back to the jail on December 4, 2006. He is taking no psychotropic medications. He complains of sleep and appetite disturbance, anhedonia, sad mood and affect and poor motivation and concentration.

Mr. Hanson has a significant psychiatric history. He is the first of three children and there were no unusual illnesses, seizures, loss of consciousness, or head trauma during his birth or early years. His pregnancy was normal term and without complications. He was educated to the eleventh grade. He attended special education classes. Records of his impairment and progress during this time in his life are not available for review. Should they become available, I would like to review them. He stated that he started using drugs when he was eleven or twelve years old and that the drugs, principally marijuana helped him reduce his anxiety and concentrate.

Recent psychiatric, social work, psychological, and psychoeducational evaluations indicate that Mr. Hanson has borderline intellectual functioning, poor reading and math skills, depression, and attention deficit disorder. All reports reviewed indicated that Mr. Hanson suffered from impulsivity and difficulty in learning and concentrating with a mood disorder

2

superimposed on these problems.

There were no signs of a psychotic illness or bipolar disorder.

MENTAL STATUS EXAMINATION:

APPEARANCE AND BEHAVIOR: The examinee was cleanly attired in prison clothes. He was appropriate and interactive in the interview although it was evident that his fund of knowledge was low and that he was slow in understanding complex questions. He had a difficult time concentrating and his gaze would wander around the room and asked several times for questions to be repeated because he was not paying attention.

COGNITION: The examinee was alert and oriented to person, place, time, and situation. He was cooperative, made poor eye contact, had difficulty listening attentively, and answered questions usually incompletely. He needed prompting to remember the question that was asked. He appeared to be learning disabled in so far as sentence comprehension, mathematics and reading.

SPEECH: There was no evidence of an expressive language problem.

MOOD AND AFFECT: The examinee's mood was depressed. His affect was appropriate but sad and constricted. Suicidality was not present, nor was homicidality.

THOUGHT PROCESS AND CONTENT: The examinee's thought process was somewhat slow. There was no evidence of hallucinations, delusions, paranoia, or phobias.

PERCEPTION: There was no evidence of post-traumatic stress symptoms, depersonalization, dissociation, or fugue-like states.

INSIGHT AND JUDGEMENT: The examinee's insight was poor with regard to the role of depression and substance abuse, and his learning problems played in his behaviors. He agreed to take medication to help with his concentration, mood, and to help him to stop using drugs. His judgment was appropriate during the interview, and admitted he is susceptible to pressure from peers. He was not physically impulsive in the interview setting.

## DIAGNOSTIC IMPRESSION:

Axis I:     Depression, Not Otherwise Specified.

Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type.

Polysubstance Abuse.

Axis II:    Borderline Intellectual Functioning.

Learning Disorder, Not Otherwise Specified.

Axis III:   No Diagnosis.

Axis IV:    The psychological stressors within the last year are severe.

Axis V:     The examinee's highest level of functioning within the last year is in the range of 50 - 55.

OPINION: Mr. Hanson has cognitive deficits and depression which have prevented him from being compliant with the terms of his release. He has a treatable condition and these mental illnesses were identified fairly early in his life, but were not completely treated.

Mr. Hanson needs to and wants to take medication for his mental illness. A good choice of medication for ADHD and depression is duloxetine—Strattera. This medication can address both the depressive symtomatology and it has been approved by the FDA for the treatment of ADHD. His medication compliance should be monitored by a responsible adult and he needs to have regular psychiatric and psychotherapeutic care. His untreated mental illness explains his past history of non-compliance with the legal system and I believe that with treatment, he could do better in community placement. I believe that he has used drugs in order to alleviate the symptoms of his mental illness. If properly treated, Mr. Hanson is not likely to need to use illicit drugs to moderate his mood, concentration and anxiety levels.

4

Additionally, his learning disorder and hyperactivity, along with his depression make him particularly vulnerable to coercion by peers and he is gullible in terms of peer pressure. Psychiatric and psychosocial treatment is critical to his success in the community. His risk for further criminal activity will be decreased with proper treatment. In my experience, these individuals who are treated aggressively and early can successfully rehabilitate. He appears motivated to change the current course of his life, which he finds unacceptable.

If you should have any further questions, please do not hesitate to contact me.

Ronald J. Koshes, M.D.

December 8, 2006

5

# Exhibit 7

Hanson, Damion

Government of the District of Columbia
Department of Mental Health

**CONFIDENTIAL**

March 8, 2006

In the matter of:                                                                              RE: Hanson, Damion
Damion Hanson                                                                           DOB: 6/8/89
Docket: J 334-06                                                                          DOE: 3/5/06
Social File:2004 JSF 1964

## Psychiatric Evaluation

This is one of a few lifetime mental health contacts including past psychiatric hospitalization for "detox" for this 16 year old Jamaican youth. Damion generally resides with his family in the District and last attended Roosevelt High School at a 9th grade level. Although there is a suggestion that a learning and/or behavioral problem may be present no formal assessments have yet occurred. Damion is presently detained at Oak Hill Youth Center and was seen at the request of the Court to assist in disposition and treatment.

Informants:

Damion was interviewed at Oak Hill Youth Center on 3/5/06. Damion's father Moses Hanson was interviewed on 2/26/06. Other documents provided and reviewed included:

Juvenile referral form, Superior Court of the District of Columbia, Social Services Division-Family Branch, Youth Forensic Services, Date Referred: 2-21-06.

Order For Mental Or Physical Examination Prior To A Fact Finding Hearing, Superior Court of the District of Columbia, Family Division - Juvenile and Neglect Branch, Date: February 15, 2006.

Delinquency Report, Metropolitan Police Department, Date: 02-14-06.

Petition, Superior Court of the District of Columbia, Family Division - Juvenile Branch, signed 2/15/06.

Juvenile Interstate Compact Matter, Superior Court of the District of Columbia, Social Services Division - Juvenile Branch, Date: November 22, 2005.

Interstate Compact On Juveniles Quarterly Progress Report, signed 11/22/05.

Psychotherapy Termination Progress Report, Child Guidance and Family Counseling Clinic, Date of Report: 10/12/05.

Psychotherapy Monthly Progress Report, Child Guidance and Family Counseling Clinic, Date of Report: 10/4/05.

Referral To The Child Guidance Clinic Individual Therapy, Superior Court of the District of Columbia, Family Court, Social Services Division-Juvenile Branch, signed 9/13/05.

Addition to Incident Report, Submitted by Ms. Zakia Cummings, 9/12/05.

Memorandum, August 12, 2005, Superior Court of the District of Columbia, Subject: Status Hearing on August 15, 2005, dated 8/12/05.

Petition, Superior Court of the District of Columbia, Family Division - Juvenile Branch, signed 08/03/2005.

Juvenile Arrest Report, United States Park Police, Date 08-02-05.

Letter from M. A. Hanson, signed 6/8/05.

Post Disposition Investigation (including document with header "Pre-disposition Investigation"), Maryland Department of Juvenile Services, Date: March 10, 2005.

Front End Assessment Center Screening Form, Department of Mental Health, Youth Services Center, Date 8/3/03.

Referral Questions:

What is Damion's prognosis for community adjustment?

What are Damion's treatment and counseling needs?

Is Damion a threat to self or the community?

Is Damion a candidate for residential placement, or wraparound services?

Why does Damion consistently engage in dangerous self-destructive and anti-social behavior?

Confidentiality Statement:

Damion was informed of the purpose of the evaluation and that the information he provided would be incorporated into a report that would be seen by the Court and the Court's agents. He was also advised not to provide information that could be used against him in Court.

Family History:

Damion was born to Moses and Maxine Hanson. The couple hails from Jamaica and is married. Both parents are employed and there is no history of mental illness, domestic violence, drug or alcohol use or arrests. Damion has two siblings, Chris Hanson (DOB: 6/30/01) and Ann-Sheree Hanson (DOB: 9/7/92). Neither is reported to have posed any emotional problems or have been involved with the Court.

Developmental History:

Damion was reported to be born at term and without complications. Developmental milestones were reported to have been achieved on time.

Academic History:

Damion last attended Roosevelt Senior High School at a 9th grade level which was his second attempt at completing this grade. He reportedly "failed" the 9th grade due to "poor attendance" and a "history of being suspended." Suspensions have reportedly been due to "fighting and insubordination." He is not identified as a special education student, although his probation officer in Maryland has noted that "he has difficulty spelling and using proper grammar."

Little information is available regarding Damion's earlier academic career. Mr. Hanson eludes that Damion has had a chronic problem with learning as he does not remember what he has been taught. According to the father no evaluations have occurred to assess this and the school has not identified his son as needing an IEP.

Social History:

Damion's early childhood is not well characterized. It is known from Damion's father that his son was raised by extended family for some portion of his life prior to immigrating to the United States when he was 10 years old. Other family members have reportedly found Damion to be a child who does not listen to authority, but it is not clear just how serious this was. Otherwise, it is not clear what was his general circumstance while living in Jamaica.

There is a reference in the referral information that Damion's family situation was "chaotic." Although the reference is not clarified, it appears that this is a comment that reflects the family's current state since immigrating to the United States. Reportedly, Mr. Hanson finds Damion "difficult to handle" and Damion has expressed that "he does not get along with his father at all." Damion is noted not to follow his 8 pm curfew and is not accountable to his parents when he leaves. Damion has run away in the past for up to a week at a time, and once did so following an argument with his parents. It is also reported by the father that Damion "makes threats towards him when he asks the respondent to do anything."

It appears that Damion's arrest history dates back to 2004 (the nature of the 2004 arrest was not appreciated by this examiner) in the District and that Damion has been supervised by the Social Services Division of the Superior Court for a matter that occurred in Maryland (JA05-0088). During the active period of this supervision Damion appears to have been arrested thrice (J 334-

06, J 2117-05, J 1580-05). It appears that Damion's initial response to the "courtesy supervision" was "satisfactory." However, he could not perform certain requirements such as obtain a summer job as his birth certificate is from Jamaica.    The parents' noted that his Maryland orders did not include a curfew, which they believed was unfortunate, and one was subsequently imposed by the probation officer. The imposed curfew of 9 PM was not complied with.

Shortly after this period of courtesy supervision Damion was arrested in J 1580-05 and placed at Reach Shelter House. It was at this time that he was referred for psychological testing and therapy, the latter of which was intended to address "parent/child conflict and Damion's substance abuse recovery," in addition to other reports of suicidal ideation (Damion was reported to express this to Reach Shelter staff as well as to his social worker during family meetings). Damion did not comply with ordered psychological testing and was arrested in J 2117-05 prior to the commencement of therapy. It appears that he was subsequently released after this, possibly to Triangle shelter house. At some later point he was re-arrested in J 334-06 and has been detained at the Youth Services Center since.

At the time of his courtesy supervision, Mr. Hanson drafted a letter recounting Damion's problems in the home. This letter indicates that Damion leaves home without parental consent, does not follow rules and is "out of control," and does not do anything in the home, including his homework from school. Absconding from the home is listed, and it appears that he leaves for a 24 hour period, returns home briefly, and then leaves again.

Legal History:

Prince George's County

| 3/4/05 | Malicious Destruction of Property | Found involved |
|---|---|---|
| | JA05-0088 | |

The above charge involved a reported attempt to steal a car.

District of Columbia

| 2/15/06 | ADW-Knife | |
|---|---|---|
| | J 334-06 | |
| | Simple Assault | |
| | J 2117-05 | |
| 8/2/05 | Robbery Force and Violence | |
| | J 1580-05 | |

History of Drug Use:

Damion reports the onset of cannabis and alcohol use at the age of 14. His use has included

treatment at the Psychiatric Institute of Washington in 2002.

Medical History:

There are no known allergies and no acute medical problems.  There is also no history of head trauma.

Mental Health Contact:

Damion has had an admission to The Psychiatric Institute of Washington for "detox."  Other than this it would appear that family and individual therapy did not occur due to re-arrest.

Psychological Testing:

Testing was not available at the time of this evaluation.

Interview and Mental Status Exam:

Damion appears as a slender youth.  He appeared annoyed, and at times was frustrated by the interview, but remained cooperative and polite throughout.  No excess motor activity was noted and he was not easily distracted.  His speech was goal directed and of normal rate and volume. His mood was self described as "okay," but he appeared irritable.  Affects were constricted and predominantly annoyed.  Thoughts were cogent and lucid and no psychoticisms were present. Content of thinking was significant for externalizing blame for his current circumstances.  Insight was very poor, and was unable to assist judgment.  He was oriented to place and time and recent and remote memory was intact.

Damion began with a description of his family.  He reported that his mother and father were married and that he is the oldest of three children.  His mother is employed in daycare and his father is employed in a car dealership.  He noted that his parents moved here from Jamaica and that the family immigrated when he was 10 years old.  He reported that his father had been a civilian employee at the prison in Cuba run by the armed services and because of that he was primarily raised by his mother and grandmother when younger.  No mental illness, alcohol or drug use, arrests or domestic violence were reported to be present in his family.

Damion reported that life in Jamaica was "good."  He reported that while there he was doing well in school, was going to school "every day" and that when he moved to the United States he missed it.  When asked why his family had moved, he stated, "If I stayed in Jamaica something would have happened to me, it was too violent."  He also reported that his mother and father wanted something better for the family as well.

After arriving his first school placement was at Bachus Middle School.  He reported that his grades and behavior were "okay" then, and that it was not until he entered high school that he began to have problems.  He entered Roosevelt Senior High school and began to skip class and hanging around negative peers.  Damion was not sure what attracted him to this peer group.

Damion then reported an incident that occurred in school when he had gotten jumped in what was an attempt to steal his shoes and jacket. He reported that after this he began to carry a knife to school to protect himself. He then reported another incident where he had been confronted by the cousins of a girl he was talking to, a girl that had "flicked off" over what he reported was nothing, "I was just trying to talk to her and I touched her arm." He then reported that this girl got all of her cousins to go after him and they were "getting in my face." He reported that he pulled the knife "so they could see it" and was subsequently locked up. In addition he reported a robbery charge, stating that this charge was "not him" but was perpetrated by friends.

Damion was asked why he simply did not walk away from the girl. This question frustrated him greatly. Eventually he stated that he would not let a girl talk to him like that, as if to do so was a great insult. When asked why this was such an apparent insult, he did not respond, and seemed incredulous, as if the insult were plainly obvious. It was pointed out to him that this was one of several arrests, and certainly given his history he knew that a re-arrest posed a very large problem. It was then pointed out to him that he lost his freedom as a result of his pride. He reported that at the time he did not think this was so, and then stated that maybe he had an "anger" problem.

Damion reported that he was "tired" of people taking advantage of him and that with regards to that situation with the knife he was not going to let "no girl sass me." He was asked again if his pride was more important than his freedom. He grew angrier with this assertion stating that I was not getting the point, to which I responded that he did not get the point and I reminded him where the interview was taking place.

Damion then reported that whether or not he got into trouble that day was dependent upon whether or not he woke up in a "bad mood" and on the "wrong side of the bed." He reported that he would have these moods about two out of seven days a week and that they usually followed a fight he would have with peers after people were "messing with me." He acknowledged that after people "mess" with him he remains angry for a long period of time, sometimes days, and that he did believe he was more sensitive then most. He then gave another example of how he had been "locked up" after a fight in the group home when someone commented upon his "dead friend." He reported that his friend "Darren" died in August of 2005 and he then noted the tattoo on his right arm that represented his friend. When asked if his mood was worse after this, he reported that it was a "little" but that he had been sensitive even before this. He did not believe he was "depressed" but rather believed that this was "him" as he could recall no time when he did not feel like this, adding that he had been like this since he was a child. He denied other causes to the mood, and did not believe it was related to cannabis use, which had it's onset at 10 and reached a plateau of one blunt a day. No other drug or alcohol use was reported.

Damion denied other symptoms of a depression, manic, anxiety based, trauma related or psychotic disorder. He denied past suicidal, homicidal or self-injurious ideation or behavior. He also denied that he had ever been physically or sexually abused.

We ended with a discussion of his family and their views of his behaviors. He reported that he was close to his family but that they were frustrated with him. It was pointed out to him that he

had a father who was present in his life and his mother and father was married, and if he recognized if this made him different than most of his peers at Oak Hill. He reported that he did not recognize this and that for him it did not "matter." He was asked if his parent's worry about him and if their worry had any impact upon his behavior. He stated that it did and that he did try to change his behavior because his parents were worried. When it was pointed out to him that his behavior belied this, he indicated that what had occurred to him was just a series of unfortunate luck.

<u>Interview with Moses Hanson:</u>

Mr. Hanson was reached by phone. Initially, Mr. Hanson reported that he could not provide any information regarding his son, essentially saying that only his son should answer for his behaviors. It did not appear that Mr. Hanson was being purposefully unhelpful, but rather was expressing his frustration regarding his son, although it should be noted that when he was asked if he was frustrated, he did not answer saying instead that his son is not at home and therefore he did not have to worry about him.

After explaining the kind of information that would be helpful, he reported that his son has had a problem learning ever since he was relatively young, but never had an IEP. He recalled that the teachers would say that he had little recall for what he learned in school, and that he chronically never liked to do his homework. Ms. Hanson was not sure what the nature of the learning problem was. He was not sure if his son had problems with inattention or not.

Mr. Hanson did convey two very salient points regarding Damion. The first was that his son even when living in Jamaica with extended family did not like to listen to adults and was frequently hanging out. He reported that as he has gotten older this has worsened given the nature of his age and what he can now become involved in, but in general, these behaviors are not new.

The other point that he mentioned was how the family had addressed his running away behaviors in the past. Mr. Hanson explained that Damion did not listen, did not do his chores, and especially did not tell his parents where he was going when he would leave the home. He reported that his son would be gone sometimes for two day, and when 11 PM would come he would call the police to help look for his son. He then reported that when his son returned the next day his son would indicate to him his displeasure for having called the police.

As indicated above, I asked Mr. Hanson if he was frustrated with his son's behavior. This question was not answered directly. I then asked if he was worried about what might happen to his son and he reported that he was not worried at present as he thought that his son would "change" as a result of being detained. I asked if he felt that this was going to be so, and he reported that he expected it to be.

Lastly, I mentioned to Mr. Hanson my concern that Damion could be depressed and that could be leading to some of his problems. He reported that if a psychiatrist, an "MD," were to see him he should be able to tell if this was true or not. I explained that I was a physician and that most of the time adolescents cannot be counted on to give a full history and that often the parents were better

able to provide a more complete history. Mr. Henson reported that he "did not know" if his son was depressed or not.

I asked Mr. Hanson to have his wife call me and left two numbers I could be reached at. Thus far a return call has not been made.

<u>Summary and Formulation:</u>

This is one of a few mental health contacts for this 16-year-old Jamaican youth presently detained at Oak Hill Youth Center. Damion had the benefit of being born into an intact family where both parents are employed. His early and middle childhood as noted above is not well characterized, but what is known would suggest that there may have been learning problems, even attention problems, as well as a long-standing behaviors of opposing authority that were present prior to the family immigrating to the United States. It also appears that Damion was raised by extended family and not his parents while living in Jamaica. It is not clear when or how long this occurred, or if this was in itself a contributing stress to Damion's current clinical picture.

Immigration does not appear to have necessarily been stressful to Damion and there is some suggestion that his early time here in the United States may have been characterized by an minimally adequate adaptation to school and home. However, as noted by Mr. Hanson, problems progressed and Damion's already oppositional behaviors came to the forefront and involved increasingly more reckless behaviors, a point reflected in his absconding and his subsequent arrests. Cannabis abuse has also ensued as has the carrying of weapons.

Clinically Damion appears to describe severe emotional reactivity as well as sensitivity to criticism and insults, real or imagined. Although he does not endorse more classical symptoms of depression, he does report what has been a lifelong history or emotional reactivity that is clearly getting him into a lot of trouble. I would also point out that even though Mr. Hanson was not particularly helpful to this examiner, and Ms. Hanson did not call back, that the family historically has tried very hard to help Damion. Calling the police, past attempts to set limits, and attempts to see him through therapy have been for naught. It has also not helped that Damion has thus far eluded an IEP for what likely may be a true learning disorder with or without the inattentive form of ADHD.

Much of the interventions needed by Damion will require the results of his psychological testing. If a learning disorder is borne out, or if the testing provides corroborating evidence for ADHD, then these disorders will need to be treated. Given Damion's emotional reactivity which appears consistent with a disruption of mood, I would suggest that both an LD/ED designation be sought for his IEP. With that and with the help of an educational advocate an alternative learning placement can then be located.

Damion and I had a lengthy discussion regarding the use of medication, which he initially balked at. I think though with time and effort Damion could be persuaded to take medication for his mood problems. I would point out that it is quite likely that he has already been taking medication for this in the form of cannabis, and that he would be better off taking FDA approved medication,

as opposed to what he otherwise has available.

It is hard to say whether or not Damion has had a chance at a lesser restrictive placement since most of his interventions have not occurred due to detention. My suggestion would be to see if family therapy could begin while Damion is detained, and to see what progress can be made. This, in addition to the help his psychological evaluation can have in explaining that Damion has a real problem with learning, not that he is just "bad," might help enough to get them back on a road to progress. Then, if drug use can be addressed and a proper school placement can be had with the addition of increased supervision in the home with wraparound services it might be possible to avoid residential treatment. The critical piece here will be to make sure that drug treatment, family therapy, and an alternative school placement are all in place prior to his release from detention.

If however this is provided in a good faith effort and Damion continues to behave as he has, then residential treatment is going to be likely.

Diagnosis:

| Axis I | 296.90 | Mood Disorder, NOS |
| | 315.90 | Learning Disorder, NOS (provisional diagnosis) |
| | 314.00 | Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type (rule out diagnosis) |
| | 304.30 | Cannabis Abuse |
| | V61.20 | Parent Child Relational Problem |
| | V71.02 | Adolescent Antisocial Behaviors |
| Axis II | V62.89 | Borderline Intellectual Functioning (rule out diagnosis) Narcissistic and borderline traits |
| Axis III | | none |
| Axis IV | | academic, legal, family and social problems |
| Axis V | GAF=45 | |

Referral Questions:

### What is Damion's prognosis for community adjustment?

Damion's track record would indicate that his potential for community adjustment is risky. Hopefully the use of family therapy, drug treatment and an appropriate educational placement will reduce this risk.

### What are Damion's treatment and counseling needs?

His specific educational needs will require completion of psychological testing. Otherwise treatment interventions will need to include family therapy, drug treatment and his own psychotherapy including a recommendation for psychotropic medication for mood, and possibly ADHD symptoms as well. Wraparound services that are described above could also be helpful. I would however discourage the use of a mentor. Damion has a father, and what needs to occur is a repair of the father/son relationship, not a substitution.

**Is Damion a threat to self or the community?**

Damion's mood lability places him at risk for hurting others which is in part why I am stressing both individual therapy and medication. The Court will also note a past history of suicidal ideation. Although Damion does not acknowledge past or present suicidal ideation or intent at this time and this does not appear to be an active problem, it could be if he endures a significant stress.

**Is Damion a candidate for residential placement, or wraparound services?**

Please see above.

**Why does Damion consistently engage in dangerous self-destructive and anti-social behavior?**

I would like to think that this is due in part to a mood problem that has gone untreated, i.e., irritability, low frustration tolerance and emotional reactivity combine and then contribute to what is a very oppositional picture. This though is not a completely satisfactory picture and I do wonder what escalating tensions in the family have in contributing to his continued acting out. For some reason Damion acts as if he is very angry at his parents, the reasons for which are unclear. Again, mood could be part of this, but I do wonder what might be going on that has not at this time come to light.

If there are any questions I can be reached at (202) 724-4377.

_Michael R. Kronen_    3/21/06

Michael R. Kronen, M.D., Ed.M.    Date
Child and Adolescent Psychiatrist
Youth Forensic Services Division

# Exhibit 8



# interdynamics, inc.

**Evaluations and Therapy**

## Social Work Evaluation Report

Student Name:  Damion Hanson                DOB:  June 8, 1989
Primary Language:  English                      Age:  17 years, 3 months
Parent/Guardian:  Maxine Hanson            Grade:  10th
Address:  4900 Fort Totten Drive NE
            Washington, DC 20011
Telephone:  (202) 636-9106
Date of Evaluation:  September 13, 2006
Referral Source:  Mr. Miguel, Attorney

### Reasons for Referral:

Damion Hanson was referred for an evaluation to determine recommendations for
subsequent educational planning and placement.

### Developmental/Medical History

Information contained in this report was provided by Damion's mother, Mrs. Maxine
Hanson. Damion was born in Jamaica by normal vaginal delivery, following a full term
pregnancy. He weighed 6 lbs and was 21 inches long. Ms. Hanson denied any use of
tobacco, alcohol, or drug use during her pregnancy. There were no childhood illnesses
reported. Damion had an umbilical hernia at birth which was removed when Damion
was five years old. At the age of 6, Damion was hit by a car and received several stitches
in his head. He has never been hospitalized overnight for an illness or injury. His
immunizations are up to date. Ms. Hanson reported that Damion's developmental
milestones occurred within normal limits for walking which was at ten months of age,
and talking and toilet trained at two years of age. Ms. Hanson reported that Damion only
eats junk food. In reference to his sleeping he tosses and turns all night and does not
usually get up before ten o'clock am. Damion is not on any medications.

2

**Family History**

| Name | Age | Relationship |
|------|-----|--------------|
| Maxine Hanson | Unknown | Mother |
| Moses Hanson | 42 | Father |
| Damion Henson | 17 | Self |
| Ann Sheree Hanson | 14 | Sister |
| Chris Hanson | 5 | Brother |

Damion Hanson currently resides with his parents and his siblings in a two bedroom apartmen in Washington DC. Mr. and Mrs. Hanson and their family resided in Jamica until 1995. Prior to this time, Mr. Hanson was working in Cuba as a mechanic and would visit his family in Jamaica once or twice a year. Mr. Hanson was laid off in 1998, and joined his family in Jamaica for two months, before he and Mrs. Hanson moved to Maryland, United States. Damion was placed with his paternal aunt and grandmother initially, but because of inappropriate behavior and his grandmother's illness, he was moved to his maternal aunt.  His sister, Ann Hanson, was already staying with the maternal aunt. Damion and his sister came to the United States in 2000. Ms. Hanson reported that Damion and his father have had a tumultuous relationship since he returned to the household. In December 2004 Damion was sent back to Jamaica to live with his paternal grandmother, because the relationship between him and his father had escalated to the point that Damion was threatening his father. Ms. Henson stated that she sent for him in March 2005, because he was being disrespectful toward his grandmother. Ms. Hanson is employed as a teacher's assistant, and Mr. Hanson works as a mechanic. Ms. Hanson reports that her two other children are doing well in school.

**Social/Behavior Characteristics**

Damion's mother described him as very moody, angry, uncommunicative and a loner. She feels that her son is a follower. His friends were described as poor role models. Damion played football in Junior High School, but currently only likes to listen to his music, sing, and play with his Play Station. At the age of fourteen, Damion started socializing with the wrong crowd. He began to disrespect his curfew on a regular basis. He was incarcerated for fighting, and attempted robbery and was sent to Oak Hill Youth Facility. He stayed at Oak Hill for a couple of months and did well academically in their school facility. Damion has been sent to Oak Hill three times within the last two years and continues to be on probation. In June 2006, he was charged as an adult for Assault with a Dangerous weapon. The disposition is pending.  He is on house arrest with a bracelet, and has to be in the home by 10pm. Ms. Hanson reports that Damion wants to

3

go back to Oak Hill so that he can "be by himself." Ms. Hanson expressed concern about Damion's emotional and academic challenges.

## School History

Ms. Hanson reported that Damion attended first through sixth grades in Jamaica. He did not do well academically or behaviorally. He could not keep still, and did not complete class work or school work. The teacher attempted to curtail his behavior by sitting Damion next to her in the classroom.   When Damion came to the United States he was enrolled in Bertie Backus Junior High School in the seventh grade. He did not do well; receiving all F's. He was promoted to the eight grade, but also failed. He was promoted to the ninth grade and enrolled in Roosevelt High Grade. During this year Damion had a lot of absences and tardy. It was during this year that Damion was sent to Jamaica for three months because he and his father did not get along. He was also suspended for fighting in school and was sent to Choice Academy for a month.

Ms. Henson is not sure of Damion's academic progress at this point, but he was promoted to the tenth grade where he continues to reside.

A Psychiatric Evaluation was completed on March 5, 2006, by Dr. Michael R. Kronen of the Youth Forensic Services Division. At the time of this evaluation Damion was being detained at Oak Hill Center. Dr. Kronen gave the following diagnosis:

| | |
|---|---|
| Axis I | Mood Disorder, NOS |
| | Learning Disorder, NOS (provisional diagnosis) |
| | Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type (rule out diagnosis) |
| | Cannabis Abuse |
| | Parent Child Relational Problem |
| | Adolescent Antisocial Behaviors |
| Axis II | Borderline Intellectual Functioning (rule out diagnosis) |
| | Narcissistic and borderline trait |
| Axis III | None |
| Axis IV | academic, legal, family and social problems |
| Axis V | GAF = 45 |

4

**Summary**:

Damion Henson is a seventeen-year-old African American male who experienced an uneventful birth and normal development. He did get hit by a car at the age of six and had to get several stitches.

Reportedly, Damion has experienced academic challenges since the first grade. Ms. Henson described these challenges as the inability to stay focused, complete assignments, and poor social skills.

In addition, he had a head injury at the age of six which could have caused brain damage. His problems seemed to escalate once Mr. Hanson returned to the family. In addition, two months later, Mr. and Mrs. Hanson moved to the United States and left Damian with his extended family. Another adjustment for Damion was coming to the States, learning a new culture, residing with his father, and having to respect him as the head of the household. These problems just exasperated the academic and emotional problems that Damion was already experiencing. It appears that Damion has sought out his peer group for a sense of belonging, which has lead to legal problems both in the juvenile justice system and the adult legal system. Reportedly, Damion has exhibited total disrespect for his caretakers and has given up on being successful academically.

Individual counseling is warranted to assist Damion with processing the many adjustments that he has had to endure since he was a latency age child. Family counseling would also be beneficial to help the family to process all of the many changes, but also to strengthen the parenting roles to better assist Damion with his many losses and academic challenges. Given his diagnosis of Cannabis Abuse, Damion could also benefit from drug treatment.

Damion has had a history of school difficulty with appropriate interventions never identified. The origins of his difficulties are unclear and need evaluation. Still multiple adjustments, retentions, academic failures, and legal problems continue to impact Damion's level of academic success.

5

## RECOMMENDATIONS

1. Damion needs individual counseling and family counseling to address his poor self-esteem and adjustment issues as it relates to his academic performance.
2. Damion needs a vocational rehabilitation assessment to assist with career options post high school.
3. Damion needs a neuropsychiatry evaluation to assess if his head injury caused any neurological damage.
5. Damion could benefit from drug treatment to address his cannabis abuse.


Frances A. James, LICSW, LCSW-C        Date    10/23/06

# Exhibit 9



**interdynamics, inc.**

Evaluations and Therapy

## CLINICAL PSYCHOLOGICAL EVALUATION
## CONFIDENTIAL

| | | | |
|---|---|---|---|
| Name: | Damion Hanson | Date of Evaluation: | 09/13/06 |
| School: | Roosevelt Senior High School | Date of Birth: | 06/08/1989 |
| Grade: | 10th | Age: | 17 years 3 months |
| Examiners: | Steven M. Berkowitz, Ph.D. | Date of Report: | 09/25/06 |
| | Licensed Clinical Psychologist | | |

Primary Language or Mode of Communication: English

### REASON FOR REFERRAL
Damion is a 10th grader at Roosevelt Senior High School who was referred by the court for a clinical psychological evaluation to assess his current psycho-social and emotional state secondary to his substance abuse and allegations he was involved in a robbery. According to his mother, she is seeking help for him so that he can have a better life. Damion was reported to have failed 9th grade twice but was promoted to 10th grade anyway. Results from this evaluation will be used to assist in determining the most appropriate education program and/or therapeutic intervention.

During the initial interview, the purpose of the evaluation and the limits of confidentiality were discussed with Ms. Hanson and Damion. Ms. Hanson acknowledged the limits and consented to the evaluation. Damion provided his assent.

### TESTS AND TECHNIQUES ADMINISTERED
Student Interview (Damion Hanson)
Parent Interview (Mother– Maxine Hanson)
Behavioral Assessment System for Children (2nd ed.) (BASC-2)
    Structured Developmental History (SDH)
    Parent Rating Scales – Adolescent (PRS-A)
    Self-Report – Adolescent (SRP-A)
Millon Adolescent Clinical Inventory (MACI)
Incomplete Sentences Test (Adults and Older Children)
Graphic Projective Techniques: House, Tree, Person (male and female)

### History
Damion is an African-American male, currently in 10th grade, who resides in the District of Columbia with his mother and father and two siblings, a 14 year old sister and a 5 year old brother. Damion gets along well with his siblings. Originally from Jamaica, Damion was separated from his parents for about two years (when he was 9) while they relocated the family to the United States. While in Jamaica, Mr. Hanson had worked for the U.S. government in Guantanamo Bay, Cuba and he was away from the family much of the time. Damion said that

10001 Derekwood Lane, Suite #120, Lanham, Maryland 20706   Phone: 301.306.4590 Fax: 301.306.4591 www.interdynamicsinc.com

when his parents went to the U.S., he lived with his aunt in Jamaica until he was 10 and then he moved here. He said that he had not had any reading difficulties until he started smoking marijuana at about age 10 or 11, and that he tended to smoke about once a week.

Most developmental milestones were within normal limits and are offered as the following:

> Turned over alone at 5 months
> Sat alone at 4-5 months
> Crawled at 8 months
> Stood alone at 9-10 months
> Walked alone at 12 months
> Walked up/down stairs was not reported
> Showed interest in/attraction to sound at 12 months
> Spoke first words at 24 months
> Understood first words at 18 months
> Spoke in sentences at 36 months
> Toilet training was not reported

It would appear that Damion's reported language acquisition developmental milestones are somewhat delayed compared to the normal child.

Ms. Hanson reported that Damion was hit by a car on two occasions. The first time was when he was about 4-5 years old and the second time was when he was around 6-7 years old. Ms. Hanson said that the second time, Damion's injuries included head trauma to the middle of his head, possibly the right side, but she did not recall for sure. Although his injuries were treated at the time, he has not been evaluated for any potential neurological sequelae secondary to the head trauma. Ms. Hanson said that Damion did not do well in elementary school, and that he had always had problems, even when he was younger. She said that she did not recall there being any particular differences before and after his head injury except that afterwards, Damion frequently complained of headache. There was no past history of Damion having received psychotherapy or psychotropic medication, despite both having been previously recommended.

Damion has 3-4 friends with whom he associates. He said that he has no girlfriends. Damion reportedly participates in football and likes to run around with his friends. Damion denied any homicidal or suicidal ideation. He also denied experiencing any auditory or visual hallucinations. Damion reportedly has had several legal difficulties. These included having been allegedly involved in one robbery (the charges were later dropped), possession of drugs, and a subsequent robbery incident in which Damion reported that he was not directly involved. He appears to have spent about six months at a juvenile facility, related to the second robbery charge.

## OBSERVATIONS

The evaluation was completed in one visit. Damion was well groomed and alert. He appeared to be oriented to person, place and time. He was quiet, displayed a dysphoric mood, and appeared annoyed and frustrated; however, he still managed to establish adequate rapport with this examiner. He made adequate eye contact and responded to questions and tasks presented to him. Damion appeared only moderately motivated to put forth his best effort when completing tasks. It was apparent through the course of testing that Damion's reading ability was significantly challenged by the testing material. It became necessary to read the MACI, BASC, and

Hanson, Damion                    Page 2

Incomplete Sentences tests to him in order to obtain timely responses.

## PREVIOUS EVAUATION RESULTS

**March, 2006:** Damion received a psychiatric evaluation by the DC Department of Mental Health at the court's request to assist in disposition and treatment. That evaluation noted that Damion had had previous mental health contacts, including hospitalization for detoxification. Damion was diagnosed with 1) Mood Disorder NOS, 2) Learning Disorder, NOS (provisionally), 3) ADHD, predominantly inattentive type (rule out), 4) Cannabis Abuse, 5) Parent-Child relational problem, 6) Adolescent Antisocial Behaviors, 7) Borderline Intellectual Functioning (rule out), and 8) narcissistic and borderline traits. Of particular note were several opinions. Dr. Kronen opined that Damion's potential for community adjustment is risky, but hoped that therapy, drug treatment, and appropriate educational placement would reduce the risk. He recommended complete psychological testing for education needs, along with individual/family therapy, drug treatment, and psychotropic medication for mood and possibly ADHD. He opined that Damion's mood lability places him at risk of hurting others, and given a previous history of suicidal ideation, may be a risk of hurting himself as well. Finally, Dr. Kronen opined that Damion's dangerous and self-destructive behavior may be due in part to an untreated mood problem (i.e. irritability, low frustration tolerance, and emotional reactivity).

**September, 2006:** Damion received a psycho-educational evaluation the same day as the present evaluation. The results indicated Damion is functioning intellectually just barely in the borderline range (Full Scale IQ = 70), and academically ranging from pre-kindergarten to 3rd grade depending on the testing area.

## TEST RESULTS

### Millon Adolescent Clinical Inventory (MACI)

Damion was administered the MACI in order to gain an understanding of certain personality and behavioral characteristics, social and emotional discomforts, expressed concerns, and potential clinical syndromes that he may evidence. In this regard, Damion's responses indicate that his personality is characterized by apprehension and fearfulness, a marked deprecation of self-worth, and social oversensitivity combined with a strong desire for warmth, attachment, and social support. Complicating this picture is his shyness and hesitation with peers and discomfort about family relationships. He is often sad, feels friendless at times, experiences recurrent anxieties, and often feels a pervasive disharmony of mood. He lacks initiative and competitiveness, tending instead to submit to others.

He worries about social rejection, which he then anticipates, and then elicits, particularly from peers and family, thereby reinforcing his fears. Although he tends to be dependent on others, he will often deny those needs and stay distant from others. He views himself as weak, fragile, and ineffectual, preferring to be self-absorbed and lost in daydreams or preoccupations. His efforts to protect himself socially only lead to isolation. Damion's sexual thoughts and feelings have made him tense and confused, and he is troubled by his impulses and fears of sexuality. He may work hard to avoid relationships that potentially could cause him to confront his feelings about sex.

### Behavioral Assessment System for Children (BASC-2), Self-Report – Adolescent (SRP-A)

Damion completed the BASC-2, SRP-A to help provide insight into how he typically feels, and if he experiences symptoms associated with depression, anxiety, and anger. This measure also requires a person to become self-reflective in examining one's thoughts, feelings, emotions, and

how he perceives his life experiences. The measure instructs students to rate how they generally feel about themselves and their life experiences. A T-score between 60 and 70 reflects that the individual may be at risk for a clinically significant problem. Damion's responses suggest that he is "at-risk" for problems in the areas of his Attitude to Teachers, Atypicality, Locus of Control, Anxiety, Depression, and Independent Relations.

**Behavioral Assessment System for Children (BASC-2), Parent Rating Scale (PRS-A)**
Ms. Hanson completed the BASC-2, PRS-A to help provide insight into how Damion typically behaves, and if he experiences symptoms associated with depression, anxiety, and anger. The measure instructs parents to rate how they generally perceive their children's behavior, feelings and their life experiences. A T-score over 70 reflects that there may be a clinically significant problem. Ms. Hanson's responses indicated that Damion has a number of areas considered "clinically significant" problems or "at-risk" for clinically significant problems. The "clinically significant" areas are for Depression, Atypicality, Activities of Daily Living, and Functional Communication. The areas where he is "at-risk" of clinically significant problems include: Hyperactivity, Conduct Problems, Attention Problems, Leadership, and Social Skills. Higher scores on the Atypicality scale reflect endorsement of unusual behaviors or perceptual experiences that the majority of people do not perceive. These perceptions/behaviors may be the result of a substance abuse, a psychotic process, or potentially a cognitive disorder.

**Incomplete Sentences Test (Adults and Older Children)**
Several themes appeared in this instrument. Damion is particularly concerned with not having the approval of the people around him. He wants to be good, and to do well, but he is at a loss about how to go about doing those things. He would like help, but is afraid to ask for it. He does not understand why he has such trouble in school, wishes his teachers would take more time with him, and has hopes of going to college, getting a good job and his own apartment, and would like to be able to help his family escape the ghetto. He denies being afraid of anything which is usually a compensatory statement to hide his real fears or might also reflect his attempts to repress his anxieties.

**Graphic Projective Techniques: House, Tree, Persons (male and female)**
Despite drawing skills that are not well developed, Damion's drawings nevertheless featured sufficient detail to gain insight and to recognize his effort. His house is notable for the fact that despite the closed door and an absence of windows, we are still able to see the furniture inside. The closed door and absence of windows reflects his desire to remain secure, but the visibility of the furniture suggests his desire to have people see his true self inside, without having to place himself at risk. The furniture may also reflect his concerns about people being able to monitor him despite his taking precautions otherwise. Of greatest interest are Damion's male and female figures. Although each is clothed, their genitalia and nipples are clearly visible. This reflects Damion's preoccupation with sex, and his wish to be able to express himself sexually.

**Summary**
Damion is an African-American male, currently in 10th grade, who resides in the District of Columbia with his mother and father and two siblings. Originally from Jamaica, Damion was separated from his parents for about two years (when he was 9) while they relocated the family to the United States. While in Jamaica, work kept Mr. Hanson away from the family frequently. Damion lived with his aunt in Jamaica until he was 10 and then he moved to the U.S. He said that he had not had any reading difficulties until he started smoking marijuana around age 10,

and that he tended to smoke about once a week, until around age 16. Ms. Hanson reports of Damion's developmental milestones indicate that Damion's language acquisition milestones are somewhat delayed compared to most children.

Ms. Hanson reported that Damion was hit by a car on two occasions. The second time he was hit was when he was around 6-7 years old and that Damion's injuries included head trauma to the middle of his head and possibly the right side. Although his injuries were treated at the time, he has not been evaluated for any potential neurological sequelae secondary to the head trauma. She said that she did not recall there being any particular differences before and after his head injury except that afterwards, Damion frequently complained of headache. Ms. Hanson said that Damion did not do well in elementary school. Currently, Damion has 3-4 friends with whom he associates. He said that he has no girlfriends. Damion reportedly participates in football and likes to run around with his friends.

Damion has had previous mental health contacts, including hospitalization for detoxification; however, those details were not available. In March, 2006, Damion received a psychiatric evaluation by the DC Department of Mental Health. He was diagnosed with 1) Mood Disorder NOS, 2) Learning Disorder, NOS (provisionally), 3) ADHD, predominantly inattentive type (rule out), 4) Cannabis Abuse, 5) Parent-Child relational problem, 6) Adolescent Antisocial Behaviors, 7) Borderline Intellectual Functioning (rule out), and 8) narcissistic and borderline traits. The evaluator opined that Damion's potential for community adjustment is risky, but hoped that therapy, drug treatment, and appropriate educational placement would reduce the risk. He recommended complete psychological testing for education needs, along with drug treatment, individual/family therapy, and psychotropic medication for mood and possibly ADHD. He opined that Damion's mood lability places him at risk of hurting others, and given a previous history of suicidal ideation, may be a risk of hurting himself as well. Finally, Dr. Kronen opined that Damion's dangerous and self-destructive behavior may be due in part to an untreated mood problem (i.e. irritability, low frustration tolerance, and emotional reactivity).

Concurrent with this evaluation, Damion received a psycho-educational evaluation which revealed that Damion is just barely functioning in the borderline intellectual range (Full Scale IQ = 70), and his academic function ranged from pre-kindergarten to 3rd grade. During the course of clinical testing, it was clear that Damion's reading ability was significantly challenged by the testing material. It became necessary to read the MACI, BASC, and Incomplete Sentences tests to him in order to obtain timely responses.

Damion's personality is characterized by apprehension and fearfulness, low self-worth, and social oversensitivity, but with a strong desire for warmth, attachment, and social support. He is shy and hesitant with peers and uncomfortable about family relationships. He is often sad, lonely, has recurrent anxieties, and often dysphoric in his moods. He lacks initiative and competitiveness, tending instead to submit to others.

Damion worries about social rejection, which he then anticipates, and then elicits, particularly from peers and family, thereby reinforcing his fears. Although he tends to be dependent on others, he will often deny those needs and stay distant from others. He views himself as weak, fragile, and ineffectual, preferring to be self-absorbed and lost in daydreams or preoccupations. His efforts to protect himself socially only lead to isolation. Damion's sexual thoughts and feelings have made him tense and confused, and he is troubled by his impulses and fears of

Hanson, Damion                          Page 5

sexuality. He may work hard to avoid relationships that potentially could cause him to confront his feelings about sex. His drawings reflect his desire to remain secure, the transparency of his walls suggests his desire to have people see his true self inside, but it may also reflect a concern about people being able to monitor him despite his taking precautions otherwise. Damion's male and female human figures reflect Damion's preoccupation with sex, and his wish to be able to express himself sexually.

Damion's objective responses suggest that he is "at-risk" for problems in the areas of his Attitude to Teachers, Atypicality, Locus of Control, Anxiety, Depression, and Independent Relations. Ms. Hanson's responses revealed that she perceives his problems somewhat more seriously than he does. Ms. Hanson's ratings suggest that Damion has "clinically significant" problems in Depression, Atypicality, Activities of Daily Living, and Functional Communication and that he is "at-risk" in the areas of Hyperactivity, Conduct Problems, Attention Problems, Leadership, and Social Skills. Higher scores on the Atypicality scale reflect endorsement of unusual behaviors or perceptual experiences that the majority of people do not perceive and result from a substance abuse, a psychotic process, or potentially a cognitive disorder. These reported problems are consistent from his previous evaluation, but add new perspective.

Damion's projective responses related themes that reflect his social anxiety, his strained relationship with his father, his frustration at not being able to do things to his father's satisfaction, that he is still carrying feelings of abandonment from when his parents left him with his aunt for two years. Damion wants the approval of the people around him, wants to be good, and to do well, but he is at a loss about how to go about doing those things. He wants help, but is afraid to ask for it. He does not understand why he has such trouble in school, wishes his teachers would take more time with him, and has hopes of going to college, getting a good job and his own apartment, and would like to be able to help his family escape "the ghetto." He denies any fears, which usually compensates to hide his real fears or might also reflect his attempts to repress his anxieties. Despite his social anxiety, he is preoccupied with sexual feelings but does not have the experience of knowledge about how to express them.

**Diagnoses**
Damion endorsed some symptoms of both anxiety and depression; however; his symptoms do not appear to rise to the level of the major anxiety or mood disorders, consequently his diagnosis of Anxiety Disorder, NOS (the Mood Disorder diagnosis is retained, by history). Damion's results on his psycho-educational exam support a diagnosis of Borderline Intellectual Functioning; however, further assessment may be appropriate to rule out the possibility of mild mental retardation. It is unclear whether his difficulty with intellectual functioning and academics may not be related to the head trauma he experienced as a child. Consequently, a rule out diagnosis of Cognitive Disorder, NOS is offered.

His failure to comply with authority figures, his violation of social rules, and his oppositional behavior are consistent with Adolescent Antisocial Behavior. These behaviors may be related to the hyperactivity and attention problems that his mother reported and were previously diagnosed as a rule-out diagnosis. However this picture is clouded by the possible presence of a cognitive disorder and his borderline intellectual functioning, especially given Damion's unsuccessful attempts to adapt within a standard academic environment. As noted in the previous psychiatric evaluation, it is likely that Damion's substance abuse was an attempt to "self-medicate" to help him deal with the multiple stressors he has experiences.

The following diagnoses are offered:

| | |
|---|---|
| Axis I | 300.00: Anxiety Disorder, Not Otherwise Specified |
| | 296.9: Mood Disorder, Not Otherwise Specified (by history) |
| | 294.9: Cognitive Disorder, Not Otherwise Specified (rule out) |
| | 314.01: Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type (rule out) |
| | 304.30: Cannabis Abuse, Early Full Remission |
| | V71.02: Adolescent Antisocial Behaviors |
| Axis II | V62.89: Borderline Intellectual Functioning |
| | Avoidant Personality Traits with Dependent Features |
| Axis III | Childhood Head Trauma (age 6-7 years) |
| Axis IV | academic, legal, family, and social problems |
| Axis V | GAF = 50 (current) |

## Recommendations

Damion should receive a psychiatric consultation to determine whether medication would be appropriate to help manage ADHD. Medication may also be considered to help him manage his affective symptoms.

In addition to the psychiatric consult, he should be seen in individual psychotherapy to help him develop insight and psychological strategies to cope with both the family and environmental stressors he is experiencing. He should continue in Family therapy to help him improve his ability to function interpersonally and as a member of the family.

Given the report of head trauma along with his borderline intellectual functioning, a neurological evaluation may be helpful to determine if there are any identifiable neurological causes for his developmental and cognitive symptoms.

It appears that given Damion's intellectual and commensurate academic difficulties, Damion should be considered for an IEP. His academic achievement is so far below his current 10th grade placement that the detriments of keeping him mainstreamed (which may only provide additional disincentive for him to progress academically) significantly may outweigh any potential social benefits.

Thank you for the referral. Please advise if you have questions concerning this report.

Steven M. Berkowitz, Ph.D.
Licensed Clinical Psychologist

Hanson, Damion                    Page 7

# Exhibit 10



# interdynamics, inc.

**Evaluations and Therapy**

## PSYCHOEDUCATIONAL EVALUATION

### CONFIDENTIAL

Name: Damion Hanson
DOB: 6/18/89
Age: 17-1
School: Roosevelt High School
Grade: 10th

Date of Evaluation: 9/13/06
Date of Report: 9/26/06
Examiner: Cheri McNeil, PsyD
          Psychology Associate
Supervisor: James Moses Ballard, II, PhD
          Licensed Clinical Psychologist
          MD 1160; DC 354

## REASON FOR REFERRAL

Damion is a 17 year-old African American male currently attending Roosevelt High School in the District of Columbia as a regular education student. Damion was referred for a Psychoeducational Evaluation to determine his current educational needs. Results from this evaluation will aid in determining whether Damion meets the criteria for Special Education services.

## ASSESSMENT PROCEDURES

Mini Mental Status Exam
Wechsler Adult Intelligence Scale – Third Edition (WAIS-III)
Wechsler Individual Achievement Test – Second Edition (WIAT-II)
The Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)
BASC - Structured Developmental History, mother as respondent
Review of previous reports

## BACKGROUND INFORMATION

Damion lives at home with his parents and two siblings: a brother, 5, and a sister, 14. Damion's parents are originally from Jamaica, but have been living in the United States since 2000. At that time Damion experienced a brief separation from one of his parents (which one was not indicated) until both had immigrated to the States.

Mrs. Hanson reported that Damion's health was good at birth, and he weighed 6 lbs, 6 oz. Mrs. Hanson reported that Damion turned over at 5 months, sat up alone at 4-5 months, crawled at 8 months, stood alone at 9-10 months, and walked at 1 year old. She also reported that he showed interest in sound or attraction to sound at 1 year, understood his first words at 18 months, spoke his first word at 2 years, and spoke his first sentence at 3 years. Damion had ear infections as a child, but currently appears to have no reported problems with his hearing. Damion's mother also reported that he was struck by a car on two separate occasions, once about 4-5 years old, and another time when he was about 6-7 years old. She was not sure whether this resulted in permanent injury to the head; she does not have any documentation pertaining to this injury. Damion was reported to have no known allergies and is currently not taking any prescription medications.

Damion's school history is remarkable for a 9th grade retention due to "poor attendance a history of being suspended." These suspensions were reportedly due to frequent fighting and "insubordination." Damion and his parents acknowledge learning problems as well. Damion also has a history of legal problems including Malicious Destruction of Property, Assault with a Deadly Weapon-Knife, Simple Assault, and Robbery Force and Violence. He also reportedly began cannabis and alcohol use at the age of 14. Damion was previously detained at the Oak Hill Youth Center in March of 2006. At that time, he was referred for formal evaluations to determine whether emotional and/or learning problems were interfering with his academic performance.

Damion reported that he enjoys school and his favorite subject is English. He likes English because it give him the opportunity to "learn to speak English more" since he is originally from Jamaica. H denied getting into fights at school, getting along well with his peers. He admitted to at one time skipping school, but said he no longer does it. When explaining his learning style, Damion said that it is easily for him to learn when the material "put in an orderly way." He said that no one subject in particular is more difficult than another, but having things explained to him clearly and in an organized fashion is the best way for him to perform successfully.

In terms of his plans after high school, Damion reported that he would like to go to college to learn a trade. He is interested in plumbing, mechanics, and AC repair. Other interests include becoming an entrepreneur in the fashion business, perhaps starting his own clothing line. Damion's sports interests include basketball, soccer, and football.

## PREVIOUS REPORTS

There were no previous Psychoeducational evaluations in Damion's file. However, a psychiatric evaluation done in March 2006 while Damion was at the Oak Hill Youth Center culminated in a diagnosis of Mood Disorder, NOS, Learning Disorder, NOS (provisional diagnosis), Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type (rule out diagnosis), and Cannabis Abuse. Damion admits to marijuana use in the past, but currently

denies that he is using. The psychiatric evaluation also included a rule-out for Borderline Intellectual Functioning.

## BEHAVIORAL OBSERVATIONS

Damion was appropriately dressed and groomed for the current testing session, dressed in slacks and a long sleeved shirt. He was very pleasant and appeared motivated to participate in the testing. He was very cooperative, but engaged in limited spontaneous conversation with the examiner, speaking primarily when spoken to by the examiner, or when he was answering test items. Nonetheless, he completed the testing procedures and complied with the examiner requests without incident.

Damion's speech was normal for rate, fluency, and audibility. However, he was oriented to date, place, time, and purpose of the evaluation. Damion showed no signs of elevated activity level or inattentiveness. Based on Damion's testing behavior, the results of this evaluation are valid and appropriate for educational programming.

## WAIS - III RESULTS

Damion's WAIS- III Full Scale IQ score fell in the Borderline range of intellectual functioning with a score of 70 (2.0 percentile). His Verbal IQ score and his Performance IQ score were also in the Borderline range with scores of 70 (2.0 percentile) and 76 (5.0 percentile), respectively.

In the Verbal domain, Damion's scores were in the Extremely Low and Borderline ranges. His best score was on the Digit Span subtest, which measured his ability to recall and recite digits presented to him orally. Damion's lowest score in this domain was on the Information subtest, which measured his general fund of knowledge of things primarily taught in school settings. When compared to the average score of all subtests, Damion's score on the Information subtest represented a significant weakness for him when compared to other areas assessed by the WAIS-III. When compared to others his age, his score was in the Extremely Low range and represents a deficit in this area.

The Verbal Comprehension Index score (VCI) measures verbal reasoning and concept formation. Damion's VCI score was in the Extremely Low range with a Standard Score of 68 (2.0 percentile). This score was well below average when compared to others his age, and suggests that verbal reasoning skills is an area of needed improvement and should be targeted for intervention.

In the Performance domain, all of Damion's scores ranged from Extremely Low to Average. His best score was on the Picture Completion subtest, which required him to discern which essential piece was missing from pictures of items he might encounter on a daily basis. This score emerged as a significant strength for Damion, as it was significantly better than his other scores in this domain. Damion's lowest score in this domain were on Digit Symbol-Coding, and Matrix Reasoning. Digit Symbol-Coding measured his capacity for visual rote learning, while Matrix Reasoning measured his ability to reason using visual stimuli. While these were the lowest scores in this domain, both with a Scaled Score of 4, these scores did not emerge

as significant relative weakness compared to others score on the WAIS-III. However, when compared to others his age, these scores were below average and represent deficits in these areas.

The Perceptual Organization Index (POI) measures fluid reasoning, spatial processing, attentiveness to detail, and visual motor detail. It is a purer measure of nonverbal reasoning skills than the Performance IQ. Damion's score on the POI was in the Borderline range, and significantly below his same-aged peers, with a score of 78 (7.0 percentile).

## WIAT-II RESULTS

Reading

Damion's overall Reading Composite score was in the Extremely Low range, with a Standard Score of 40 (<.1 percentile). His Word Reading score was also in the Extremely Low range, with a Standard Score of 40 (<.1 percentile), and a Grade Equivalent of Pre-Kindergarten. Damion could read words like "again," "small," "stood," and "know." He had more difficulty with words like, "size," "closed," "fruit," and "knock."

Damion's score on Reading Comprehension was also in the Extremely Low range when compared to others his age, with a Standard Score of 40 (<.1 percentile) and a Grade Equivalent of 2:2 (second grade, two months into the school year). He had difficulty reading passages and answering questions about what he read. Much of his difficulty with accurately answering the questions may have been attributed to his difficulty with his basic reading skills. However, he appeared not able to pick out cues from the text that would have assisted him in answering the questions.

Damion's score on Pseudoword Decoding was in the Extremely Low range, with a Standard Score of 56 (.2 percentile). His Grade Equivalent was on the 1:2 grade level. For this task, Damion was asked to read made-up words. This task was aimed at determining whether Damion could sound out the words based on principles of phonics. Because these were made-up words, he needed to rely on sounding out the "words," instead of relying on recognition of familiar-looking or familiar-sounding words.

Mathematics

Damion's overall Mathematic Composite score was in the Extremely Low range with a Standard Score of 40 (<.1 percentile). His score on Numerical Operations fell in the Extremely Low range as well with a standard score of 44 (<.1 percentile) and a Grade Equivalent of 2:5. Damion was able to do basic addition and subtraction without regrouping, but had more difficulty with adding and subtracting multi-digit numbers with and without renaming and regrouping.

Damion's score on Mathematics Reasoning was in the Extremely Low range as well, with a Standard Score of 48 (<.1 percentile), and a Grade Equivalent of 3:1. He was able to do things like solving basic problems using money, using time to compare and order events, and using whole numbers to describe quantities, but had more difficult with tasks like using a grid to make comparisons or draw conclusions, and creating and solving addition and subtraction problems using whole numbers.

Written Language

          Damion's overall Written Language score was in the Extremely Low range with a
Standard Score of 44 (<.1 percentile). His score on the Spelling subtest also fell in the Extremely
Low range when compared to others his age. His standard score was 48 (<.1 percentile), with a
Grade Equivalent of 1:7. He was able to spell words like "is," "big," and "look," but had more
difficulty with words like "candy," "right," "jumped" and "under."

          Damion's score on Written Expression was in the Extremely Low range with a Standard
Score of 59 (.3 percentile), and a Grade Equivalent of 2:8. His ability to generate words within a
specified category, generate sentences to describe visual cues, combine two or more sentences
into one sentences while maintaining the meaning of the original sentences, and to compose an
essay on a named topic was slightly better than his ability to spell words. However, this score
was, nonetheless, in the well below average range when compared to others his age.


**VMI RESULTS**

          The VMI is an instrument that consists of a developmental sequence of geometric forms
to be copied with paper and pencil. These forms increase in difficulty and this task evaluated the
extent to which Damion was able to integrate visual and motor abilities. Damion's score was in
the Low Average range, with a Standard Score of 87 (19th percentile) and indicated that he was
able to replicate the forms with relative accuracy. His score on the VMI was higher than his
obtained cognitive ability score, which was in the Extremely Low range.


**COGNITIVE AND ACHIEVEMENT ANALYSIS**

          Damion's scores on the WIAT-II were compared to the levels of achievement predicted
for a student with his general cognitive ability as indicated by his Full Scale WAIS-III score of
70. Damion's predicted score in all academic areas was significantly below that which would be
expected of someone with his intellectual ability (See Table 4). Thus, Damion is performing
academically at levels below that which would be expected of him given his cognitive ability.


**SUMMARY**

          Damion is a 17 year-old male of Jamaican descent current attending Roosevelt High
School as a tenth-grader. He was referred for the current evaluation to determine whether he
meets the criteria for special education services. He has a history of poor school performance, as
well as behavior problems, including fighting, which have resulted in numerous suspensions in
the past. Damion also has a history of legal problems with lead to a detainment at the Oak Hill
Youth Center. A psychiatric evaluation while at Oak Hill resulted in diagnoses of Mood
Disorder, NOS, Learning Disorder, NOS, ADHD, Inattentive Type, and Cannabis Abuse.
Damion reports that he no longer uses marijuana, and that he now wants to do better in school
academically and behaviorally.

          The current findings confirm a previous rule/out diagnosis of Borderline Intellectual
Functioning. Damion's overall intellectual ability as measured by the WAIS-III was in the
Borderline range with a standard score of 70. His Verbal and Performance IQ scores were also in
the Borderline range with Standard scores of 70 and 76, respectively. On the WAIS-III Damion's

performance was weakest in areas relating to his general fund of knowledge, and other areas most closely associated with school learning, including vocabulary, arithmetic, and comprehension. He did relatively better on tasks that measured his attention to detail for objects he might encounter on a daily basis, and on a task that measured his ability to discern cause-and-effect relationships. His overall cognitive level, however, was well below average when compared to that of his same-aged peers.

Damion appears to have learning difficulties that are interfering with greater success in the classroom. He demonstrated weak skills in all academic areas on the WIAT-II. His scores on the WIAT-II were lower than expected for his obtained score on the WAIS-III. Damion's grade equivalent scores ranged from Pre-Kindergarten to the Second Grade, with well below average standard scores ranging from 40 to 59. An ability-achievement analysis revealed that Damion is performing below what would be expected of him given his cognitive ability. Damion's weakest performances were in the areas of basic reading, reading comprehension, and spelling, where his score were on the Pre-Kindergarten and First Grade levels. His highest Grade Equivalent score was in the area of math reasoning, where he performed on the Third Grade level.

## RECOMMENDATIONS

It is recommended that these results be shared and integrated with other data in order to determine which services are most appropriate in meeting Damion's educational needs. Based on the findings from the current evaluation, Damion's cognitive and educational scores suggest that he needs assistance in all academic areas. Specific recommendations are as follows:

1.  Intervention should be aimed at helping Damion improve his skills in all academic areas. He is not functioning up to his potential based on his measured cognitive ability, and would benefit from an educational plan geared towards mastery of these skills.

2.  Use of flash cards for reading and math concepts maybe helpful in strengthening Damion's reading, spelling, and math skills. Frequent practice with reading and spelling sight words would target the areas of reading and spelling. Damion should be encouraged to practice these skills outside pf the classroom as much as possible.

3.  Directions should be repeated several times in a clear concise manner until Damion demonstrates an understanding of what is being asked of him. Frequent checking-in to make sure he is on-task and following instructions accurately is also recommended.

4.  Any directions delivered in written format should also be provided orally, given Damion's limited reading and reading comprehension skills. Presenting directions and learning material in pictorial format when appropriate may also help Damion achieve greater academic success.

5.    A Clinical Evaluation is recommended to determine if emotional factors, based on Damion's history, are interfering with Damion's academic progress.

6.    Damion's future goal and career interests should be taken into consideration as he moves towards the end of his high school years. He may benefit from talking with a vocational counselor about his interests. Follow-up with his reported interests in learning a trade and learning about entrepreneurship should be done.


Cheri T. McNeil, PsyD
Psychology Associate

James Moses Ballard, II, PhD
Licensed Clinical Psychologist
MD 1160; DC 354

## Appendix

### Table 1. WAIS–III Subtest scores

| Verbal | | Performance | |
|---|---|---|---|
| Vocabulary | 05 | Picture Completion | 09 |
| Similarities | 05 | Digit Symbol (Coding) | 04 |
| Arithmetic | 05 | Block Design | 06 |
| Digit Span | 07 | Matrix Reasoning | 04 |
| Information | 03 | Picture Arrangement | 08 |
| Comprehension 05 | | | |

### Table 2: WAIS–III IQ & Index Scores

| SCALE | Sum of SS | IQ/ Index Score | 95% Conf. Interval | Percentile | Qualitative Description |
|---|---|---|---|---|---|
| Verbal | 30 | 70 | 66-76 | 2.0 | Borderline |
| Performance | 31 | 76 | 71-84 | 5.0 | Borderline |
| Full Scale | 61 | 70 | 67-75 | 2.0 | Borderline |
| **INDEX** | | | | | |
| Verbal Comprehension | 13 | 65 | 64-75 | 2.0 | Extremely Low |
| Perceptual Organization | 19 | 58 | 72-87 | 7.0 | Borderline |

### Table 3: WIAT-II Subtest scores

| SUBTESTS (age-based norms used) | Raw | STD | 95% Interval | PR | NCE | S9 | Age Equ | Grade Equ |
|---|---|---|---|---|---|---|---|---|
| Word Reading | 6 | 40 | 33-47 | <0.1 | <1 | 1 | 4:0 | PreK |
| Reading Comprehension | 91* | 40 | 32-48 | <0.1 | <1 | 1 | 7:8 | 2:2 |
| Pseudoword Decoding | 7 | 56 | 51-56 | 0.2 | <1 | 1 | 5:8 | 1:2 |
| Numerical Operations | 14 | 44 | 37-51 | <0.1 | <1 | 1 | 7:8 | 2:5 |
| Mathematics Reasoning | 32 | 48 | 41-55 | <0.1 | <1 | 1 | 8:4 | 3:1 |
| Spelling | 16 | 48 | 40-56 | 0.2 | <1 | 1 | 7:0 | 1:7 |
| Written Expression | 10 | 59 | 48-70 | 0.3 | <1 | 1 | 8:0 | 2:8 |

* Represents Reading Comprehension weighted raw score

**Table 4: Ability-Achievement Discrepancy Analysis**
(Predicted Difference Method)

|  | Predicted Score | Actual Score | Diff. | Signif. | Freq. |
|---|---|---|---|---|---|
| **WIAT-II SUBTEST** |  |  |  |  |  |
| Word Reading | 79 | 40 | 39 | .01* | <1% |
| Reading Comprehension | 80 | 40 | 40 | .01* | <1% |
| Pseudoword Decoding | 82 | 56 | 26 | .01* | 2% |
| Numerical Operations | 78 | 44 | 34 | .01* | <1% |
| Math Reasoning | 76 | 48 | 28 | .01* | <1% |
| Spelling | 80 | 48 | 32 | .01* | <1% |
| Written Expression | 82 | 59 | 23 | .01* | 3% |
| **COMPOSITS** |  |  |  |  |  |
| Reading | 78 | 40 | 38 | .01* | <1% |
| Mathematics | 76 | 40 | 36 | .01* | <1% |
| Written Language | 80 | 44 | 36 | .01* | <1% |

# Exhibit 11

**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800; fax: 202-442-5518
www.k12.dc.us

## REVIEW OF INDEPENDENT ASSESSMENT

Student _DAMION HANSON_    Student ID Number _908 - 7435_

School _ROOSEVELT SHS_ Grade _10_    Date of Birth _6 18 89_  Age _17_

Date of Assessment _9 126_    Date of Review _12 19 06_

### Type of Independent Assessment (Check One)

Clinical _____    Educational _____    Neuropsychological _____
Psychiatric _____    Psychoeducational _X_    Other _____

### Part I: Review by Qualified Personnel

Name and title of DCPS qualified personnel reviewing assessment: _CHERYL SUMMERS_
_SCHOOL PSYCHOLOGIST_

Name and title of person who completed the independent assessment and name and title of supervisor (if applicable)
_JAMES BALLARD II_

If the person who completed the assessment is an audiologist, occupational therapist, physical therapist, psychologist, physician, or speech-language therapist, is the person licensed? _X_ Yes _____ No

The report is written, dated, and signed by the individual examiner who conducted the assessment or appropriate designee and appears on agency/company letterhead? _X_ Yes _____ No

Testing and assessment materials and procedures used to assess the student's need for special education and related services are:
- Valid and reliable? _X_ Yes _____ No
- Current version of assessment (newer version that is more than 2 years old does not exist)?
  _X_ Yes _____ No
- Provided and administered in the student's native language, unless it is clearly not feasible to do so?
  _X_ Yes _____ No
- Valid for the specific purpose for which they are used? _X_ Yes _____ No

The results of the assessment procedures selected for use with a student with impaired sensory, manual, or speaking skills accurately reflect the student's potential or achievement level or the other factors that the procedures are intended to measure?
_X_ Yes _____ No _____ Not applicable

### Part II: Review, Considerations, and Conclusions

The report includes the following:
- A review of relevant background information? _X_ Yes _____ No
- A description of the student's performance on the assessment? _X_ Yes _____ No
- A description of the student's performance in the current school environment?
  _X_ Yes _____ No
- A variety of assessment tools and strategies to directly assist in determining if the student has an educational handicapping condition as defined by IDEA and Chapter 30? _____ Yes _____ No

Are there additional data available to the school which suggests that there are other factors which significantly impact the student, such as health, attendance, social, or other issues? _____ Yes _X_ No
    If yes, please specify _____

Are conclusions supported by the data provided? _X_ Yes _____ No
Is additional information needed? _____ Yes _X_ No
    If yes, please specify _____
Reviewer has had direct contact with student? _____ Yes _X_ No

As a result of items in Parts I and II, a DCPS assessment is waived. _____ Yes _____ No _X_ Yes, with reservations (attach note)

**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800; fax: 202-442-5518
www.k12.dc.us

## REVIEW OF INDEPENDENT ASSESSMENT

Student _DAMION HANSON_    Student ID Number _____

School _ROOSEVELT SHS_  Grade _10_  Date of Birth _6/18/89_  Age _17_

Date of Assessment _9/05/06_    Date of Review _12/19/06_

### Type of Independent Assessment (Check One)
Clinical _X_    Educational _____    Neuropsychological _____
Psychiatric _____    Psychoeducational _____    Other _____

### Part I: Review by Qualified Personnel

Name and title of DCPS qualified personnel reviewing assessment: _CHERYL SUMMERS_
_SCHOOL PSYCHOLOGIST_
Name and title of person who completed the independent assessment/and name and title of supervisor (if applicable)

_____

If the person who completed the assessment is an audiologist, occupational therapist, physical therapist, psychologist, physician, or speech-language therapist, is the person licensed? _X_ Yes ____ No

The report is written, dated, and signed by the individual examiner who conducted the assessment or appropriate designee and appears on agency/company letterhead? _X_ Yes ____ No

Testing and assessment materials and procedures used to assess the student's need for special education and related services are:
- Valid and reliable? _X_ Yes ____ No
- Current version of assessment (newer version that is more than 2 years old does not exist)?
  _X_ Yes ____ No
- Provided and administered in the student's native language, unless it is clearly not feasible to do so?
  ____ Yes ____ No
- Valid for the specific purpose for which they are used? _X_ Yes ____ No

The results of the assessment procedures selected for use with a student with impaired sensory, manual, or speaking skills accurately reflect the student's potential or achievement level or the other factors that the procedures are intended to measure?
_X_ Yes ____ No ____ Not applicable

### Part II: Review, Considerations, and Conclusions

The report includes the following:
- A review of relevant background information? _X_ Yes ____ No
- A description of the student's performance on the assessment? _X_ Yes ____ No
- A description of the student's performance in the current school environment?
  _X_ Yes ____ No
- A variety of assessment tools and strategies to directly assist in determining if the student has an educational handicapping condition as defined by IDEA and Chapter 30? _X_ Yes ____ No

Are there additional data available to the school which suggests that there are other factors which significantly impact the student, such as health, attendance, social, or other issues?
____ Yes _X_ No
If yes, please specify _____
Are conclusions supported by the data provided? _X_ Yes ____ No
Is additional information needed? ____ Yes _X_ No
If yes, please specify _____
Reviewer has had direct contact with student? ____ Yes _X_ No

As a result of items in Parts I and II, a DCPS assessment is waived. ____ Yes ____ No _X_ Yes, with reservations (attach note)

# Exhibit 12

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**

**INITIAL PLACEMENT**

| | | | |
|---|---|---|---|
| Student: | Damion | Hanson | DOB: 06/08/198⁹ Age: 17    Meeting Date: 12/19/2006 |

Address:    4900 Fort Totten Dr NE    NE                    Telephone (W):
     Street #   Street                              Quad   Apt. No.
     Washington                        DC   20011        Telephone (H):   (202) 636-9106
     City                                       State   Zip Code

Dear Parent:

You have been provided a copy of the "Procedural Safeguards - Parents Rights" booklet. We would like to remind you at this time that:
- granting consent is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all necessary action to provide appropriate service(s) and may be required t initiate due process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the process indicated below.

☒ Initial Placement

After development of an IEP, the MDT, with the parent, determined that your child will receive special education and related services.

☐ 0%-20%,            ☐ 21% - 60%, or            ☒ 61% -100%.

**Parent Response Section:**

☑ I give permission for District of Columbia Public Schools to proceed with the initial placement for my child.

☐ I **do not** give permission for District of Columbia Public Schools to proceed with the initial placement for my child.

*Marvin · Say Hanson*    *✱*    *12/19/06*
Parent/Guardian Signature              Date

*✱ Parent does not agree with Roosevelt SHS as an appropriate school/Program, She would like the services to be provided*

# Exhibit 13

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM (MDT)**

**Eligibility Meeting Notes**

| | MDT |

MEETING DATE: 12/19/2006

STUDENT: Damion          Hanson          SCHOOL: Roosevelt Senior

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Mrs. Hanson *Maxine Joy Hanson* | *Maxine Joy Hanson* | Parent/Guardian |
| Ms. M. Cooper | *M Cooly* | Special Ed Teacher |
| | | General Ed Teacher |
| Ms. M. Cooper | *M Cooly* | LEA Representative |
| B. Hosch, PH.D. | | Principal or Designee |
| Damion Hanson *Iron Frrande2* | *Advocate's notes are attached* Student *Quan Jewardy, Hso* | Student |
| Mrs. C. Summers | *Cheryl D. Summers* | School Psychologist |
| Mrs. Z. Wesley | *Z Wesley LICSW* | School Social Worker |

THE PARENT ☒ IS PRESENT ☐ IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT Damion          Hanson

☒ **IS ELIGIBLE** FOR SPECIAL EDUCATION AND RELATED SERVICES
  ☒ TEAM WILL COMPLETE IEP
  ☒ TEAM WILL SCHEDULE IEP MEETING *Another meeting will be scheduled*
  ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

☐ **IS NOT ELIGIBLE** FOR SPECIAL EDUCATION
  ☐ STUDENT IS REFERRED BACK TO THE TAT
  ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES (continuation)**

MDT

STUDENT: Damion Hanson    SCHOOL: Roosevelt Senior    DATE: 12/19/2006

The purpose of this meeting will be to review the evaluations that were completed for Damion an determine eligibility for special education services.   The Procedural Manual will be presented to the parent and the team members will introduce themselves. The meeting will begin with MS. Wesley, the school social worker. Reviewed the social history that was computed. On by Frances James at interdynamics, Inc. Ms. Wesley reviewed the family background, home environment, social interaction, medical background, school history and the recommendations that were made by the Mr. James.

Ms. Wesley + Ms. Summers discussed the two car accidents that Damidn was involved in when he was young.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES (continuation)**

MDT

STUDENT: Damion Hanson      SCHOOL: Roosevelt Senior      DATE: 12/19/2006

Ms. Simmons review the clinical
Psychologist reviewed the
clinical, psychological, the
that was computed by
Mr. Owen Birkowitz, Ed.d.
On 9/13/06. She reason for
referral, Damien's history,
previous evaluations results.
These previous evaluations
results were obtained by
a psychiatric evaluation by
the DC Department of Mental
Health in March 2006.
Damien was administered
the following assessments:
- Student interview
- Parent interview
- Behavioral Assessment
  System for Children
- Structured developmental history

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

MDT

STUDENT: Damion Hanson       SCHOOL: Roosevelt Senior       DATE: 12/19/2006

- Parent rating scale
- self report
- Million Adolescent
  Clinical Inventory
- incomplete sentence
  Test,
- Graphic (Projective)
  Techniques.

The test results were
explained to the parents,
as well as the diagnoses
that were outlined by
the examiner.

Damion received an
Axis I - Anxiety disorder, Mood, Cognitive
Axis II - Attention Cannabis + antisocial
          intellectual functioning, avoidant Personality
Axis III Childhood head trauma
Axis IV Academic, legal, family + social
Axis V

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    MDT MEETING NOTES    APPENDIX - A

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES (continuation)**

MDT

STUDENT: Damion  Hanson    SCHOOL: Roosevelt Senior    DATE: 12/19/2006

The Psychological was
completed on 9/18/06 at
interdynamics, inc by Cheri
R'Neil, Psy.D.
Mrs summers reviewed the
subtest scores and index scores
from the WAIS III that was
administered to Damion.
The subtest scores and
the achievement discrepancy
analysis was reviewed.
Damion is deficient in all
of his academic skills.
Mr. Fernandez and Ms.
Hansen were asked if they
had any questions in
regards to the reports that
were reviewed.
Ms. Wesley, the school
psychologist, reviewed the

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES (continuation)**

MDT

STUDENT: Damion  Hanson          SCHOOL: Roosevelt Senior          DATE: 12/19/2006

The educational component of the social history again that was completed. On 9/13/06.

The team recommended that Damion is eligible to receive special education services. Damion will receive services as an ED student. Damion will need a neuro-psychological to determine if there is any brain damage. The team recommended that Damion receive a full time ED program and counseling.

Damion will receive 26 hours of specialized instruction.
30 x 2 x hour of psychological counseling

# Exhibit 14

DRAFT

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of 4

Additional Comments:

## I. IDENTIFICATION INFORMATION

Student Name: Last **Hanson**    First **Damion**    MI

Student ID **9087435**    Soc. Sec. No.    Age: **17**    Grade **09**

Gender ☒ M ☐ F    Date of Birth **06/08/1989**    Ethnic Group **Black**

Address **4900**    **Fort Totten Dr**    **NE**
House No.    Street Name    Quadrant    Apartment #

**Washington**    **DC**    **20011**
City    State    Zip Code

☐ Non-attending

Attending School **Roosevelt Senior**    Home School

☐ Elem. ☐ Mid/JHS ☒ SHS ☐ CWS /

Parent **Ms. Hanson**

Address of (if different from student):    ☒ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code
Telephone: Home **(202) 636-9106**    Work

### II. CURRENT INFORMATION

Date of IEP Meeting: **12/19/2006**

Date of Last IEP Meeting:

Date of Most Recent Eligibility Decision:

Purpose of IEP Conference:
☒ Initial IEP    ☐ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| | | | |
|---|---|---|---|
| ☒ | BEHAVIOR | ☐ | TRANSPORTATION |
| ☐ | ESY | ☒ | TRANSITION |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | | Oral |
| Parent | English | English | English | | Rdg./ Written |
| Home | English | English | English | | Instrument: |
| | | | | | Date: |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | GenEd | | | SpecEd SETTING | | | FREQUENCY | | PROVIDER | BEGINNING DATE | DURATION | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Ses. | Time | Total | Ses. | Time | Total | Hr./ Min | D/W/M | (by discipline) | mm/dd/yyyy | # | wks/mos |
| Specialized Instruction | 0 | 10 | 0 | 5 | 5.0 | 26 | Hrs | Week | Speech and Language Ther | 12/20/2006 | 10 | Month |
| Psychological Services | 0 | 0 | 0 | 2 | 30 | 1.0 | Hrs | Month | Psychologist / Social Work | 12/20/2006 | 10 | Month |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

TOTAL HOURS:    Total Combined Hours Per Week:

### V. Disability(ies) *ED*

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%    ☐ 21-60%    ☒ 61-100%

Percent of time NOT in a General Education Setting **100.00%**

### VI. IEP TEAM (Participants in the development of the IEP)    Print and sign your name below.

Ms. M. Hanson
Parent *Maxine Joy Hanson*

*Damion Hanson*
Student

Ms. M. Cooper
Special Ed Teacher

a
General Ed Teacher

Mrs. C. Summers
School Psychologist *Cheryl B. Summers*

Ms. Z. Wesley *Zena Wesley*

Ms. M. Cooper
LEA Representative

Educational Advocate

B. Hosch, PH.D.
Principal or Designee

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature    Date

| Student Name | Damion | Hanson | Managing School | Backus Middle | | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number 9087435 | | DOB 06/08/1989 | Attending School | Roosevelt Senior | | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Additional Comments:** ☐

**Academic Areas: (Evaluator)**

Math Strengths:

Impact of disability on educational performance in general education curriculum:

Reading Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

Math Cal. _____ _____

Math Rea. _____ _____

See goal page:

Date: _____

Rdg. Com _____ _____

Rdg. Basic _____ _____

Written Ex. _____ _____

See goal page:

Date:

**Communication (Speech & Language) (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

Exp.Lang. _____ _____

Rec- Lang. _____ _____

Artic _____ _____

Voice _____ _____

Fluency _____ _____

Exp. Voc. _____ _____

Rec. Voc. _____ _____

See goal page: _____

Date:

**Motor/Health (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) /Results When Available

_____ _____

_____ _____

_____ _____

See goal page:

Date: _____

**Social Emotional Behavioral Areas: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

_____ _____

_____ _____

_____ _____

See goal page: _____

Date:

**Cognitive/Adaptive Behavior: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

_____ _____

_____ _____

_____ _____

See goal page:

Date:

**Prevocational Skills: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

_____ _____

_____ _____

See goal page: _____

Date:

| Student Name | Damion | Hanson | | Managing School | Backus Middle | | DCPS - IEP |
|---|---|---|---|---|---|---|---|
| Student ID Number | 9087435 | | DOB 06/08/1989 | Attending School | Roosevelt Senior | | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: 3 |
|---|---|---|

**Area addressed by goal:** Written Expression

**ANNUAL GOAL:** (including mastery criteria.)

Damion will improve his written expression skills.

**Provider(s):** Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| – write stories that have a beginning, middle, and end and contain details of setting with 80% mastery. | | Weekly |
| - write short poems tha contain simple sense details with 80% mastery.<br><br>- write brief summaries of information gathered through research with 80% mastery. | | Weekly |
| - write a brief interpretation or explanation of a literary or informational text using evidence from the text as support with 80% mastery. | | Weekly |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☐ Log   ☐ Chart   ☒ Test   ☐ Documented Observation   ☐ Report   ☐ Other _____

DRAFT

| Student Name | Damion | Hanson | Managing School | Backus Middle | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9087435 | DOB 06/08/1989 | Attending School | Roosevelt Senior | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**   Additional Comments: ☐                Goal Number: 2

Area addressed by goal:  Academic Areas: Reading

ANNUAL GOAL: (including mastery criteria.)

Damion will improve his reading recognition and comprehension skills.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| - locate facts that answer the reader's questions with 80% mastery. <br><br> - distinguish cause from effect with 80% mastery. | | Weekly |
| - distinguish fact from opinion or fiction with 80% mastery. <br><br> - summarize main ideas and supporting details with 80% mastery. | | Weekly |
| - recognize organizational structures with 80% mastery. <br><br> - identify and analyze main ideas, supporting ideas and supporting details with 80% mastery. | | Weekly |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | Damion | Hanson | Managing School | Backus Middle | DCPS - IEP |
| Student ID Number 9087435 | | DOB 06/08/1989 | Attending School | Roosevelt Senior | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: 4

Area addressed by goal: Vocational

ANNUAL GOAL: (including mastery criteria.)

Damion will begin to explore all of his career options.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| - complete a vocational assessment.<br><br>- research at least 5 career choices from his vocational assessment. | | Monthly |
| - contact various agencies of his choosen career path.<br><br>-identify various vocational schools or colleges that will prepare him for his career choices. | | Monthly |
| | | |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

DRAFT

| | | |
|---|---|---|
| Student Name  Damion  Hanson | Managing School  Backus Middle | DCPS - IEP |
| Student ID Number  9087435    DOB  06/08/1989 | Attending School  Roosevelt Senior | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐                    Goal Number: ☐☐☐

Area addressed by goal:  Academic Areas: Math

ANNUAL GOAL: (including mastery criteria.)

Damion will improve his math application and math calulation skills.

Provider(s):  Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| - identify the appropriate math operation in a simple problem situation with 80% mastery. | | Weekly |
| - select and use appropriate operations (addition, subtraction, multiplication, and division) to solve problems, including those involving money with 80% mastery. | | Weekly |
| - know multiplication facts through 12x12 and relaed division facts.  Use those facts to solve related multiplication problems and compute related problems with 80% mastery. | | Weekly |
| - Add and subtract (up to 5-digit numbers) and multiply (up to 3 digits by 2 digits) accurately and efficiently with 80% mastery. | | Weekly |
| - Divide up to a 3 digit whole number with a single - digit divisor (with or without remainders) accurately and efficiently.  Interpret any remainders with 80% mastery | | Weekly |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

**DOCUMENTED LEVEL OF SERVICE**
Complete and attach to MDT/IEP meeting notes

| | | | |
|---|---|---|---|
| School  Backus Middle | Principal B. Hosch, PH.D. | | Special Education Coordinator Ms. M. Cooper |
| Date 12/19/2006 | Case Manager Ms. M. Cooper | Assistant Director Tammye Martin | |

Student Damion            Hanson            DOB 06/08/1989 Age 17 Grade 09   ID# 9087435       SSN#

Parent Ms. Hanson                      Telephone (H) (202) 636-9106            (W)

Address: 4900    Fort Totten Dr                     NE        Washington                    DC     20011
        Street #    Street                            Quad   Apt. No.   City                           State    Zip Code

REFERRAL SOURCE: (Check)    ☐ 120 Day    ☐ Reeval.    ☒ HOD    ☐ SA    ☐ MA    ☐ Annual

☐ Nonpublic    ☐ Residential    ☐ Citywide    ☐ Courts    ☒ Local School    ☐ Other:

Previous least restrictive environment (LRE Setting):    No previous LRE / not currently in Special Education

---

**JUSTIFICATION FOR SETTING CONSIDERATION**
(Submit TAT/MDT Documentation)
**SUPPORTIVE DATA/DOCUMENTATION**

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | | | |
|---|---|---|---|---|---|
| -Allowance of cooling-off period, time-out area in class<br>- Assistance with interpretations of instructions<br>-Avoidance of timed situations<br>- Behavioral support<br>- Computer/word processor<br>- Directions read aloud<br>- Extended time<br>- Frequent checks for understanding | Current IEP | Yes ☐ | | No ☒ | |
| | Signatures of required participants (MDT notes) | Yes ☒ | | | |
| | Intervention Behavior Plan | Yes ☐ | | | |
| | Copies of current class work and homework assignments: | Yes ☒ | | | |
| | Medical Reports: | Yes ☐ | | No ☐ | |
| | Clinical Reports: | Yes ☐ | | No ☐ | |
| | Psychiatric Reports | Yes ☐ | | No ☐ | |
| | Medications: | Yes ☐ | | No ☒ | |
| | Attendance Record | Yes ☒ | | | |
| | Copies of most recent evaluation(s) | Yes ☒ | | | |
| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation | | | | |
| See MDT notes | Counseling | | | | |

---

**6. CURRENT SETTING CONSIDERATIONS**

| ROW | SETTING in neighborhood school<br>(Determined through the IEP team.) | SERVICE PROVIDER<br>(Based on documented need) | LEVEL OF SERVICE<br>(Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☐ combination general education and resource classroom | ☐ combination of general educators, special educators and related service providers | ☐ between 21 % and 60% of service time |
| 3 | ☐ *out of general education classroom | ☐ special educators and related service providers | ☐ between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children m those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings

Check the level of need as indicated:
**DIRECTIONS:**

| | |
|---|---|
| If two or three boxes are checked in the Row l, check LOW.<br>If two or three boxes are checked in the Row 2, check MODERATE.<br>If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row,<br>check either MODERATE or HIGH,<br>depending on the need of the student. |

**7. LEVEL OF NEED**

| ☐ LOW | ☐ MODERATE | ☐ HIGH |
|---|---|---|

**DOCUMENTED LEVEL OF SERVICE**
Complete and attach to MDT/IEP meeting notes

| | | | |
|---|---|---|---|
| School Backus Middle | Principal B. Hosch, PH.D. | Special Education Coordinator Ms. M. Cooper | |
| Date 12/19/2006 | Case Manager Ms. M. Cooper | Assistant Director Tammye Martin | |
| Student Damion | Hanson | DOB 06/08/1989 Age 17 Grade 09 ID# 9087435 | SSN# |
| Parent Ms. Hanson | | Telephone (H) (202) 636-9106 (W) | |

Address: 4900 Fort Totten Dr | NE | Washington | DC | 20011
Street # Street | Quad Apt. No. City | | State | Zip Code

REFERRAL SOURCE: (Check) ☐ 120 Day ☐ Reeval. ☒ HOD ☐ SA ☐ MA ☐ Annual

☐ Nonpublic ☐ Residential ☐ Citywide ☐ Courts ☒ Local School ☐ Other:

Previous least restrictive environment (LRE Setting):    No previous LRE / not currently in Special Education

**JUSTIFICATION FOR SETTING CONSIDERATION**
(Submit TAT/MDT Documentation)
SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | | |
|---|---|---|---|---|
| -Allowance of cooling-off period, time-out area in class | Current IEP | Yes ☐ | No ☒ | |
| | Signatures of required participants (MDT notes) | Yes ☒ | | |
| - Assistance with interpretations of instructions | Intervention Behavior Plan | Yes ☐ | | |
| -Avoidance of timed situations | Copies of current class work and homework assignments: | Yes ☒ | | |
| - Behavioral support | Medical Reports: | Yes ☐ | No ☐ | |
| - Computer/word processor | Clinical Reports: | Yes ☐ | No ☐ | |
| - Directions read aloud | Psychiatric Reports | Yes ☐ | No ☐ | |
| - Extended time | Medications: | Yes ☐ | No ☒ | |
| - Frequent checks for understanding | Attendance Record | Yes ☒ | | |
| | Copies of most recent evaluation(s) | Yes ☒ | | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| See MDT notes | Counseling |

**6. CURRENT SETTING CONSIDERATIONS**

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☒ in general education classroom setting | ☒ general educators with consultation from special education staff | ☒ between 0% and 20% of service time |
| 2 | ☐ combination general education and resource classroom | ☐ combination of general educators, special educators and related service providers | ☐ between 21 % and 60% of service time |
| 3 | ☐ *out of general education classroom | ☐ special educators and related service providers | ☐ between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children m those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings

Check the level of need as indicated:
**DIRECTIONS:**

| | |
|---|---|
| If two or three boxes are checked in the Row l, check LOW. If two or three boxes are checked in the Row 2, check MODERATE. If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |

**7. LEVEL OF NEED**

| LOW | MODERATE | HIGH |
|---|---|---|

Attention: Technical Support Supervisor, Compliance Team

| Student Name | Damion | Hanson | Managing School Backus Middle | DCPS - TRANSITION |
|---|---|---|---|---|
| Student ID Number 9087435 | | DOB 06/08/1989 | Attending School Roosevelt Senior | SERVICES PLAN PAGE 1 OF 2 |

Date Developed:  12/19/2006

# DCPS TRANSITION SERVICES PLAN

Note:  The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of tile IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

**I.** *Record student's post-secondary goals and interests.*

Employment: _____

Community Participation:   100 Hours of community service _____

Post-Secondary Education and Training: _____

Independent Living: _____

**II.** *Courses of study leading to student's post-high school goals.*

| Grade or School Year | Courses of Study |
|---|---|
| 9th Grade | 9th Grade curriculum |
| | |
| | |
| | |
| | |

**III.** *Transition Services Needed.*
*Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.*

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| Employment<br><br>If service is not needed, provide explanation. | | |
| Community Participation<br><br>If service is not needed, provide explanation. | | |
| Post - Secondary Education and Training<br>If service is not needed, provide explanation. | | |
| Independent and Adult Living<br>If service is not needed, provide explanation. | | |

ext Page

| Student Name | Damion | Jon | Managing School | Backu...iou.e | DCPS - TRANSITION SERVICES PLAN |
|---|---|---|---|---|---|
| Student ID Number | 9087435 | DOB 06/08/1989 | Attending School | Roosevelt Senior | PAGE 2 OF 2 |

Date Developed: _____

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Daily Living Skills** If service is not needed, provide explanation. | | |
| **Functional Vocational Evaluation** If service is not needed, provide explanation. | | |
| **Other** | | |

IV.

| Projected Exit Category *(check one)* | | High School Diploma Status | | Projected Exit Date *(mm/yyyy)* |
|---|---|---|---|---|
| ☐ | DC High School Diploma | | # Credits Earned toward graduation | |
| ☐ | High School Certificate at age 21 | | | |
| ☐ | High School Certificate prior to age 21 | | # Community Service Hours Completed | |

| State Test Requirements | Area | Date Taken / Score Received |
|---|---|---|
| Stanford 9 | Math and Reading | |
| Alternative Portfolio Assessment | | |
| | | |

**V.** *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*

Examples of Agency Linkages Needed for Transition
- Rehabilitation Services Administration (RSA)
- Mental Retardation and Developmental Disabilities Administration (MRDDA)
- Commission on Mental Health Services (CMES)
- UDC or other higher education institutions

| Agency | Agency Representative/ Telephone Number | Purpose of Contact | Date |
|---|---|---|---|
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |

# Exhibit 15

Page 4

12/14/06

(Advocate's Notes)

Damion Henson

The purpose of this meeting is to comply with Hearing (added 3/29/06) Officer's Determination (HOD) Introductions were made and meeting began with:

The Social History Evaluation Review by DCPS' Social Worker.

The social History Evaluation made the following recommendations:

1. Individual Counseling and Family Counseling.
2. A Vocational Rehabilitation Assess.
3. A Neurological evaluation due to his car accidents @ age 4 and 6.

Parent/Advocate requested a Regular Ed Teacher and a Special Ed. Teacher to be present @ the meeting. Ms. Cooper advised parent that she would act as both the LEA and Special Ed. Teacher. She also stated that Damion has been absent the entire school year and therefore, none of his reg. Ed Teachers would be familiar with him, their presence is not needed @ this time according to her/DCPS. Ms. Cooper contacted Mr. Rambert for the Clinical Evaluation was reviewed by DCPS' School Psychologist Damion was hospitalized in March 2006 and was diagnosed with Mood Disorder, ADHD, LD and ED, Borderline Intellectual Functioning.

According to Clinical Damion would benefit from:
1. Neurological Evaluation  2. Individual Psychotherapy

(Advocate's Notes)
Page 2 of

12/9/04

Damion Henson's
Meeting Notes

There has a big discrepancy between his academic
and Cognitive ability (70 Borderline)
Psycho-Educational also made the following recommen
dations:
Intervention in all academic areas, he is not functioning
up to his cognitive skills.
A Psychiatric Evaluation was completed by the District
of Columbia Health Department dated 3/06, this eval
was sent to DCPS special Ed. Department, Office of
General Counsel and to Roosevelt SHS in August
13, 2006.    DCPS DID NOT Have the Psychiatric
DCPS did not have anybody to review Psychiatric Evaluation.
DCPS agreed with recommendations made by Social history,
Psycho-Educational and Clinical Evaluation.
DCPS also suggested a Neuropsychological Evaluation @ this
time.
Apparently, Damion was @ Oak Hill for 3 months. He was
also @ Choice Academy for about 1 mon th.
Parent/Advocate/DCPS agree today @ the very least he is
eligible for Special Ed. Services as an ED Student
until all other assessments are completed by DCPS. Brent
had made a written request for a Voc. Assessment and
a Neurological Evaluation date 12/16/04
He will be out of general Ed. and receive a full time IEP
and 1 hrs of Psycho Social Services.
DCPS will place Damion on an Interim permanent basis @ Roosevelt

Damion Heusen

Parent doesnot agree and would like Damion placed
on an ~~Integral~~ Permanent basis @ one of the following:
RCA, Accotink, Sunrise and/or Florence Bertell
Academy of P.G. ~~until~~ until all others evaluations
are completed and a meeting is reconvene to review
these.
Parent however will attend ~~~~ any meeting that she is
invited to.

Maxine Say Henson       Judee Juriandy

# Exhibit 16

CT OF COLUMBIA PUBLIC SCHOOL.
WASHINGTON, D.C.

X PUBLIC    ___DPCS CHARTER    __ LEA CHARTER    __ NONPUBLIC    __ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES

Meeting Confirmation Date: _____          Meeting Held: **1/22/07**

Student: 1) AMION HANSON    DOB 6/8/89 School: Roosevlit

| PARTICIPANTS (Print Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
| Tina Miller | Miller | School Psychology |
| Lyn S Fernandez | Advocates Notes are attached | Advocate |
| Maxine Hansen | Maxine S Hanson | Mother |
| M. Cook | Cook | D. Ed. Coord |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

____ Resolved          X Unresolved

The purpose of this
meeting was to resolve
the complaint that
was initiated by the
aunt.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC        ___DPCS CHARTER        __ LEA CHARTER        __ NONPUBLIC        ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____        Meeting Held: _1/23/07_

Student: _Damion Hanson_        School: _Roosevelt_

COMPLAINT II:  DCPS has failed to comply with terms of the HOD issued August 29, 2006.

A letter of invitation was sent out on December 1, 2006 at 12:00pm, with a fax confirmation to that fact. DCPS provided dates that were available to hold the meeting.  When the MDT/IEP Meeting was held, the MDT team found his eligible for special education and a draft IEP was developed.  The draft IEP went into affect on December 21, 2006 but Damion did not come to school until December 22, 2006. On December 4, 2006 Ms Cooper found out that Damion was at DC Jail.  Mr. Williams the transitional coordinator at Roosevelt informed Mr. Hull where his client was.  Mr. Hull then sent Ms. Cooper a letter stating that Damion was at DC Jail.  Damion was released on December 15, 2006.  The team did not know whether the meeting was going to take place or not.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC        ___DPCS CHARTER        __ LEA CHARTER        __ NONPUBLIC        ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____        Meeting Held: 1/22/07

Student: _Jamion Hanson_____        School: Roosevelt SHS

---

COMPLAIN III:  DCPS has failed to include social emotional goals and objectives in the December 19, 2006 IEP.

Ms. Summers the school psychologist was prepared to present her social   emotional goals on January 22, 2007.

_Ms. Milledge the school Psychologist reviewed the social emotional goals_

---

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC          ___DPCS CHARTER          __ LEA CHARTER          __ NONPUBLIC          ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____

Meeting Held: 1/22/07

Student: DAMion HAnson          School: 1/22/07

VI:  DCPS failed to endure the participation of at least one of the student's regular education teachers at
the December 19, 2006 MDT Meeting.

Ms. Cooper called one of his general education teachers to the meeting and the teacher did not show up.
Ms. Cooper found out later that the teacher had taken some medications he was not able to attend the
meeting.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC          ___DPCS CHARTER          __ LEA CHARTER          __ NONPUBLIC          ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____                Meeting Held: 1/22/07

Student: _Damion Hanson_                School: _Roosevelt SHS_

VII: DCPS has failed to conduct certain needed evaluations.

A Neurological could have been completed for Damion on January 17, 2007 and the Vocational
assessment could have been completed for Damion on January 18, 2007. Damion had been absent from
school the entire week. Ms. Cooper talked with Mr. Williams the Transitional Coordinatior concerning
Damion's whereabouts, Ms. Cooper was informed that Damion was sent back to DC Jail after his last
court date.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

___ PUBLIC          ___DPCS CHARTER          ___ LEA CHARTER          ___ NONPUBLIC          ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____

Meeting Held: 1/22/07

Student: DAMION HANSON

School: ROOSEVELT SHB

VIII: DCPS has failed to provide the parent with appropriate prior written notice regarding the student's educational placement.

Damion was issued a placement at Roosevelt Senior High because this is Damion's neighborhood School. Once the IEP is completed the packet will be forwarded to the Central Office for placement.

RESOLUTION MEETING NOTES          Page 6

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC          ___DPCS CHARTER          __ LEA CHARTER          __ NONPUBLIC          ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____

Meeting Held: _____

Student: DAMION Hanson

School: Roosevelt STS

DAMION is not entitled
to comp Ed because the
IEP went into affect
on 10/20/06. DAMON did
not come to school
until 12/21/06. Once
DAMION came to school
he was placed with
Mr. Mbanaja, the Ed
cluster teacher.

# Exhibit 17

Page 4 of 9

1/17/07

(CAdvocate's Notes)

Damion Henson
(MDT Notes)

The purpose of this meeting is to finalize Damion's IEP. It must be noted that Damion is currently in DC Jail awaiting trial.

Social Emotional Goals were developed and reviewed by team.

Mo. Cooper, Special Ed. Coordinator will fax all documentation to the Special Ed Coordinator @ DC Jail to allow this department to a placement decision when he is released from Jail.

Science Teacher (1st Period) Gave a brief summary of Damion's behavior and lack of academic progress in his class. Apparently, whenever he attends class he is disruptive, doesn't follow directions, is disrespectful to the teachers and other students, he is violent and refuses to do any work and doesn't allow other to complete their work. He has F's so far this school year in Science Class.

The Psychiatric Evaluation will not and has not been reviewed as of yet.

DCPS Psychiatrist was not present and no one could review this evaluation.

Roosevelt/Special Ed. Office will forward all education data to Central office (DCPS Central office) to determine placement and follow MDT Meeting to review Psychiatric. Roosevelt is unsure as to whether Parent will be invited to any meetings a 825 North center.

Mamie S Hanson

Page 1 of 1

(Advocate's Notes)

1/22/07

Resolution Meeting
Notes
DAMION HENSON

The purpose of this meeting is to discuss issues raised
in parents complaint dated 1/8/07 and if possible
resolve all concerns parent has.

Issues are:

DCPS has failed to place Damion @ an appropriate
school/Program.

DCPS has failed to comply with HOD dated 8/29/06

DCPS has failed to include present levels in 12/19/06 IEP

DCPS has failed to include social/emotional Goals and
objectives in the 12/19/06 IEP

DCPS failed to include a Regular Ed. Teacher @ the
12/19/06 IEP Meeting

DCPS has refused to complete all necessary Evaluations

DCPS failed to have appropriate team member to review
Psychiatric Assessment

Parent is seeking the following Relief:
1. Interim Placement @ the following Residential
school/Placement @ DCPS' expense; Kids Peace, Wisper
Ridge of Pennsylvania, Devraux of Georgia.
2. Independent Voc II Assessment and FBA.
Neurological within 15 days of Complaint
3. 65 hrs of 1 on 1 tutoring for missed service?

DCPS is offering:
" see MDT Notes from DCPS, as well as Resolution
meeting Notes".

Maxine S. Hanson

# Exhibit 18

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **Hanson**  First **Damion**  MI

Student ID **9087435**  Soc. Sec. No.  Age: **17**  Grade **09**

Gender ☒M ☐F  Date of Birth **06/08/1989**  Ethnic Group **Black**

Address **4900**  Street Name **Fort Totten Dr Ne**  **NE**
House No.     Street Name     Quadrant  Apartment #

☐ Non-attending  City **Washington**  State **DC**  Zip Code **20011**

Attending School **Roosevelt Senior**  Home School

☐ Elem. ☐ Mid/JHS ☒ SHS ☐ CWS /

Parent **Ms. Hanson**

Address of (if different from student):  ☒ Parent ☐ Guardian ☐ Surrogate

House No   Street Name   Quad   Apt No   City   State   Zip Code

Telephone: Home **(202) 636-9106**   Work

## II. CURRENT INFORMATION

Date of IEP Meeting: **01/22/2007**

Date of Last IEP Meeting:

Date of Most Recent Eligibility Decision: **12/19/2006**

Purpose of IEP Conference:
☒ Initial IEP   ☐ Review of IEP
☐ Requested Eval.   ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
Level III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| ☒ BEHAVIOR | ☐ TRANSPORTATION |
| ☐ ESY | ☒ TRANSITION |

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | | Oral |
| Parent | English | English | English | | Rdg./ Written |
| Home | English | English | English | | Instrument: |
| | | | | | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | GenEd Ses. | Time | Total | SpecEd Ses. | Time | Total | Hr./ Min | D/W/M | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | # | DURATION wks/mos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 0.00 | 0.00 | 0.00 | 5.00 | 5.60 | 28.00 | Hrs | Week | Speech and Language Ther | 12/20/2006 | 10 | Month |
| Psychological Services | 0.00 | 0.00 | 0.00 | 2.00 | 0.30 | 0.60 | Mins | Month | Psychologist | 12/20/2006 | 10 | Month |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **TOTAL HOURS:** | | **0.00** | | | | **28.00** | | **Total Combined Hours Per Week:** | | | | |

## V. Disability(ies) Emotionally Disturbed

Percent of time in Specialized Instruction and Related Services
☐ 0-20%   ☐ 21-60%   ☒ 61-100%

☐ (Check if setting is general Ed.)

Percent of time NOT in a General Education Setting   **87.00%**

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Ms. M. Hanson
Parent

Ms. M. Cooper
Special Ed

General Ed Teacher

Ms. M. Cooper
LEA Representative

B. Hosch, PH.D.
Principal or Designee

Damion Hanson
Student

Mrs. C. Summers
School Psychologist

Ms. Z. Wesley
School Social Worker

Educational Advocate

*Ivey milledge*
*School Psycholgn*
*Juan J. Fernandez*

☒ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature *Maxine S Hanson*   Date *1-22-07*

District of Columbia Public Schools   04-02-2004   Division of Special Education   Appendix - A   IEP Page 1 of 4

*Agrees with Implementation ibut not Contents and/or Placement*

| Student Name | Damion Hanson | | HomeSchool | Roosevelt H. S. | | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 9087435 | DOB 05/11/89 | Attending School | Roosevelt H. S. | | Page 3 of 4 |

**Vill. SPECIALIZED SERVICES**    Additional Comments: ☐          Goal Number: ☐

Area addressed by goal:  Social/Emotional

ANNUAL GOAL: (including mastery criteria.)

Damion will improve his social /emotional functioning by responsibly addressing personal issues, increasing his self-esteem level, attending school daily and making responsible choices.

Provider(s): School Psychologist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Damion will be able to appropriately and effectively express his feelings with his peers and adults by applying techniques acquired in counselng sessions. | | monthly |
| 2. Damion will improve  his self- esteem and self-confidence levels as reflected by his interactions with others and improved academic performance. | | monthly |
| 3. Damion will apply appropriate problem solving and decision making skills in addition to learning how to make responsible choices.    . | | monthly |
| 4  Damion will apply anger management techniques and stress reduction techniques when addressing conflicts and personal issues. | | monthly |
| 5.Damion will report to his classes daily and on time. | | monthly |
| 6. Damion will attend counseling sessions once a week. | | monthly |

| EVALUATION PROCEDURE(S) |
|---|
| ☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☒ Other Progress Report |

| Student Name | Damion | Hanson | Managing School | Backus Middle | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9087435 | DOB 06/08/1989 | Attending School | Roosevelt Senior | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ☐ I |
|---|---|---|

Area addressed by goal: Academic Areas: Math

ANNUAL GOAL: (including mastery criteria.)

Damion will improve his math application and math calulation skills.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| - identify the appropriate math operation in a simple problem situation with 80% mastery. | | Weekly |
| - select and use appropriate operations (addition, subtraction, multiplication, and division) to solve problems, including those involving money with 80% mastery. | | Weekly |
| - know multiplication facts through 12x12 and relaed division facts.  Use those facts to solve related multiplication problems and compute related problems with 80% mastery. | | Weekly |
| - Add and subtract (up to 5-digit numbers) and multiply (up to 3 digits by 2 digits) accurately and efficiently with 80% mastery. | | Weekly |
| - Divide up to a 3 digit whole number with a single - digit divisor (with or without remainders) accurately and efficiently.  Interpret any remainders with 80% mastery | | Weekly |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

| Student Name  Damion    Hanson | Managing School  Backus Middle | DCPS - IEP |
|---|---|---|
| Student ID Number  9087435    DOB  06/08/1989 | Attending School  Roosevelt Senior | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: 2 |
|---|---|---|

Area addressed by goal:  Academic Areas: Reading

**ANNUAL GOAL: (including mastery criteria.)**

Damion will improve his reading recognition and comprehension skills.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| - locate facts that answer the reader's questions with 80% mastery.<br><br>- distinguish cause from effect with 80% mastery. | | Weekly |
| - distinguish fact from opinion or fiction with 80% mastery.<br><br>- summarize main ideas and supporting details with 80% mastery. | | Weekly |
| - recognize organizational structures with 80% mastery.<br><br>- identify and analyze main ideas, supporting ideas and supporting details with 80% mastery. | | Weekly |
| | | |
| | | |
| | | |

| EVALUATION PROCEDURE(S) |
|---|
| ☐ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____ |

| Student Name | Damion | Hanson | | Managing School Backus Middle | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number 9087435 | | DOB 06/08/1989 | | Attending School Roosevelt Senior | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: ☐ 3

Area addressed by goal:  Written Expression _____

ANNUAL GOAL: (including mastery criteria.) _____

Damion will improve his written expression skills.

Provider(s): Special Education Teacher/Resource Room Teacher _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| - write stories that have a beginning, middle, and end and contain details of setting with 80% mastery. | | Weekly |
| - write short poems tha contain simple sense details with 80% mastery.<br><br>- write brief summaries of information gathered through research with 80% mastery. | | Weekly |
| - write a brief interpretation or explanation of a literary or informational text using evidence from the text as support with 80% mastery. | | Weekly |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | Damion | Hanson | | Managing School Backus Middle | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number 9087435 | | DOB 06/08/1989 | | Attending School Roosevelt Senior | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ☐4☐ |

Area addressed by goal:  Vocational

**ANNUAL GOAL: (including mastery criteria.)**

Damion will begin to explore all of his career options.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| - complete a vocational assessment.<br><br>- research at least 5 career choices from his vocational assessment. | | Monthly |
| - contact various agencies of his choosen career path.<br><br>-identify various vocational schools or colleges that will prepare him for his career choices. | | Monthly |
| | | |
| | | |
| | | |
| | | |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☒ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____ |

| Student Name | Damion | Hanson | Managing School | Roosevelt Senior | DCPS - TRANSITION |
|---|---|---|---|---|---|
| Student ID Number | 9087435 | | DOB 06/08/1989 | Attending School Roosevelt Senior | SERVICES PLAN PAGE 1 OF 2 |

Date Developed: 01/22/2007

# DCPS TRANSITION SERVICES PLAN

Note: The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of tile IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

**I.** *Record student's post-secondary goals and interests.*

Employment:   Student was not available for assessment.

Community Participation:   100 Hours of community service

Post-Secondary Education and Training:   Student was not available for assessment.

Independent Living:   Student was not available for assessment.

**II.** *Courses of study leading to student's post-high school goals.*

| Grade or School Year | Courses of Study |
|---|---|
| 9th Grade | 9th Grade curriculum |
| | |
| | |
| | |
| | |

**III.** *Transition Services Needed.*
*Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.*

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| Employment  If service is not needed, provide explanation. | - summer employment | DCPS |
| Community Participation  If service is not needed, provide explanation. | -100 hours of community service | DCPS |
| Post - Secondary Education and Training  If service is not needed, provide explanation. | - Vocational schools | DCPS |
| Independent and Adult Living  If service is not needed, provide explanation. | - Life Skills classes | DCPS |

Next Page

| Student Name | Damion | Hanson | | Managing School | Roosevelt Senior | DCPS - TRANSITION SERVICES PLAN PAGE 2 OF 2 |
|---|---|---|---|---|---|---|
| Student ID Number | 9087435 | | DOB 06/08/1989 | Attending School | Roosevelt Senior | |

Date Developed: _____

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Daily Living Skills** If service is not needed, provide explanation. | - Life skills | DCPS |
| **Functional Vocational Evaluation** If service is not needed, provide explanation. | -Vocational assessment | DCPS |
| **Other** | | |

**IV.**

| Projected Exit Category *(check one)* | High School Diploma Status | | Projected Exit Date *(mm/yyyy)* |
|---|---|---|---|
| ☒ DC High School Diploma | 5 | # Credits Earned toward graduation | |
| ☐ High School Certificate at age 21 | | | 06/01/2012 |
| ☐ High School Certificate <u>prior</u> to age 21 | | # Community Service Hours Completed | |

| State Test Requirements | Area | Date Taken / Score Received |
|---|---|---|
| Stanford 9 | Math and Reading | |
| Alternative Portfolio Assessment | | |
| | | |

**V.** *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*

Examples of Agency Linkages Needed for Transition
- Rehabilitation Services Administration (RSA)
- Mental Retardation and Developmental Disabilities Administration (MRDDA)
- Commission on Mental Health Services (CMES)
- UDC or other higher education institutions

| Agency | Agency Representative/ Telephone Number | Purpose of Contact | Date |
|---|---|---|---|
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |

| Student Name | Damion | Hanson | Managing School | Roosevelt Senior | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9087435 | DOB 06/08/1989 | Attending School | Roosevelt Senior | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
## SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education? ☒ Yes ☐ No

Explanation for removal out of regular education classroom.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | GenEd | SETTING SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| Use of computer/calculator/slant board | 0.00 | 26.00 | 26.00 | Hrs | Week | Special Education/General Education | 12/20/2006 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

| | |
|---|---|
| Timing/Scheduling: | Extended time |
| Setting: | Special seating/proximity to monitor |
| Presentation: | Assistance with interpretations of instructions |
| Response: | Specific praise for appropriate behavior, improvement in work, effort |
| Equipment: | Use of computer/calculator/slantboard |

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V   Portfolio:

☐ Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV   (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading          ☐ Physical/Sensory
☒ Mathematics      ☐ Social Emotional
☒ Written Expression   ☐ Physical Development
☐ Other:
☐ None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

**Modifications:**
☒ Language Arts/English
☒ Social Sciences
☒ Biological & Physical Sciences
☒ Fine Arts

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Combination General Education and Resource Classro | Rejected | Continued school failure |
| In General Education Classroom Setting | Rejected | Continued school failure |
| Out of General Education Classroom | Accepted | Time away from non-disabled peers in academic setti |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

## Multidisciplinary Team
## (MDT)
## MEETING NOTES

Initial IEP **Meeting Notes**

STUDENT: Damion          Hanson          SCHOOL: Roosevelt Senior          DATE: 01/22/2007

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Ms. M. Hanson | | Parent/Guardian |
| Ms. M. Cooper | | Special Ed |
| a  Richard Rambel | | General Ed Teacher |
| Ms. M. Cooper | | LEA Representative |
| B. Hosch, PH.D. | | Principal or Designee |
| Damion Hanson | | Student |
| Mrs. C. Summers | | School Psychologist |
| Mrs. Miller | | School Psychologist |
| Ms. Z. Wesley | | |
| Ivan - Fernandez | | Educational Advocate |

The Parent ☑ is present ☐ is **not** present at the meeting.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES (continuation)**

| MDT |

STUDENT: Damion Hanson          SCHOOL: Roosevelt Senior          DATE: 01/22/2007

The purpose of this meeting will be to review the Psychiatric Assessment and complete the final IEP for Damion Hanson. The team members will introduce themselves. The meeting will begin with Ms. Summers, DCPS School Psychologist, Ms. Summers the School Psychologist was not able to attend the meeting. The neuropsychological and the vocational assessment could have been completed on January 17 & 18, 2007. Damian was not available. Ms. Cooper found out on Friday that Damian was at DC JAC. The parent confirmed today that Damian is at DC JAC. The team will complete the IEP will social emotional goals. and the IEP will be faxed to the coordinator at DC JAC. Ms. Cooper will take the packet to the intake office so that Damian

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES (continuation)**

MDT

STUDENT: Damion Hanson    SCHOOL: Roosevelt Senior    DATE: 01/22/2007

will have a placement when he is released. The intervention could not be completed because Damien is at DC Jail. Ms. Cooper will contact the coordinator at DC Jail and see if he can complete the intervention plan.

Mr. Rambert the science teacher stated that he has had Damien for two years. He stated that Damion is very aggressive when he comes to class. He also stated that Damien is always in school but he does not go to class.

Ms. Heckadge the school Psychologist reviewed the

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES (continuation)**

MDT

STUDENT: Damion Hanson    SCHOOL: Roosevelt Senior    DATE: 01/22/2007

Social Emotional goals.
Ms. Hanson does not
know when Damion will
be released.
    Ms. Cooper will take the
complete packet to Central
office. Get a full time
Placement. The IEP will
be faxed to SC SAC.
Ms. Simmons was not
Present to review the
Psychiatric Assessment
because she was unable
to get to work due to
the weather.
    The MDT Meeting
ended and the resolution
Meeting began

# Exhibit 19

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

## Multidisciplinary Team
## (MDT)
## MEETING NOTES

### Initial IEP Meeting Notes

STUDENT: Damion          Hanson          SCHOOL: Backus Middle          DATE: 12/19/2006

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Ms. M. Hanson | *Marion Fay Hanson* | Parent/Guardian |
| Ms. M. Cooper | | Special Ed |
| S. Krnendel | *Advocates Notes excluded* | General Ed Teacher  *Advocate* |
| Ms. M. Cooper | | LEA Representative |
| B. Hosch, PH.D. | | Principal or Designee |
| Damion Hanson | | Student |
| Mrs. C. Summers | *Cheryl B. Summers* | School Psychologist |
| Ms. Z. Wesley | | |

| | | Educational Advocate |
|---|---|---|
| | | |
| | | |
| | | |

The Parent ☑ is present ☐ is **not** present at the meeting.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS          DIVISION OF SPECIAL EDUCATION          MEETING NOTES

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
**(MDT)**
**MEETING NOTES (continuation)**

MDT

STUDENT: _____Damion  Hanson_____    SCHOOL: Roosevelt Senior    DATE: 12/19/2006

The purpose of this meeting will be to develop an Initial IEP for Damion.  Damion is eligible to receive services as a spececial education student whom has an emotional diturbances. Damion will receive 26 hours of specialized instruction and 1 hour of psychological counseling. The advocate will be sent the dates to complete the IEP. A draft IEP was provided to the parent and the advocate advocate on today 12/19/06.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:

☒ Initial Evaluation

☒ Initial Placement

☐ Reevaluation

☐ Change in Category Exit
☐ Related Service Add
☐ Related Service
☐ Change in Placement
☐ Annual
☐ Other _____

Date  12/19/2006

Student  Damion          Hanson          DOB  06/08/1989

School  Backus Middle

Current Disability Category  ND

Setting  No previous LRE / not currently in Special Education

Dear  Mrs. Hanson

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
☒ Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Other _____

**A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)**

☐ Your child is not eligible for special education service(s).

☒ Your child is eligible or continues to be eligible to receive special education services as a student with _____

☐ Your child will begin receiving _____ as a related service(s).

☐ Your child will no longer receive _____ as a related service(s).

☐ Your child's category of disability is being changed from _____ to _____

☐ Your child's alternative placement on continuum (next setting) is being changed,

   from _____ to _____

☐ Your child is no longer eligible and will be exited from the special education program.

☐ Other: _____

Location of Services  Roosevelt Senior

Description and Explanation of agency action proposed or refused.

Description of Other Options Considered and reasons for rejection of each option

Other relevant factors to the decision- _____

MDT Members:  ☒ Principal or Designee      ☒ General Education Teacher      ☒ Psychologist
              ☒ Parent                    ☒ Special Education Teacher      ☒ Other: Advocate
              ☒ Student                    ☐ Speech and Language
              ☒ Social Worker             ☒ *LEA & interpreter (*may be one)

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the **Procedural Safeguards** for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact Ms. M. Cooper          at  (202) 576-6110          (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### SPECIAL EDUCATION
### MULTIDISCIPLINARY TEAM
### (MDT)

Student Damion        Hanson        DOB 06/08/19 Age 17    Grade 09  ID 9087435

You have the right to challenge the recommendations by requesting Mediation or a Due Process Hearing before an impartial hearing officer. To initiate a mediation or hearing, you will need to complete a REQUEST FOR MEDIATION or DUE PROCESS HEARING form and mail it to the address listed below:

Student Hearing Office
D.C. Public Schools
825 North Capitol Street, N.E. 8th floor
202-442-5432

You have the right to be represented at the hearing by legal counsel.
A copy of Parent's Procedural Safeguards handbook is provided.
A list of free or low cost legal service, for which you may qualify depending on your income, is included.
If you would like an additional copy, please contact the principal.

### EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

Test/Description: Classroom Observation - assesses present functioning of the student within the classroom environment.

Date of Report: 09/13/2006

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

## Free or Low Cost Legal Services

Neighborhood Legal Services
701 4th Street, N.E.
Washington, D.C. 20001
202-682-2700 (NW)
202-682-2732 (NE)
Fax 202-682-0588

Neighborhood Legal Services
1213 Good Hope Road, S.E.
Washington, D.C. 20020
202-678-2000
Fax 202-889-3374

University Legal Services
300 I Street, N.E.
Washington, D.C. 20002
202-547-0198
Fax 202-547-2662

The Children's Law Center Inc.
1050 Connecticut Avenue, N.W.
Suite 1200 Washington Square
Washington, D.C. 20036-5317
202-467-4900
Fax 202-467-4949

National Coalition for Students
with Disabilities
10560 Main Street, Suite 417
Fairfax, VA 22030
703-267-6588
(fax) 703-267-6992

MDT Prior to Action Notice
03-30-2004

2

# Exhibit 20

Oak Hill Youth Center     **26 AUG 2005 to 25 APR 2006**     Run Date: 25 Apr 2006 03:51 PM

| pil No. | Name | | Grade | Gender | Birth Date | Hrm | Phone |
|---------|------|--|-------|--------|------------|-----|-------|
| 87435 | Hanson, Damion | | 09 | M | 08 JUN 1989 | ****** | (202)328-9664 |

| Mailing Address | 4900 Fort Totten Dr NE |
|---|---|
| | Washington, DC 20011 |

Ethnicity    Sem
Blk     2

| Absence Totals | | | | |
|---|---|---|---|---|
| uthorized | Excused | Unexcused | Total | Lates |
| 15 | 23 | 43 | 81 | 6 |

### y Absence Date   Per - Physical period of absence

| ite | Course | Per | A/L Reason | In/Out | Time | Course | Per | A/L Reason | In/Out | Time |
|-----|--------|-----|------------|--------|------|--------|-----|------------|--------|------|
| iEP 2005 | Citiznshp-JY | 4 | A un.Unexcused Abser | | | | | | | |
| )CT 2005 | Citiznshp-JY | 4 | A un.Unexcused Abser | | | | | | | |
| AN 2006 | ComprDev-03 | 3 | A un.Unexcused Abser | | | | | | | |
| AN 2006 | ComprDev-03 | 3 | A un.Unexcused Abser | | | IntroL/E/T-04 | 4 | A un.Unexcused Abser | | |
| AN 2006 | Math Resc-03 | 1 | L un.Tardy Unexcused | | | Read Resc-01 | 2 | A un.Unexcused Abser | | |
| | ComprDev-03 | 3 | A un.Unexcused Abser | | | IntroL/E/T-04 | 4 | A un.Unexcused Abser | | |
| AN 2006 | StudySkill-03 | 1 | A un.Unexcused Abser | | | IntroL/E/T-01 | 2 | A un.Unexcused Abser | | |
| | Geometry-03 | 3 | A un.Unexcused Abser | | | Citiznshp-39 | 5 | A un.Unexcused Abser | | |
| AN 2006 | StudySkill-03 | 1 | A au.Suspended (OS) | | | IntroL/E/T-01 | 2 | A au.Suspended (OS) | | |
| | Geometry-03 | 3 | A au.Suspended (OS) | | | DCHis&Gov-09 | 4 | A au.Suspended (OS) | | |
| | Citiznshp-39 | 5 | A au.Suspended (OS) | | | | | | | |
| AN 2006 | StudySkill-03 | 1 | A un.Unexcused Abser | | | IntroL/E/T-01 | 2 | A un.Unexcused Abser | | |
| | Geometry-03 | 3 | A un.Unexcused Abser | | | Citiznshp-39 | 5 | A un.Unexcused Abser | | |
| 'N 2006 | StudySkill-03 | 1 | A un.Unexcused Abser | | | IntroL/E/T-01 | 2 | A un.Unexcused Abser | | |
| | Geometry-03 | 3 | A un.Unexcused Abser | | | DCHis&Gov-09 | 4 | A un.Unexcused Abser | | |
| 'N 2006 | StudySkill-03 | 1 | A un.Unexcused Abser | | | IntroL/E/T-01 | 2 | A un.Unexcused Abser | | |
| | Geometry-03 | 3 | A un.Unexcused Abser | | | DCHis&Gov-09 | 4 | A un.Unexcused Abser | | |
| | Citiznshp-39 | 5 | A un.Unexcused Abser | | | | | | | |
| 'N 2006 | StudySkill-03 | 1 | A au.Suspended (OS) | | | IntroL/E/T-01 | 2 | A au.Suspended (OS) | | |
| | Geometry-03 | 3 | A au.Suspended (OS) | | | DCHis&Gov-09 | 4 | A au.Suspended (OS) | | |
| | Citiznshp-39 | 5 | A au.Suspended (OS) | | | | | | | |
| 'N 2006 | StudySkill-03 | 1 | A au.Suspended (OS) | | | IntroL/E/T-01 | 2 | A au.Suspended (OS) | | |
| | Geometry-03 | 3 | A au.Suspended (OS) | | | DCHis&Gov-09 | 4 | A au.Suspended (OS) | | |
| | Citiznshp-39 | 5 | A au.Suspended (OS) | | | | | | | |
| :B 2006 | StudySkill-03 | 1 | A un.Unexcused Abser | | | IntroL/E/T-01 | 2 | A un.Unexcused Abser | | |
| | Geometry-03 | 3 | L un.Tardy Unexcused | | | DCHis&Gov-09 | 4 | A un.Unexcused Abser | | |
| | Citiznshp-39 | 5 | A un.Unexcused Abser | | | | | | | |
| :B 2006 | DCHis&Gov-09 | 4 | A un.Unexcused Abser | | | | | | | |
| .B 2006 | Soc Issues-01 | 1 | A un.Unexcused Abser | | | ClthngTxtl-02 | 3 | A un.Unexcused Abser | | |
| .B 2006 | IntroL/E/T-01 | 2 | L un.Tardy Unexcused | | | ClthngTxtl-02 | 3 | A un.Unexcused Abser | | |
| | Hlth&PE 10-03 | 4 | A un.Unexcused Abser | | | | | | | |
| B 2006 | Soc Issues-01 | 1 | L un.Tardy Unexcused | | | ClthngTxtl-02 | 3 | A un.Unexcused Abser | | |
| | Hlth&PE 10-03 | 4 | A un.Unexcused Absence | | | | | | | |
| B 2006 | ClthngTxtl-02 | 3 | A un.Unexcused Abser | | | | | | | |
| B 2006 | Soc Issues-01 | 1 | A un.Unexcused Abser | | | IntroL/E/T-01 | 2 | A un.Unexcused Abser | | |
| | Hlth&PE 10-03 | 4 | A un.Unexcused Abser | | | Citiznshp-39 | 5 | A un.Unexcused Abser | | |
| B 2006 | Soc Issues-01 | 1 | L un.Tardy Unexcused | | | Hlth&PE 10-03 | 4 | A un.Unexcused Abser | | |
| B 2006 | GallryFund-33 | 1 | A ex.Court | | | CarOrient-02 | 2 | A ex.Court | | |
| | Pr Zoology-24 | 5 | A ex.Court | | | | | | | |
| 3 2006 | CarOrient-02 | 2 | A ex.Court | | | Pr Zoology-24 | 5 | A ex.Court | | |
| 3 2006 | CarOrient-02 | 2 | A ex.Court | | | Pr Zoology-24 | 5 | A ex.Court | | |

## Attendance Summary

Oak Hill Youth Center                    26 AUG 2005 to 25 APR 2006      Run Date: 25 Apr 2006  03:51 PM

| Pupil No. | Name |
|---|---|
| 087435 | Hanson, Damion |

*(Continued...)*

### Absence Totals

| Authorized | Excused | Unexcused | Total | Lates |
|---|---|---|---|---|
| 15 | 23 | 43 | 81 | 6 |

### By Absence Date    Per - Physical period of absence

| Date | Course | Per | A/L | Reason | In/Out | Time | Course | Per | A/L | Reason | In/Out | Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FEB 2006 | Pr Zoology-24 | 5 | L | ex.Court | | | | | | | | |
| FEB 2006 | Pr Zoology-24 | 5 | A | ex.Court | | | | | | | | |
| FEB 2006 | CarOrient-02 | 2 | A | ex.Court | | | Pr Zoology-24 | 5 | A | ex.Court | | |
| FEB 2006 | Pr Zoology-24 | 5 | A | ex.Court | | | | | | | | |
| MAR 2006 | CarOrient-02 | 2 | A | ex.Court | | | | | | | | |
| MAR 2006 | CarOrient-02 | 2 | A | ex.Court | | | Pr Zoology-24 | 5 | A | ex.Court | | |
| MAR 2006 | CarOrient-02 | 2 | A | ex.Court | | | | | | | | |
| MAR 2006 | Pr Zoology-24 | 5 | A | ex.Court | | | | | | | | |
| MAR 2006 | Pr Zoology-24 | 5 | A | ex.Court | | | | | | | | |
| MAR 2006 | CarOrient-02 | 2 | A | ex.Court | | | | | | | | |
| MAR 2006 | GallryFund-33 | 1 | A | ex.Court | | | CarOrient-02 | 2 | A | ex.Court | | |
| MAR 2006 | Pr Zoology-24 | 5 | A | ex.Court | | | | | | | | |
| MAR 2006 | Pr Zoology-24 | 5 | A | ex.Court | | | | | | | | |

### By Course    (Note: Only courses with absences are displayed below)

| Course | Date | A/L | Reason | In/Out | Time |
|---|---|---|---|---|---|
| CarOrient - 02 | 15 FEB 2006 | A | ex.Court | | |
| Dropped: 24 Apr 2006 | 16 FEB 2006 | A | ex.Court | | |
|  | 17 FEB 2006 | A | ex.Court | | |
| Absent: 9    Lates: 0 | 24 FEB 2006 | A | ex.Court | | |
|  | 01 MAR 2006 | A | ex.Court | | |
|  | 02 MAR 2006 | A | ex.Court | | |
|  | 03 MAR 2006 | A | ex.Court | | |
|  | 13 MAR 2006 | A | ex.Court | | |
|  | 15 MAR 2006 | A | ex.Court | | |
| Citiznshp - 39 | 23 JAN 2006 | A | un.Unexcused Absence | | |
| Dropped: 17 Feb 2006 | 24 JAN 2006 | A | au.Suspended (OS) | | |
|  | 25 JAN 2006 | A | un.Unexcused Absence | | |
| Absent: 8    Lates: 0 | 27 JAN 2006 | A | un.Unexcused Absence | | |
|  | 30 JAN 2006 | A | au.Suspended (OS) | | |
|  | 31 JAN 2006 | A | au.Suspended (OS) | | |
|  | 01 FEB 2006 | A | un.Unexcused Absence | | |
|  | 13 FEB 2006 | A | un.Unexcused Absence | | |
| Citiznshp - JY | 23 SEP 2005 | A | un.Unexcused Absence | | |
| Dropped: 26 Oct 2005 | 04 OCT 2005 | A | un.Unexcused Absence | | |
| Absent: 2    Lates: 0 | | | | | |
| WritngTxtl - 02 | 07 FEB 2006 | A | un.Unexcused Absence | | |
| Dropped: 17 Feb 2006 | 08 FEB 2006 | A | un.Unexcused Absence | | |
|  | 09 FEB 2006 | A | un.Unexcused Absence | | |
| Absent: 4    Lates: 0 | 10 FEB 2006 | A | un.Unexcused Absence | | |
| EmprDev - 03 | 13 JAN 2006 | A | un.Unexcused Absence | | |
| Dropped: 17 Feb 2006 | 18 JAN 2006 | A | un.Unexcused Absence | | |
|  | 19 JAN 2006 | A | un.Unexcused Absence | | |
| Absent: 4    Lates: 0 | 20 JAN 2006 | A | un.Unexcused Absence | | |

Pupil No.    Name
...087435    Hanson, Damion        *(Continued...)*

## ...y Course

(Note: Only courses with absences are displayed below)

| ...ourse | Date | A/L | Reason | In/Out | Time |
|---|---|---|---|---|---|
| ...CHis&Gov - 09 | 24 JAN 2006 | A | au.Suspended (OS) | | |
| ...ropped: 08 Feb 2006 | 26 JAN 2006 | un | un.Unexcused Absence | | |
| | 27 JAN 2006 | A | un.Unexcused Absence | | |
| ...bsent: 7   Lates: 0 | 30 JAN 2006 | A | au.Suspended (OS) | | |
| | 31 JAN 2006 | A | au.Suspended (OS) | | |
| | 01 FEB 2006 | un | un.Unexcused Absence | | |
| | 02 FEB 2006 | A | un.Unexcused Absence | | |
| ...allryFund - 33 | 15 FEB 2006 | A | ex.Court | | |
| ...ropped: 24 Apr 2006 | 15 MAR 2006 | A | ex.Court | | |
| ...bsent: 2   Lates: 0 | | | | | |
| ...eometry - 03 | 23 JAN 2006 | A | un.Unexcused Absence | | |
| ...ropped: 07 Feb 2006 | 24 JAN 2006 | A | au.Suspended (OS) | | |
| | 25 JAN 2006 | A | un.Unexcused Absence | | |
| ...sent: 7   Lates: 1 | 26 JAN 2006 | A | un.Unexcused Absence | | |
| | 27 JAN 2006 | A | un.Unexcused Absence | | |
| | 30 JAN 2006 | A | au.Suspended (OS) | | |
| | 31 JAN 2006 | A | au.Suspended (OS) | | |
| | 01 FEB 2006 | L | un.Tardy Unexcused | | |
| ...th&PE 10 - 03 | 08 FEB 2006 | A | un.Unexcused Absence | | |
| ...opped: 17 Feb 2006 | 09 FEB 2006 | A | un.Unexcused Absence | | |
| | 13 FEB 2006 | A | un.Unexcused Absence | | |
| ...sent: 4   Lates: 0 | 14 FEB 2006 | A | un.Unexcused Absence | | |
| ...roL/E/T - 01 | 23 JAN 2006 | A | un.Unexcused Absence | | |
| ...opped: 17 Feb 2006 | 24 JAN 2006 | A | au.Suspended (OS) | | |
| | 25 JAN 2006 | A | un.Unexcused Absence | | |
| ...sent: 9   Lates: 1 | 26 JAN 2006 | A | un.Unexcused Absence | | |
| | 27 JAN 2006 | A | un.Unexcused Absence | | |
| | 30 JAN 2006 | A | au.Suspended (OS) | | |
| | 31 JAN 2006 | A | au.Suspended (OS) | | |
| | 01 FEB 2006 | A | un.Unexcused Absence | | |
| | 08 FEB 2006 | L | un.Tardy Unexcused | | |
| | 13 FEB 2006 | A | un.Unexcused Absence | | |
| ...roL/E/T - 04 | 19 JAN 2006 | A | un.Unexcused Absence | | |
| ...opped: 17 Feb 2006 | 20 JAN 2006 | A | un.Unexcused Absence | | |
| ...ent: 2   Lates: 0 | | | | | |
| ...th Resc - 03 | 20 JAN 2006 | L | un.Tardy Unexcused | | |
| ...opped: 17 Feb 2006 | | | | | |
| ...ent: 0   Lates: 1 | | | | | |
| ...Zoology - 24 | 15 FEB 2006 | A | ex.Court | | |
| ...opped: 24 Apr 2006 | 16 FEB 2006 | A | ex.Court | | |
| | 17 FEB 2006 | A | ex.Court | | |
| ...ent: 12   Lates: 1 | 21 FEB 2006 | L | ex.Court | | |
| | 22 FEB 2006 | A | ex.Court | | |
| | 24 FEB 2006 | A | ex.Court | | |
| | 28 FEB 2006 | A | ex.Court | | |
| | 02 MAR 2006 | A | ex.Court | | |
| | 06 MAR 2006 | A | ex.Court | | |
| | 08 MAR 2006 | A | ex.Court | | |
| | 14 MAR 2006 | A | ex.Court | | |
| | 22 MAR 2006 | A | ex.Court | | |
| | 24 MAR 2006 | A | ex.Court | | |
| ...d Resc - 01 | 20 JAN 2006 | A | un.Unexcused Absence | | |
| ...pped: 17 Feb 2006 | | | | | |
| ...nt: 1   Lates: 0 | | | | | |

| Pupil No. | Name |
|---|---|
| 087435 | Hanson, Damion |

*(Continued...)*

## By Course

(Note: Only courses with absences are displayed below)

| Course | Date | A/L | Reason | In/Out | Time |
|---|---|---|---|---|---|
| **Soc Issues - 01** | 07 FEB 2006 | A | un.Unexcused Absence | | |
| **Dropped: 17 Feb 2006** | 09 FEB 2006 | L | un.Tardy Unexcused | | |
| | 13 FEB 2006 | A | un.Unexcused Absence | | |
| Absent: 2    Lates: 2 | 14 FEB 2006 | L | un.Tardy Unexcused | | |
| **StudySkill - 03** | 23 JAN 2006 | A | un.Unexcused Absence | | |
| **Dropped: 07 Feb 2006** | 24 JAN 2006 | A | au.Suspended (OS) | | |
| | 25 JAN 2006 | A | un.Unexcused Absence | | |
| Absent: 8    Lates: 0 | 26 JAN 2006 | A | un.Unexcused Absence | | |
| | 27 JAN 2006 | A | un.Unexcused Absence | | |
| | 30 JAN 2006 | A | au.Suspended (OS) | | |
| | 31 JAN 2006 | A | au.Suspended (OS) | | |
| | 01 FEB 2006 | A | un.Unexcused Absence | | |

# Exhibit 21



# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

## REPORT FORM
04/27/05
*ROOSEVELT SENIOR HIGH SCHOOL*
REPORT TO PARENTS ON STUDENT PROGRESS

STUDENT ID: 9087435    STUDENT NAME: HANSON, DAMION
GRADE:      09         HOMEROOM:     125                            413

---

| COURSE  SEC | SUBJECT | | ADV 1 | ADV 2 | ADV 3 | ADV 4 | FINAL | EARN CRED | CLASS ABSENCE ADV YTD |
| TEACHER | | COMMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 57    02 | SUR WORLD ARTS | | D | F | | | *F* | | 0 |
| REEDER | | | | | | | | | |
| 51    02 | WLD OF FINANCE | | | | D | | | | 0 |
| JACOBS | | EXCESSIVE ABSENCES | | | | | | | |
| | | REQUEST CONFERENCE WITH PARENT | | | | | | | |
| :03   03 | ENGLISH I | | F | F | F | | | | 22 |
| WILTSHIRE | | BEHAVIOR IN CLASS IS DISRUPTIVE | | | | | | | |
| | | EXCESSIVE ABSENCES | | | | | | | |
| 4360B  01 | WORLD HISTORY | | C- | C | C | | | | 0 |
| JACOBS | | EXCESSIVE ABSENCES | | | | | | | |
| M21   03 | ALGEBRA I | | D | F | F | | | 12 | 29 |
| OVERTON | | EXCESSIVE ABSENCES | | | | | | | |
| | | LACKS INITIATIVE | | | | | | | |
| P16   02 | HLTH & PE 10 | | F | F | F | | | | 10 |
| GARDNER | | EXCESSIVE ABSENCES | | | | | | | |
| R01   01 | ARMY JR ROTC I | | F | F | W | | | | 12 |
| WORTHAN | | | | | | | | | |
| S21   21 | BIOLOGY | | F | F | F | | | 16 | 47 |
| MICHALS | | EXCESSIVE ABSENCES | | | | | | | |
| | | DOES NOT PARTICIPATE | | | | | | | |

HOMEROOM ABSENCES: 32.0   EXCUSED: 0.0  UNEXCUSED: 32.0   TARDY: 0

DAMION HANSON
4900 FORT TOTTEN DR. NE
WASHINGTON, DC 20011

REVISED: 09/27/96 BY R. PHILYAW




# District of Columbia Public Schools
## Francis Junior High School
### 01/23/2006
### Report to Parents on Student Progress

| | | |
|---|---|---|
| tudent Name: **Brown, Gabrielle** | For the advisory ending on: | **Jan 23, 2006** |
| tudent ID: **9034338** | Grade: **08**   Homeroom: | 8210 / Harper, William |

| Course | Sec | Course Title | Adv 1 | Adv 2 | Adv 3 | Adv 4 | Exam | Final | Credit Earned |
|---|---|---|---|---|---|---|---|---|---|
| **E02** | **8D** | **English 8** | F | F | | | | | curr abs: 8 |
| | | Sewell, Vernon | Poor Behavior; Excessive Absences | | | | | | YTD abs: 14 |
| **H15** | **8D** | **American History** | F | F | | | | | curr abs: 9 |
| | | Johnson, Jonathan | Excessive Absences; Does Not Do Homework; Poor Behavior | | | | | | YTD abs: 14 |
| **M18** | **8D** | **Algebra Part 1** | D | F | | | | | curr abs: 14 |
| | | Nueva, Rowena | Needs More Study; Poor Test Scores; Does Not Complete Class Assignments | | | | | | YTD abs: 15 |
| **S02** | **8D** | **Physical Science** | D | D | | | | | curr abs: 12 |
| | | Ukaegbu, Adolphus | Excessive Absences; Request Conference With Parent | | | | | | YTD abs: 15 |
| **M01** | **8D** | **Fundamentals of MATH 7 & 8** | F | D | | | | | curr abs: 16 |
| | | Harper, William | Needs More Study; Excessive Absences | | | | | | YTD abs: 20 |
| **B17** | **8D** | **Exploratory Keyboarding** | I | C | | | | C | **0.0** |
| | | Bolden, Brenda | Needs More Study; Good Participation | | | | | | curr abs: 12 |
| | | | | | | | | | YTD abs: 14 |
| **P70** | **8D** | **Motor Learning** | | | | | | | curr abs: 0 |
| | | Stanley, Kim | | | | | | | YTD abs: 0 |
| **P12** | **8D** | **Health and Physical Education 8** | | | | | | | curr abs: 0 |
| | | Stanley, Kim | | | | | | | YTD abs: 0 |

| Homeroom Absences | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Current** | Total: 12.5 | Excused: 8 | Unexcused: 4.5 | Tardy: 4 | | |
| | **YTD** | 16.5 | 8 | 8.5 | 11 | | |

---

3rd Advisory Report Card
NOTE: The absence data shown above is not accurate.
Parents may contact the school for an accurate
accounting of their student's attendance. Efforts are
underway to update the attendance data.

DeLicia Brown
Parent/Guardian of Gabrielle Brown
200 Rhode Island Ave NE
Apt#505
Washington, DC 20002




**ik Hill Youth Center**

03/25/2006

## Report to Parents on Student Progress

| | | | | | |
|---|---|---|---|
| Student Name: | **Hanson, Damion** | For the advisory ending on: | **Mar 25, 2006** |
| Student ID: | **9087435** | Grade: **09**   Homeroom: | **MODC / BROWN, KEVIN** |

| Course | Sec | Course Title | Adv 1 | Adv 2 | Adv 3 | Adv 4 | Exam | Final | Credit Earned |
|---|---|---|---|---|---|---|---|---|---|
| **E03** | **24** | **English I** | | | C | | | | |
| | | MANNEH, LANSANA | | | Needs More Study; Good Participation | | | | curr abs: 0 |
| | | | | | | | | | YTD abs: 0 |
| **A06** | **33** | **Gallery Fundamentals** | | | B | | C | *B* | **0.5** |
| | | MORRIS, WILCOX | | | | | | | curr abs: 2 |
| | | | | | | | | | YTD abs: 2 |
| **B98** | **02** | **Widening Horizons Career Orientation** | | | C | | | *B* | **0.5** |
| | | LOCKHART, MAE | | | | | | | curr abs: 9 |
| | | | | | | | | | YTD abs: 9 |
| **S06** | **24** | **Principles of Zoology** | | | L | | | *L* | **0.0** |
| | | VIGNEULLE, MARGARET | | | | | | | curr abs: 12 |
| | | | | | | | | | YTD abs: 12 |

| **Homeroom Absences** | **Current** | Total: | 2.5 | Excused: | 0 | Unexcused: | 2.5 | Tardy: | 1 |
|---|---|---|---|---|---|---|---|---|---|
| | **YTD** | | 2.5 | | 0 | | 2.5 | | 1 |

---

3RD ADVISORY REPORT CARD

NOTE: The absence data shown above is not accurate. Parents may contact the school for an accurate accounting of their student's attendance. Efforts are underway to update the attendance data.

House Triangle Shelter
Parent/Guardian of Damion Hanson
4900 Fort Totten Dr NE
Washington, DC 20011



# District of Columbia Public Schools
## Roosevelt High School



05/16/2006

### Report to Parents on Student Progress

| | |
|---|---|
| **Student Name:** Hanson, Damion | For the advisory ending on: **May 16, 2006** |
| **Student ID:** 9087435 | **Grade: 09**  Homeroom: **125 / Yarborough, James** |

| Course | Sec | Course Title | Progress Report | | |
|---|---|---|---|---|---|
| 21 | 26 | **Biology I** Rambert, Richard | | curr abs: 2 | YTD abs: 2 |
| F3 | 01 | **Food Service and Safety** Grove, Leatrice | Excessive Absences; Possibility of Failing | curr abs: 0 | YTD abs: 0 |
| 03 | 26 | **English I** Nwafor, Stacey | Possibility of Failing | curr abs: 0 | YTD abs: 0 |
| 21 | 26 | **Algebra 1** Cline-Thomas, Ransford | | curr abs: 2 | YTD abs: 2 |
| 1 | 03 | **French I** Baily, Charlie | Needs More Study; Possibility of Failing | curr abs: 1 | YTD abs: 1 |
| 18 | JY | **CITIZENSHIP** Yarborough, James | | curr abs: 2 | YTD abs: 2 |
| 7 | 22 | **Survey Of World Art** Reeder, Jacqueline | | curr abs: 0 | YTD abs: 0 |
| 5 | 26 | **HEALTH & PHYS ED 9** Murphy, Deborah | | curr abs: 0 | YTD abs: 0 |

| Homeroom Absences | | | Total: | Excused: | Unexcused: | Tardy: |
|---|---|---|---|---|---|---|
| | **Current** | | 1.5 | 0 | 1.5 | 3 |
| | **YTD** | | 1.5 | 0 | 1.5 | 3 |

---

4th  Advisory Progress Report

NOTE: The absence data shown above is not accurate.
Parents may contact the school for an accurate
accounting of their student's attendance. Efforts are
underway to update the attendance data.

House Triangle Shelter
Parent/Guardian of Damion Hanson
4900 Fort Totten Dr NE
Washington, DC  20011